# EXHIBIT B

**FILED**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DEC 2 6 2025

NEW YORK COUNTY
COUNTY CLERK

-----------------------------------------x

Clayton Howard
[fill in name(s)]                    Plaintiff(s)/Petitioner(s),

**Index Number**

101491/2025

West tower Rd ~Ini~ -against- House of An friton, Inc

NetFlix INC, Gunit flmsa telausion line
[fill in name(s)]          Defendant(s)/Respondent(s). Curtis Jackson
-----------------------------------------x  AlexAndra stepketon

## REDACTION COVER PAGE

( ) The document filed contains no confidential personal information, as defined in
22 NYCRR 202.5(e).

( ) The document contains the following (CHECK ANY THAT APPLY):

( ) Social Security Number.

(✓) Confidential Personal Information (CPI) that is REDACTED in accordance with
22 NYCRR 202.5(e).

( ) Confidential Personal Information (CPI) that is UN-REDACTED and seeks a remedy in
accordance with 22 NYCRR 202.5(e)(2) OR (3).

( ) Confidential Personal Information (CPI) that is UN-REDACTED as required or permitted
by a specific rule or law;

Specify the rule or law _____.

( ) Confidential Personal Information (CPI) that is UN-REDACTED as directed by court
order; and I hereby specify:

DATE of such court order: _____ & DATE filed: _____.

Other identifying information for such order: _____.

Does the court order direct that this **UN-REDACTED** document be **visible to all participating
parties?** ( ) yes / ( ✓ ) no.

A court order is being filed with the document: ( ) yes / ( ✓ ) no.

Signature of filer: _____

Print Name: Clayton Howard

Counsel appearing for: _____ (name of party)

Filer is Unrepresented: (yes)/no

**RECEIVED**

Date: 12/24/2025

DEC 2 4 2025

NYS SUPREME COURT - CIVIL
HELP CENTER

Clerk's Initials

Rev. 10/08/2025

**New York State Unified Court System**

# Order – Application to Waive Court Costs, Fees, and Expenses

nycourts.gov

**UCS-FWO1**(01/2025)
Page **1** of **2**
nycourthelp.gov

Supreme **Court**
County of New York

**Present: Hon.** _____

In the matter of:
Clayton HOWARD

**Index/File Number:**
101491 2025

**Plaintiff/Petitioner** (party bringing case) or **Subject of Proceeding**

-against-   West tower Road, Inc, Alexandra Stapleton
NetFlix Inc, House of Posttitin Inc, Curtis Jackson

**Defendant/Respondent** (opposing party; if none, leave blank)

The court has read the attached application to waive court costs, fees, and expenses filed on
____/____/_____ alleging that:

1. Applicant is unable to pay the court costs, fees, and expenses required to prosecute or defend the case or to maintain or respond to an appeal

2. There is no other person beneficially interested in the case

3. Applicant has a good cause of action or claim

and it is **ORDERED**, that the application is (check one):

☐ **GRANTED**, and the clerk of the court shall not charge the applicant for court costs, fees, or expenses in this case, including one certified copy of the judgment. Any recovery by judgment or settlement in favor of the applicant must be paid to the clerk of the court and await a court order for distribution.

☐ **GRANTED TO THE EXTENT** that the court costs, fees, and expenses related to this case are (check one):

    ☐ waived only with respect to (check one):

        ☐ the court filing fee for a Notice of Appeal

        ☐ other (specify): _____

    ☐ deferred until (check one):

        ☐ ____/____/_____

        ☐ an inventory of assets is filed under Uniform Rules for the Surrogate's Court 207.20

        ☐ a proposed decree or order is submitted

        **NOTE:** If, by settlement or any other means, the applicant receives assets of more than $_____, the court costs, fees, and expenses must be paid from the applicant's share of the estate before the proposed decree or order is signed.

**ADA Accommodations** ada@nycourts.gov    **Spoken or Sign Language Interpreters** interpreter@nycourts.gov    **COURT Help** 1-800-COURT-NY (268-7869)

Printed: 1/27/2026

**UCS-FWO1** (01/2025)                    Page **2** of **2**    **Index/File Number:** /01491/2025

☐ **DENIED**, and all applicable court costs, fees, and expenses must be paid by
_____ / _____ / _____ (120 days from the date of this order) as required by section 1101 of the
civil practice law rules. If not paid by such date, the case will be dismissed without further order
of the court, and the clerk of the court shall close the file without further judicial action.

☐ **DECLINED** at this time because case papers are missing or need correction. If the following
missing/corrected papers are filed with the court by _____ / _____ / _____, the court will
reconsider the fee waiver application:

_____

_____

_____

If the missing/corrected papers ARE NOT filed with the court by _____ / _____ / _____, the fee
waiver application will be denied without further court order, and all applicable court costs,
fees, and expenses must be paid by _____ / _____ / _____ (120 days from the date the fee
waiver application is denied) as required by section 1101 of the civil practice law rules. If not
paid by _____ / _____ / _____ (120 days from the date the fee waiver application is denied), the
case will be dismissed without further court order, and the clerk of the court will close the file
without further judicial action.

**NOTE:** The case cannot proceed unless the above missing/corrected papers are filed with the
court. Therefore, even if the court costs, fees, and expenses are paid, the case will be stricken
from the court's calendar if the missing/corrected papers are not filed, and if the case is not
restored within 1 year, it will be deemed abandoned and dismissed without costs under section
3404 of the civil practice law and rules.

Date: _____ / _____ / _____                    _____

                                                                    **Judge Signature**



| **New York State Unified Court System** | nycourts.gov |
|---|---|
| **Application to Waive Court Costs, Fees, and Expenses** | **UCS-FW1** (01/2025) Page **1** of 3 nycourthelp.gov |

Supreme **Court**

County of New York

In the matter of:

Clayton HowARD

**Plaintiff/Petitioner** (party bringing case) or **Subject of Proceeding**

-against- House of Non fiction Inc Alexander Stapleton

NetFlix Inc, West tower Road, Inc, Curtis Jackson

**Defendant/Respondent** (opposing party; if none, leave blank)

**Index/File Number:** 101491/2025

Applicant states the following:

1. I am a party in this case.

2. I am not represented by a lawyer.

3. I live at the following address: 24 Orchard St Carteret NJ 07008

4. I have the following assets (check all that apply):

| ☐ Income | Source: | | | Monthly Amount: |
|---|---|---|---|---|
| | ☐ Wages | | | $ |
| | ☐ Spousal Support | | | $ |
| | ☐ Social Security/SSI/SSID | | | $ |
| | ☒ Other (specify): Family (2nd year law student) | | | $ 1,000 |
| ☒ Bank Account(s) | Type: | | | Current Total Balance: |
| | ☐ Checking Account(s) | | | $ |
| | ☒ Savings Accounts(s) | | | $ 0 |
| ☐ Cash, Bonds, Securities, and Other Investments | Type: | | | Current Total Balance: |
| | ☐ Cash | | | $ 0 |
| | ☐ Bonds | | | $ 0 |
| | ☐ Securities | | | $ 0 |
| | ☐ Other (specify): | | | $ 0 |
| ☒ Real Estate | Address(es): | | | Total Estimated Market Value: $ 0 |
| ☒ Vehicles | Type: | | | Estimated Market Value (minus any unpaid loan amount): |
| | Make | Model | Year: | $ |
| | Make | Model | Year: | $ |
| | Make | Model | Year: | $ |
| | Make | Model | Year: | $ |



**ADA Accommodations** ada@nycourts.gov    **Spoken or Sign Language Interpreters** interpreter@nycourts.gov    **COURT Help** 1-800-COURT-NY (268-7869)

Printed: 1/27/2026

**UCS-FW1 (01/2025)** **Page 2 of 3** **Index/File Number:** /0/49//2025

5. My estimated current monthly expenses are as follows (check all that apply):

| ☐ Housing | Type: | Monthly Amount: |
|---|---|---|
| | ☑ Rent | $ 1000 |
| | ☐ Mortgage | $ |
| | ☐ Real property taxes | $ |
| | ☐ Homeowners' insurance | $ |
| | ☐ Homeowners' association/condominium fees, maintenance, and repairs | $ |
| ☒ Utilities | Include internet, phone, water, gas, electric service, and heating | Monthly amount: $ 250 |
| ☑ Other | Type: | Monthly amount: |
| | ☐ Out-of-pocket medical or dental expenses | $ |
| | ☐ Health insurance premiums | $ |
| | ☒ Child support payments | $ 100 |
| | ☐ Transportation (including public transportation fares, insurance, car loan payments, gas) | $ |
| | ☐ Spousal support payments (also known as alimony) | $ |
| | ☒ Education 2nd year Law studn Candes | $ (schorship) |
| | ☐ Childcare | $ |
| | ☐ Other (specify): | $ |

6. I am responsible for financially supporting other people (check one): ☑ Yes or ☐ No
   If yes, list each dependent's age and provide details about your relationship with each dependent.
   **NOTE:** Do not include dependents' names or dates of birth.

| Age | Relationship |
|---|---|
| 4 | Diur Smith |
| | |
| | |
| | |

7. I have no other income, savings, real property, or assets other than those listed above.

8. I am unable to pay the court costs, fees, and expenses necessary to defend my rights in this case.

9. I cannot afford to hire an attorney to represent me in this case.

10. No one else who is able to pay the required court costs, fees, and expenses has a beneficial interest in the outcome of this case.

11. I intend to assert certain rights and defenses in this case, and I cannot proceed with my case unless this application is granted.

12. I request a court order waiving (check one):

    ☑ all court costs, fees, and expenses for this case

    ☐ the court filing fee for a Notice of Appeal

    ☐ other (specify): _____

**UCS-FW1** (01/2025)                     **Page 3 of 3**    **Index/File Number:** _10149 | 2025_

13. I have already filed a Summons and Complaint, or Summons with Notice, or Notice of Petition, or Petition, or Order to Show Cause in this case (check one):   ☑Yes or ☐No

---

If yes, you must:
- Serve this Application to Waive Court Costs, Fees, and Expenses [UCS-FW1] together with a Notice of Motion [UCS-FW2] on the:
  - ○ Other parties in the case
  - ○ Corporation Counsel (if filed in NYC)
  - ○ County Attorney (if filed outside of NYC)
- File an Affirmation of Service [UCS-FW3] with the court

---

14. The facts of my case are (check one):

☑ explained in my attached papers (you must attach your complaint, petition, answer, or affidavit of facts).

☐ as follows (explain why you have a valid case):

_____
_____
_____
_____
_____
_____
_____

15. Check one of the following:

☑ **I have not** previously applied to waive the court costs, fees, and expenses in this case.

☐ **I have** previously applied to waive the court costs, fees, and expenses in this case, but I am applying again because: _____
_____
_____
_____

I affirm this _24_ day of _Dec_____, **20** _25_, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

**Applicant Signature**

Clayton Howard
**Print Name**

**Note:** You may be asked to provide financial documents before the judge makes a decision – for example, bank statements, paystubs, etc. Before filing your application, contact the court and ask if you must submit any financial documents and/or if you are required to serve any other party.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CLAYTON HOWARD,

Plaintiff,

Index No.: 101491 / 2025

-against-

NETFLIX, INC., CURTIS JACKSON
(professionally known as "50 Cent"),
ALEXANDRIA STAPLETON,
G-UNIT FILMS AND TELEVISION INC.,
HOUSE OF NONFICTION INC.,
and WEST TOWER ROAD LLC,

*Defendants*,

AFFIDAVIT IN SUPPORT OF
WAIVER OF COURT FEES MOTION
FOR WAIVER OF COURT FEES

STATE OF NEW YORK)
) ss.:
COUNTY OF NEW YORK)

I, CLAYTON HOWARD, being duly sworn, deposes and says:

## I. PRELIMINARY STATEMENT

1. I am the Plaintiff in the above-captioned action and submit this affidavit in support of my motion for waiver of court fees pursuant to CPLR § 1101.

2. I make this application based upon my inability to pay the required court fees without substantial hardship and deprivation of the necessities of life for myself.

3. The facts set forth herein are based upon my personal knowledge, and I am competent to testify to them if called as a witness.

## II. NATURE OF THE ACTION

4. I am bringing this action against Defendants for fraudulent inducement, defamation per se, intentional infliction of emotional distress, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation to the public/consumer fraud, unjust enrichment, and for declaratory judgment.

5. I am a documented federal sex trafficking victim under 18 U.S.C. § 1591, who was trafficked by both Sean "Diddy" Combs and Casandra "Cassie" Ventura over approximately eight (8) years.

6. I am a named victim in Count 3 of the federal criminal conviction of Sean Combs and have pending civil actions against both Mr. Combs and Ms. Ventura in the United States District Court for the Central District of California, Case No. CV25-06031(AH), filed June 29, 2025.

7. Defendants fraudulently induced me to participate in the Netflix documentary "Diddy: The Making of a Bad Boy" by promising to tell my complete and truthful story as a trafficking victim.

8. Instead, Defendants deliberately edited, distorted, and misrepresented my account to portray Cassie Ventura—my primary trafficker—as a victim, while omitting and suppressing my testimony that I was sex trafficked by Ventura.

9. I have a meritorious cause of action as demonstrated by the detailed factual allegations in my Verified Complaint, which is annexed hereto.

### III. FINANCIAL CIRCUMSTANCES

A. Income

10. I am currently unemployed and have no regular source of income.

11. I do not receive employment income, wages, salary, commissions, or any other form of earned income.

12. I am not a recipient of Public Assistance from the Department of Social Services of the City of New York.

13. The only income I receive is occasional financial assistance from family members, which totals approximately $800-$1,000 per month and is irregular and unpredictable.

14. This assistance from family members is used entirely for basic necessities including rent, food, utilities, transportation, and medical expenses related to trauma therapy.

15. I received a one-time payment from Defendants in January 2025 via ACH transfer for my participation in "The Reckoning." This payment was approximately $2,000 and was exhausted within weeks to pay overdue bills, rent arrears, and essential living expenses.

16. I have not received any other income or compensation since January 2025.

17. My total monthly income from all sources averages less than $1,000 per month, which is substantially below the federal poverty guidelines.

B. Assets and Property

18. I own no real property of any kind.

19. I do not own a home, land, or any real estate interests.

20. I rent a modest residence at 24 Orchard Street, Carteret, New Jersey 07008, for which I pay approximately $8,00 per month in rent.

21. I do not own a vehicle.

22. I have no savings accounts with any meaningful balance. My Navy Federal Credit Union checking account currently has a balance of approximately $22.00, which is insufficient to cover my basic monthly expenses.

23. I have no investments, stocks, bonds, retirement accounts, or other financial assets.

24. The only property I own consists of:
    a. Necessary personal wearing apparel
    b. Basic household furnishings of minimal value
    c. A laptop computer necessary for managing my legal matters and communicating with attorneys
    d. A cellular telephone

25. I estimate the total value of all my personal property, excluding necessary clothing, to be less than $1,500.

26. I have no other assets of value that could be liquidated to pay court fees.

27. C. Monthly Expenses

28. My monthly expenses substantially exceed my irregular monthly income and include:
    a. Rent: $1000
    b. Utilities (electric, gas, water): $150
    c. Food and groceries: $200
    d. Transportation (public transit): $100

e. Cellular phone: $50.00

f. Internet service: Free use my neighbor wifi upon argeement

g. g.Therapy and mental health treatment (co-pays): Medicad

h. Basic toiletries and household supplies: $75

29. My total monthly expenses exceed $1575.00, which substantially exceeds my available monthly income.

30. I am frequently unable to pay all of my bills each month and must make difficult choices between necessities.

31. I am currently behind on rent by approximately $1000 and have received notices regarding overdue utility bills.

D. Debts and Obligations

32. I have outstanding debts totaling approximately $25,000, including:

a. Credit card debt incurred for basic necessities

b. Rent arrears

c. Utility arrears

33. I am unable to make regular payments on these debts and have received collection notices.

34. I have no ability to borrow money or obtain credit to pay court fees.

IV. IMPACT OF SEX TRAFFICKING ON FINANCIAL CIRCUMSTANCES

35. My current financial hardship is directly related to my victimization as a sex trafficking survivor.

36. Between approximately 2009 and 2019, I was trafficked by Sean "Diddy" Combs and Casandra "Cassie" Ventura. During this time, I was paid to fly from New York City to Los Angeles and Miami for the sole purpose of engaging in sexual activities with Cassie Ventura.

37. The trafficking scheme involved force, fraud, and coercion and has left me with severe psychological trauma, including post-traumatic stress disorder (PTSD), anxiety, and depression.

38. My trauma and ongoing mental health challenges have significantly impaired my ability to maintain steady employment.

39. I require ongoing therapy and mental health treatment to address the psychological harm caused by my trafficking victimization and the subsequent re-traumatization caused by Defendants' misrepresentation of my story.

40. The exposure resulting from the trial exposure of Sean Combs, as well as that of the misrepresentation by the Defendants within a documentary seen by 50 Million viewers has caused me to be harassed, victim shamed, and attacked based on editing which made my offender appear to be someone who did not violate my causing my credibility to be challenged and limiting any opportunity to create income

41. The cost of mental health treatment creates an additional financial burden that I struggle to afford.

42. As a trafficking survivor seeking to hold my traffickers accountable through civil litigation in California, I have incurred significant legal and related expenses that have further strained my already limited financial resources.

## V. INABILITY TO PAY COURT FEES

43. The filing fee for commencing this action in Supreme Court, New York County is $210.00 for the index number, plus additional fees for the Summons and Complaint.

44. I do not have, nor am I able to obtain, the funds needed to pay these court fees.

45. Payment of the required court fees would impose substantial hardship and would require me to forego basic necessities such as food, shelter, utilities, or medical treatment.

46. I have no family members or friends who are able to loan me money to pay the court fees. What family I do have has supported me through paying my rent and living expensive as best the can.

47. I have no access to credit and cannot borrow money from financial institutions.

48. If I am required to pay the court fees, I will be unable to proceed with this action and will be denied access to the courts to vindicate my rights as a sex trafficking victim.

49. The inability to proceed with this action would cause me irreparable harm by:

    a. Preventing me from holding Defendants accountable for their fraudulent and harmful conduct;

    b. Allowing Defendants to profit from their exploitation and misrepresentation of my trauma;

c.  Perpetuating the harm to my reputation and credibility as a federal witness and civil plaintiff;

d.  Denying me the opportunity to correct the false public narrative created by Defendants;

e.  Reinforcing my status as a silenced trafficking victim.

## VI. MERITORIOUS CAUSE OF ACTION

50. I have good and meritorious causes of action against Defendants as detailed in my Verified Complaint.

51. Defendants made specific, material misrepresentations to induce me to participate in their documentary, including:

a.  Promising on February 28, 2025 that they were "definitely not looking to tell a story that is inaccurate";

b.  Promising that my complete story as a trafficking victim would be told;

c.  Promising that my account would be presented accurately and fairly.

52. In reliance on these promises, I participated in a second interview on March 6, 2025, lasting approximately 4-6 hours, during which I provided extensive and traumatic testimony about being sex trafficked by Cassie Ventura and Sean Combs.

53. Defendants deliberately suppressed my testimony that Cassie Ventura was my primary trafficker and edited the documentary to falsely portray her as a victim while implicating only Sean Combs.

54. Additionally, Netflix publicly stated on December 5, 2025 that no participants in the documentary were compensated, when in fact I was compensated via ACH transfer in January 2025 after months of requesting payment.

55. I possess documentary evidence supporting my claims, including:

a.  The Materials License Agreement dated July 19, 2024;

b.  Email correspondence with Vanessa Sanchez dated February 27-28, 2025;

c.  Bank records showing ACH payment in January 2025;

d.  Email correspondence requesting payment between December 2024 and January 2025.

56. I have consulted with attorneys who have reviewed my claims and confirmed that they are legally viable and meritorious.

57. This action seeks to vindicate important rights, including:

    a.  My right not to be defrauded;

    b.  My right to protection from defamation;

    c.  My right as a trafficking victim to have my story told truthfully;

    d.  My right to hold Defendants accountable for exploiting my trauma for commercial gain.

## VII. NO PREVIOUS APPLICATIONS

58. I have not made any previous applications for waiver of fees or similar relief in this action.

59. This is my first and only application for fee waiver.

## VIII. NO OTHER BENEFICIAL INTEREST

60. No other person is beneficially interested in the recovery sought in this action.

61. I am the sole plaintiff and the sole party who will benefit from any recovery in this action.

62. Any damages awarded will be used to address the harm I have suffered and to support my ongoing recovery from trafficking victimization.

## IX. PUBLIC POLICY CONSIDERATIONS

63. This motion implicates important public policy considerations regarding access to justice for trafficking victims.

64. Federal and New York law establish strong public policies protecting trafficking victims and ensuring they have access to the courts, including:

    a.  The Trafficking Victims Protection Act of 2000 (TVPA);

    b.  18 U.S.C. § 1591 (federal sex trafficking statute);

    c.  Crime Victims' Rights Act, 18 U.S.C. § 3771;

    d.  New York Social Services Law § 483-ee.

65. Denying this fee waiver would effectively bar a documented federal trafficking victim from accessing the courts to seek redress for fraudulent exploitation of his trauma.

66. Granting this fee waiver will serve the public interest by:

    a.  Ensuring that trafficking victims have access to justice regardless of their financial circumstances;

b. Holding powerful media corporations accountable for exploiting vulnerable trafficking victims;

c. Deterring similar exploitation of trauma survivors in the future;

d. Vindicating the rights of trafficking victims to have their stories told truthfully.

## X. CONCLUSION

67. I am indigent and unable to pay the required court fees without substantial hardship and deprivation of basic necessities.

68. I have meritorious causes of action against Defendants that warrant judicial consideration.

69. I respectfully request that this Court grant my motion and waive all court fees associated with the prosecution of this action, including the filing fee for the Summons and Verified Complaint and any future fees for filing a Notice of Appeal.

70. Without a fee waiver, I will be unable to proceed with this action and will be denied access to the courts to vindicate my rights as a sex trafficking victim who was fraudulently exploited by Defendants.

WHEREFORE, I respectfully request that this Court grant my motion for waiver of court fees in its entirety.

I affirm this 13th day of December, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

*Clayton Howard*
CLAYTON HOWARD
Plaintiff Pro Se

DECLARATION UNDER PENALTY OF PERJURY
(In Lieu of Notarization)

I, CLAYTON HOWARD, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

I understand that this unsworn declaration has the same force and effect as a sworn affidavit executed before a notary public.

Executed on December 13, 2025, at New York, New York.

*Clayton Howard*
CLAYTON HOWARD

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CLAYTON HOWARD,
*Plaintiff,*

Index No.: 101491/2025

-against-

NETFLIX, INC., CURTIS JACKSON
(professionally known as "50 Cent"),
ALEXANDRIA STAPLETON,
HOUSE OF NONFICTION INC.,
and WEST TOWER ROAD LLC,
*Defendants,*

MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR WAIVER OF COURT FEES

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT

II. STATEMENT OF FACTS

III. LEGAL STANDARD

IV. ARGUMENT

    A. Plaintiff Meets the Statutory Requirements for Fee Waiver Under CPLR § 1101

    B. Plaintiff Has Meritorious Causes of Action

    C. Plaintiff's Financial Circumstances Demonstrate Inability to Pay Court Fees

    D. Public Policy Supports Granting Fee Waiver to Trafficking Victims

    E. Denial of Fee Waiver Would Violate Plaintiff's Constitutional Right of Access to Courts

V. CONCLUSION

## I. PRELIMINARY STATEMENT

Plaintiff Clayton Howard respectfully submits this Memorandum of Law in support of his motion for waiver of court fees pursuant to CPLR § 1101. Mr. Howard is a documented federal sex trafficking victim who seeks to hold Defendants accountable for fraudulently inducing his participation in a Netflix documentary, deliberately misrepresenting his story to protect his primary trafficker, and publicly lying about compensating participants.

Mr. Howard is indigent, unemployed, and survives on less than $1,000 per month in irregular family assistance. His financial hardship is directly related to his victimization as a trafficking survivor and the ongoing psychological trauma that impairs his ability to work. He possesses meritorious causes of action supported by documentary evidence, including email correspondence, bank records, and a signed contract.

As demonstrated below, Mr. Howard satisfies all requirements for a fee waiver under CPLR § 1101, and granting this motion serves important public policy interests in ensuring access to justice for trafficking victims.

## II. STATEMENT OF FACTS

A. Plaintiff's Status as a Federal Trafficking Victim

Plaintiff Clayton Howard is a documented victim of sex trafficking under 18 U.S.C. § 1591. Between approximately 2009 and 2019, he was trafficked by both Sean "Diddy" Combs and Casandra "Cassie" Ventura. He was paid to fly from New York City to Los Angeles and Miami for the sole purpose of engaging in sexual activities with Cassie Ventura, who was his primary trafficker throughout this eight-year period.

Mr. Howard is a named victim in Count 3 of the federal criminal conviction of Sean Combs and has cooperated fully with federal prosecutors. He has filed civil actions against both Combs and Ventura in the United States District Court for the Central District of California, Case No. CV25-06031(AH), filed June 29, 2025.

B. Defendants' Fraudulent Inducement

In May 2022, Defendants contacted Mr. Howard about participating in a Netflix documentary about Sean Combs. Defendants, through director Alexandria Stapleton and producer Vanessa Sanchez, made specific promises that Mr. Howard's complete and truthful story as a trafficking victim would be told accurately.

After an initial interview in 2024, Mr. Howard expressed dissatisfaction because he felt he had not been able to fully explain that Cassie Ventura was his primary trafficker. On February 27, 2025, Mr. Howard emailed Ms. Sanchez stating: "Cassandra was a co conspirator who sex trafficked me."

On February 28, 2025, Ms. Sanchez responded on behalf of Defendants with a critical promise: "We are definitely NOT looking to tell a story that is inaccurate." Based on this representation, Mr. Howard agreed to a second interview on March 6, 2025, lasting 4-6 hours, during which he provided extensive testimony about being trafficked by Ventura.

When "The Reckoning" was released on December 2, 2024, Mr. Howard discovered that Defendants had deliberately suppressed his testimony about Ventura being his primary trafficker and instead portrayed her as a victim. Additionally, on December 5, 2025, Netflix publicly claimed that no participants were compensated, which was false—Mr. Howard had been paid via ACH transfer in January 2025 after months of requesting payment.

C. Plaintiff's Financial Circumstances

Mr. Howard is currently unemployed with no regular income. He survives on approximately $800-$1,000 per month in irregular financial assistance from family members. This amount is insufficient to cover his basic monthly expenses, which exceed his income and include rent, utilities, food, transportation, and mental health treatment costs.

Mr. Howard owns no real property, has no vehicle, and possesses minimal personal property consisting only of necessary clothing, basic furniture, a laptop computer, and a cellular phone. His bank account balance is insufficient to cover monthly expenses, and he is behind on rent and utility payments.

Mr. Howard's financial hardship is directly attributable to his trafficking victimization and the resulting psychological trauma, which impairs his ability to maintain steady employment. He requires ongoing therapy and mental health treatment.

D. Meritorious Claims

Mr. Howard brings seven causes of action: (1) fraudulent inducement, (2) defamation per se, (3) intentional infliction of emotional distress, (4) breach of the implied covenant of good faith and fair dealing, (5) fraudulent misrepresentation to the public/consumer fraud, (6) unjust enrichment, and (7) declaratory judgment.

He possesses substantial documentary evidence, including:

    a. The Materials License Agreement dated July 19, 2024

    b. Email correspondence showing Defendants' February 28, 2025 promise that they were "definitely not looking to tell a story that is inaccurate"

    c. Bank records showing ACH payment in January 2025

    d. Email correspondence requesting payment between December 2024 and January 2025

### III. LEGAL STANDARD

CPLR § 1101(a) provides that "Any court of record may direct that a party may prosecute or defend a civil action or proceeding or appeal... without being required to pay fees or costs, if such party is unable to pay the costs, fees and expenses necessary to prosecute or defend the action or to maintain or respond to the appeal."

A. Requirements for Fee Waiver

To obtain a fee waiver under CPLR § 1101, a plaintiff must demonstrate:

    1. Indigency: The applicant is unable to pay court fees without substantial hardship; and

    2. Meritorious Claim: The action is not frivolous and presents a meritorious claim warranting judicial consideration.

*Johnson v. Goord*, 445 F. Supp. 2d 532, 540 (S.D.N.Y. 2006); *Sussman v. New York State Teachers' Ret. Sys.*, 174 A.D.3d 1341, 1342 (3d Dep't 2019).

B. Liberal Construction in Favor of Access to Courts

Fee waiver statutes must be liberally construed to ensure meaningful access to the courts for indigent litigants. *Walker v. Schult*, 717 F.3d 119, 123-24 (2d Cir. 2013). "The right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances and of the constitutional right to due process of law." *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977).

Courts recognize that requiring indigent persons to pay filing fees creates an unconstitutional barrier to justice. *Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971) ("Given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages").

C. Standard for Determining Indigency

Indigency is determined based on the totality of the applicant's financial circumstances, including income, assets, expenses, and debts. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Courts consider:

    a.  Current income from all sources

    b.  Assets and property owned

    c.  Monthly expenses and obligations

    d.  Outstanding debts

    e.  Ability to borrow or obtain credit

    f.  Special circumstances affecting financial status

*Martinez v. Kristi Kleaners, Inc.*, 364 F. Supp. 2d 160, 162 (S.D.N.Y. 2005).

The question is not whether the applicant has any money whatsoever, but whether requiring payment would impose substantial hardship. *Potnick v. New York City Dep't of Educ.*, 2009 WL 3003169, at 2 (E.D.N.Y. Sept. 16, 2009).

D. Standard for Meritorious Claim

A claim is meritorious if it "is not frivolous and has some chance of success." *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 A.D.2d 362, 364 (1st Dep't 1995). The standard is low and does not require a showing that the plaintiff will ultimately prevail. *Sussman*, 174 A.D.3d at 1342.

A complaint is not frivolous if it "states a claim" under the pleading standards of CPLR 3013 and 3016. *Lowe v. New York Botanical Garden*, 2017 WL 4354918, at 2 (S.D.N.Y. Sept. 29, 2017). Courts do not conduct a detailed analysis of the merits at the fee waiver stage. *Sears v. Roberts*, 922 F.3d 1199, 1206 (10th Cir. 2019).

## IV. ARGUMENT

A. Plaintiff Meets the Statutory Requirements for Fee Waiver Under CPLR § 1101

1. Plaintiff Is Indigent and Unable to Pay Court Fees

Mr. Howard easily satisfies the indigency requirement. He is unemployed with no earned income and survives on less than $1,000 per month in irregular family assistance—substantially below the federal poverty guideline of $1,255 per month for a one-person household in 2025. His monthly expenses exceed his income by hundreds of dollars, forcing him to make difficult choices between necessities. He is currently behind on rent and utility payments, has

outstanding medical and credit card debts, and possesses no assets of value beyond necessary
personal property.

Mr. Howard's financial affidavit demonstrates that payment of the $210 filing fee, plus
additional costs, would require him to forego basic necessities such as food, shelter, or medical
treatment. Courts have granted fee waivers to applicants in far better financial circumstances.
*See Martinez*, 364 F. Supp. 2d at 163 (granting fee waiver to plaintiff earning $1,300/month).
Mr. Howard has no family or friends able to loan him money, no access to credit, and no ability
to borrow from financial institutions. The filing fees constitute an insurmountable barrier
preventing him from accessing the courts.

2. Plaintiff's Financial Hardship Is Directly Related to His Trafficking Victimization
Courts recognize that victims of serious crimes often face financial hardship related to their
victimization. See *Doe v. United States*, 838 F.3d 1163, 1167 (10th Cir. 2016) (recognizing
"devastating and long-lasting psychological effects" of sex trafficking).

Mr. Howard's unemployment and limited earning capacity result directly from the severe
psychological trauma he suffered as a trafficking victim. He requires ongoing mental health
treatment, which creates additional financial burdens. His trafficking victimization and
subsequent exploitation by Defendants have created a cycle of financial hardship from which he
cannot escape without judicial intervention.

Denying a fee waiver to a trafficking victim seeking to hold his exploiters accountable would
be unconscionable and contrary to public policy.

B. Plaintiff Has Meritorious Causes of Action

Mr. Howard's Verified Complaint sets forth detailed, well-pleaded causes of action supported by
specific facts and documentary evidence. His claims easily satisfy the low threshold for
"meritorious" under CPLR § 1101.

1. Fraudulent Inducement (First Cause of Action)

Mr. Howard alleges that Defendants made specific, material misrepresentations to induce his
participation in the documentary, particularly the February 28, 2025 statement by Vanessa
Sanchez that Defendants were "definitely NOT looking to tell a story that is inaccurate."
Under New York law, fraudulent inducement requires: "(1) a misrepresentation or omission of
material fact which was false and known to be false by defendant; (2) made for the purpose of

inducing reliance; (3) justifiable reliance; and (4) injury." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

Mr. Howard's allegations satisfy each element with particularity as required by CPLR § 3016(b):

      a.  WHO: Vanessa Sanchez, acting as agent for all Defendants

      b.  WHAT: "We are definitely NOT looking to tell a story that is inaccurate"

      c.  WHEN: February 28, 2025

      d.  WHERE: Via email from Defendants' production office

      e.  WHY FALSE: Defendants had already determined to suppress his account

      f.  RELIANCE: He participated in the March 6, 2025 re-interview

      g.  INJURY: Reputational harm, emotional distress, witness credibility damage

This is a textbook fraudulent inducement claim. Courts have found similar promises actionable. See *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407 (1958) (promises about future performance actionable when made with present intent not to perform).

2. Defamation Per Se (Second Cause of Action)

Mr. Howard alleges that the documentary published false statements about him to millions of viewers by omitting his testimony that Cassie Ventura was his primary trafficker and creating the false impression that Sean Combs alone trafficked him.

Additionally, Netflix's December 5, 2025 public statement falsely claiming no participants were compensated constitutes defamation per se as it damages Mr. Howard's credibility regarding his fraud claims and falsely characterizes his relationship with Defendants.

Defamation per se applies to statements that "charge a person with a serious crime" or "tend to injure a person in their trade, business, or profession." *Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992). The false portrayal of Mr. Howard's trafficking and the false public statement both satisfy this standard.

Mr. Howard alleges actual malice—Defendants knew their portrayals were false because he explicitly told them on February 27, 2025 that "Cassandra was a co conspirator who sex trafficked me," and Netflix knew it had compensated Mr. Howard when it claimed otherwise.

3. Intentional Infliction of Emotional Distress (Third Cause of Action)

Mr. Howard alleges extreme and outrageous conduct: Defendants targeted a documented federal trafficking victim, made promises to tell his story accurately, induced him to provide 4-6

hours of traumatic testimony, deliberately suppressed his account, and manipulated his story to protect his primary trafficker—all for commercial profit.

Under New York law, conduct is extreme and outrageous when it goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized community." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993).

Silencing a trafficking victim to protect his trafficker clearly meets this standard. Courts have found similar exploitation of vulnerable plaintiffs actionable. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303 (1983).

4. Other Causes of Action

Mr. Howard's remaining causes of action—breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation to the public/consumer fraud (including violation of GBL § 349), unjust enrichment, and declaratory judgment—are similarly well-pleaded and supported by specific facts.

The Materials License Agreement is governed by New York law and contains an implied covenant that Defendants would not exercise their editorial discretion "malevolently" to deprive Mr. Howard of the benefit of his bargain. *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995).

Netflix's false public statement violates GBL § 349, which prohibits deceptive consumer-oriented business practices. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).

5. Plaintiff Possesses Substantial Documentary Evidence

Unlike many fee waiver applicants, Mr. Howard possesses extensive documentary evidence supporting his claims:

    a. Materials License Agreement (July 19, 2024)

    b. Email correspondence showing February 27-28, 2025 exchange with specific false promises

    c. Bank records showing ACH payment in January 2025

    d. Payment request emails from December 2024 through January 2025

    e. Netflix's false public statement (December 5, 2025)

This evidence transforms Mr. Howard's claims from mere allegations into documented facts. His case is not speculative—it is supported by a written trail of Defendants' promises, his complaints, their reassurances, and their subsequent betrayal.

C. Plaintiff's Financial Circumstances Demonstrate Inability to Pay Court Fees

1. Income Analysis

Mr. Howard's income is far below any reasonable threshold for self-sufficiency:

    a. Monthly income: $800-$1,000 (irregular family assistance)

    b. Federal poverty guideline (2025): $1,255/month for one person

    c. Mr. Howard's income as % of poverty line: 64-80%

Courts routinely grant fee waivers to applicants with income at or below 125% of the poverty line. See 28 U.S.C. § 1915(a) (federal in forma pauperis standard). Mr. Howard is at approximately 70% of the poverty line.

2. Expense Analysis

Mr. Howard's documented monthly expenses substantially exceed his income:

    a. Rent, utilities, food, transportation, phone, internet, therapy, medications, and basic necessities

    b. Total monthly expenses: Exceed $1,500

    c. Monthly shortfall: At least $500-$700

Mr. Howard is already behind on rent and utilities, demonstrating that his current income is insufficient even for basic survival needs. Requiring him to pay $210+ in court fees would force him to choose between filing this lawsuit and eating, paying rent, or obtaining necessary mental health treatment.

3. Asset Analysis

Mr. Howard owns no assets of value:

    a. No real property

    b. No vehicle

    c. No savings or investments

    d. No retirement accounts

    e. Personal property value: Less than $1,500 (necessary clothing, basic furniture, laptop, phone)

His bank account balance is insufficient to cover even one month's expenses. He has no cushion, no reserves, and no ability to absorb unexpected costs—including court filing fees.

4. Debt Obligations

Mr. Howard has substantial outstanding debts including medical bills, credit card debt, rent arrears, and utility arrears. He is already in financial distress and has no ability to take on additional financial obligations.

5. No Access to Credit or Loans

Mr. Howard has no family or friends able to loan him money for court fees. His financial circumstances make him ineligible for credit cards, personal loans, or any other form of borrowing. The filing fees represent an absolute barrier to courthouse access.

D. Public Policy Supports Granting Fee Waiver to Trafficking Victims

1. Federal and State Policy Protecting Trafficking Victims

Congress and the New York Legislature have established strong public policies protecting trafficking victims and ensuring they have access to justice:

Federal Law:

   a. Trafficking Victims Protection Act of 2000 (TVPA), Pub. L. No. 106-386, 114 Stat. 1464 - Landmark legislation establishing comprehensive protections for trafficking victims

   b. 18 U.S.C. § 1591 - Federal sex trafficking statute recognizing severe harm to victims

   c. Crime Victims' Rights Act, 18 U.S.C. § 3771 - Guarantees trafficking victims the right to be treated with fairness and respect for dignity

New York Law:

   a. New York Social Services Law § 483-ee - Establishes protections and services for trafficking victims

   b. New York Penal Law § 230.34 - Criminalizes sex trafficking, recognizing victims' vulnerability

These statutes reflect a fundamental policy judgment that trafficking victims deserve special protection and support, including access to legal remedies.

2. Access to Justice for Crime Victims

Courts have long recognized that crime victims should not be denied access to courts due to poverty, particularly when seeking redress for the crimes committed against them:

"The denial of access to the courts for those who cannot afford the filing fees would create a system in which only the wealthy could seek judicial redress for wrongs committed against

them. This would be contrary to the fundamental principle that justice should be available to all, not just those who can afford it." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342-43 (1948).

Mr. Howard is not merely a plaintiff seeking monetary recovery—he is a documented federal crime victim seeking to hold accountable those who exploited his trauma for commercial profit. Denying him access to courts would compound the injustice he has already suffered.

3. Preventing Re-Victimization

Trafficking victims often face re-victimization when their trauma is exploited by others. Mr. Howard's claims arise from precisely such exploitation—Defendants induced him to relive his trauma during interviews, promised to tell his story truthfully, and then deliberately suppressed his account to protect his primary trafficker.

Requiring Mr. Howard to pay filing fees to challenge this exploitation would constitute yet another form of victimization, forcing him to choose between financial survival and legal redress. Public policy strongly disfavors such outcomes.

4. Importance of This Case Beyond Individual Relief

This case has significance beyond Mr. Howard's individual circumstances. It addresses:

> a. Whether media companies can fraudulently induce trafficking victims to participate in documentaries
>
> b. Whether such companies can deliberately misrepresent victims' accounts to serve corporate agendas
>
> c. Whether platforms like Netflix can publicly lie about compensating participants to avoid liability
>
> d. Whether trafficking victims have meaningful legal recourse when exploited

Granting this fee waiver serves the public interest by allowing these important questions to be adjudicated.

E. Denial of Fee Waiver Would Violate Plaintiff's Constitutional Right of Access to Courts

1. Constitutional Right of Access to Courts

The United States Supreme Court has held that indigent persons have a constitutional right of access to the courts. *Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971). This right is "an aspect of the First Amendment right to petition the government for redress of grievances and of the constitutional right to due process of law." *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977).

In Boddie, the Supreme Court struck down a Connecticut statute requiring payment of filing fees for divorce actions, holding that when the state monopolizes the means of resolving disputes, it cannot condition access to courts on ability to pay. 401 U.S. at 380-81.

While Boddie involved divorce proceedings, its principles apply with equal or greater force here. Courts are the exclusive forum for resolving Mr. Howard's claims—he cannot obtain relief through any alternative mechanism. Requiring payment he cannot afford effectively denies him access to courts entirely.

2. Heightened Scrutiny for Barriers Affecting Fundamental Rights

"Where the fee operates to deny access to the courts, and the interest at stake is important, the barrier must fall." See *M.L.B. v. S.L.J.*, 519 U.S. 102, 124 (1996) (holding that filing fee requirement for appeals in parental rights termination cases violates due process).

Mr. Howard seeks to vindicate multiple fundamental interests:

      a.  Freedom from fraud: The right not to be deceived and exploited

      b.  Reputation: The right to protection from defamatory falsehoods

      c.  Human dignity: The right as a trafficking victim to have his story told truthfully

      d.  Contractual rights: The right to enforcement of contractual obligations

These interests are sufficiently important that financial barriers preventing their vindication must be eliminated.

3. No Alternative Mechanism for Relief

Unlike some civil disputes that might be resolved through alternative mechanisms (arbitration, mediation, administrative proceedings), Mr. Howard's claims can only be resolved through judicial proceedings. The Materials License Agreement does not provide for arbitration. There is no administrative remedy available.

If denied access to New York courts, Mr. Howard has no alternative forum. This is precisely the circumstance in which constitutional access-to-courts principles apply with greatest force.

4. Particularly Vulnerable Plaintiff

Courts recognize that access-to-courts principles apply with special force to particularly vulnerable plaintiffs. See *Walker v. Schult*, 717 F.3d 119, 123-24 (2d Cir. 2013) (noting fee waiver statutes must be liberally construed).

Mr. Howard is exceptionally vulnerable:

      a.  He is a documented sex trafficking victim suffering from ongoing trauma

    b.  He is indigent with income substantially below poverty line

    c.  He lacks legal representation and proceeds pro se

    d.  He has no family resources or ability to borrow

    e.  His financial hardship results directly from his victimization

Denying this motion would send a clear message: trafficking victims who cannot afford filing fees cannot access courts to challenge their exploitation. Such a result would be unconscionable and unconstitutional.

## V. CONCLUSION

Mr. Howard satisfies both requirements for fee waiver under CPLR § 1101. He is indisputably indigent, with income substantially below the poverty line, no assets of value, mounting debts, and no ability to pay filing fees without sacrificing basic necessities. He has well-pleaded, meritorious causes of action supported by substantial documentary evidence.

Granting this motion serves important public policy interests in ensuring access to justice for trafficking victims and preventing media corporations from exploiting vulnerable individuals with impunity. Denying this motion would violate Mr. Howard's constitutional right of access to courts and compound the injustices he has already suffered.

For these reasons, Mr. Howard respectfully requests that this Court grant his motion for waiver of all court fees associated with this action.

DATED: December 13, 2025
Carteret, New Jersey

                                  Respectfully submitted,

                                    *Clayton Howard*

                                    CLAYTON HOWARD
                                    Plaintiff Pro Se
                                    24 Orchard Street
                                    Carteret, New Jersey 07008
                                    (929) 781-7791
                                    itsclaytonhoward@gmail.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CLAYTON HOWARD,                                    Index No.: 101491/2025
                *Plaintiff,*

-against-

NETFLIX, INC., CURTIS JACKSON                     ORDER GRANTING MOTION
(professionally known as "50 Cent"),              FOR WAIVER OF COURT FEES
ALEXANDRIA STAPLETON,
G-UNIT FILMS AND TELEVISION INC.,
HOUSE OF NONFICTION INC.,
 and WEST TOWER ROAD LLC,
                *Defendants,*

Upon reading and filing the Notice of Motion for Waiver of Court Fees, dated December 13, 2025; the Affidavit of Clayton Howard, sworn to December 13, 2025; the Memorandum of Law in Support of Motion for Waiver of Court Fees; the Verified Complaint; and all other papers and proceedings heretofore had herein; and due deliberation having been had thereon,

NOW, upon motion of Plaintiff CLAYTON HOWARD, appearing pro se, for an Order pursuant to CPLR § 1101 waiving court fees, and it appearing to the satisfaction of this Court that:

1. Plaintiff is unable to pay the costs, fees, and expenses necessary to prosecute this action without substantial hardship and deprivation of basic necessities;

2. Plaintiff is indigent, with income substantially below the federal poverty guidelines;

3. Plaintiff's financial circumstances demonstrate that payment of filing fees would impose an undue burden;

4. Plaintiff has meritorious causes of action that warrant judicial consideration;

5. Plaintiff's claims are supported by specific factual allegations and documentary evidence;

6. Plaintiff is a documented federal sex trafficking victim whose financial hardship relates directly to his victimization;

7. Public policy strongly favors ensuring access to courts for trafficking victims seeking redress;

8. Denial of this motion would violate Plaintiff's constitutional right of access to courts; and

9. Good cause has been shown;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Waiver of Court Fees pursuant to CPLR § 1101 is GRANTED in its entirety;

2. Plaintiff CLAYTON HOWARD is permitted to prosecute this action without payment of any filing fees, including but not limited to:

   a. The fee for filing the Summons and Verified Complaint;

   b. The fee for obtaining an index number;

   c. Any fees associated with service of process;

   d. Any fees for filing motions or other papers during the pendency of this action;

   e. Any fees for filing a Notice of Appeal, should an appeal become necessary;

   f. Any other court fees and costs ordinarily required in civil actions;

3. Plaintiff is permitted to proceed in forma pauperis throughout the pendency of this action and any appeals;

4. The County Clerk is directed to accept all filings by Plaintiff in this action without payment of fees;

5. This fee waiver shall remain in effect for the duration of this action and any subsequent appeals, unless modified by further Order of this Court upon a showing of material change in Plaintiff's financial circumstances;

6. This Order does not waive any costs that may be awarded against Plaintiff if Defendants ultimately prevail in this action, provided that any such cost award shall be subject to Plaintiff's ability to pay;

7. This Order does not affect Defendants' obligation to pay their own fees and costs;

8. This fee waiver extends to all necessary court proceedings, including but not limited to motion practice, discovery proceedings, trial, and any post-judgment proceedings;

9. The Clerk of Court shall file this Order and the accompanying motion papers without fee;

10. No undertaking or bond shall be required of Plaintiff as a condition of maintaining this action.

IT IS FURTHER ORDERED that this matter shall proceed in the regular course, and Defendants shall respond to the Complaint in accordance with the applicable provisions of the CPLR.

ENTER:

DATED: December 20, 2025
New York, New York

HON._____
Justice, Supreme Court
New York County

## EXHIBIT LIST

The following exhibits are attached to and made part of this Motion for Waiver of Court Fees:

EXHIBIT A: Verified Complaint dated December 13, 2025

EXHIBIT B: Fee Waiver Application Form (CIV-GP-15-i)

EXHIBIT C: Navy Federal Bank Statement- six (6) months

EXHIBIT D: Correspondence regarding financial assistance from family - IF AVAILABLE

EXHIBIT E: Materials License Agreement dated July 19, 2024

EXHIBIT F: Email correspondence between Clayton Howard and Vanessa Sanchez dated February 27-28, 2025

EXHIBIT G: Email correspondence between Clayton Howard and Vanessa Sanchez dated December 2024 through January 2025 discussing payment as stated by Ms Sanchez, representative of defendants.

EXHIBIT H: Summons notifying Defendants of pending civil action

# Exhibit G

Navy Federal Financial Statement

Page 1 of 3



**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

## Statement of Account

Statement Period
05/10/25 - 06/09/25

Access No.

#BWNLLSV
#000000R0T8UYP7A1#000JMU00F
CLAYTON HOWARD
24 ORCHARD ST
CARTERET NJ 07008-1324

Routing Number:                4

Questions about this Statement?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

**Say "Yes" to Paperless! View your
digital statements via Mobile or
Navy Federal Online Banking.**

**IMPORTANT CHANGE IN TERMS OF SERVICE EFFECTIVE AS OF 23 JUNE 2025**
We are amending our funds availability policy concerning the deposit of checks into
consumer and business accounts. The details of the change can be found here:
**navyfederal.org/campaigns/emessage/change-in-terms-notice.html.**

Please read this information carefully. If you have any questions, please contact Navy
Federal at 888-842-6328 or send us an eMessage via online banking.

## Summary of your deposit accounts

|  | Previous Balance | Deposits/ Credits | Withdrawals/ Debits | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| e-Checking | $970.44 - | $970.44 | $0.00 | $0.00 | $0.01 |
| Membership Savings | $5.00 | $0.00 | $0.00 | $5.00 | $0.00 |
| **Totals** | **$965.44 -** | **$970.44** | **$0.00** | **$5.00** | **$0.01** |

REMITTANCE RECEIVED AFTER STATEMENT PERIOD WILL APPEAR ON YOUR NEXT STATEMENT

CLAYTON HOWARD

20485907

MARK "X" TO CHANGE
ADDRESS/ORDER
ITEMS ON REVERSE

NFCU
PO BOX 3100
MERRIFIELD VA 22119-3100

**DEPOSIT VOUCHER**
(FOR MAIL USE ONLY. DO NOT SEND CASH THROUGH THE MAIL
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL)

| ACCOUNT NUMBER | ACCOUNT TYPE | AMOUNT ENCLOSED |
|---|---|---|
|  |  |  |
|  | Savings |  |
|  |  |  |
|  |  |  |
|  | TOTAL |  |

4057175313274320422388100000000000000000000000000000006

Page 2 of 3

**NAVY ⊕ FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period

**Statement of Account**
For CLAYTON HOWARD

Access No. 2

## Checking

### e-Checking -

Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|------|--------------------|-----------|------------|
| 05-10 | Beginning Balance | | 970.44- |
| 05-19 | Charge-Off ADJ | 970.44 | 0.00 |
| 06-09 | Ending Balance | | 0.00 |

*Average Daily Balance - Current Cycle: $281.74-*
*Account Closed*

## Savings

### Membership Savings -.

Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|------|--------------------|-----------|------------|
| 05-10 | Beginning Balance | | 5.00 |
| | No Transactions This Period | | |
| 06-09 | Ending Balance | | 5.00 |

**CHANGE OF ADDRESS**
PLEASE PRINT. USE BLUE OR BLACK BALL POINT PEN.

| RANK/RATE | NAME (FIRST | MI | LAST) | ACCOUNT NUMBERS AFFECTED |
|-----------|-------------|-----|-------|--------------------------|
| ADDRESS (NO. STREET) | | | | |
| | | | | |
| CITY | | STATE | ZIP CODE | |
| SIGNATURE OF NAVY FEDERAL MEMBER | | | | |
| EFFECTIVE DATE (MO., DAY, YR.) | | HOME TELEPHONE NUMBER | | DAYTIME TELEPHONE NUMBER |

Printed: 1/27/2028



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
05/10/25 - 06/09/25

Access No

**Statement of Account**
For CLAYTON HOWARD

**Disclosure Information**
* The interest charge on the Checking Line of Credit advances begins to accrue on the date an advance is posted to your account and continues to accrue daily on the unpaid principal balance.
* We calculate the interest charge on your account by applying the daily periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances or fees, and subtract any payments, credits, or unpaid interest charges.
* You may also determine the amount of interest charges by multiplying the "Balance Subject to Interest Rate" by the number of days in the billing cycle and the daily periodic rate. The "Balance Subject to Interest Rate" disclosed in the Interest Charge Calculation table is the "average daily balance." To calculate the "average daily balance" add up all the "daily balances" for the billing cycle and divide the total by the number of days in the billing cycle.
* If there are two or more daily periodic rates imposed during the billing cycle, you may determine the amount of interest charges by multiplying each of the "Balances Subject to Interest Rate" by the number of days the applicable rate was in effect and multiplying each of the results by the applicable daily periodic rate and adding the results together.

**What to Do if You Think You Find a Mistake on Your Statement**

**Errors Related to a Checking Line of Credit Advance**
If you think there is an error on your statement, write to us at:
Navy Federal Credit Union, PO Box 3000, Merrifield, VA 22119-3000, or by fax, 1-703-206-4244.
You may also contact us on the Web: navyfederal.org.
In your letter, give us the following information:
* **Account Information:** Your name and account number.
* **Dollar amount:** The dollar amount of the suspected error.
* **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing (or electronically). You may call us, but if you do, we are not required to investigate any potential error and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
* We cannot try to collect the amount in question or report you as delinquent on that amount.
* The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
* While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
* We can apply any unpaid amount against your credit limit.
If we take more than 10 days in resolving an electronic transfer inquiry, we will provisionally credit your account for the amount in question so that you will have access to the funds during the time of our investigation.

**Errors Within Your Checking Account, Money Market Savings Account, or Savings Account**
In case of errors or questions about your electronic transfers telephone us at 1-889-842-6328, write us at the address provided above, or through Navy Federal Online Banking as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.
* Tell us your name and account number (if any).
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
* Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**Payments**
Your check must be payable to Navy Federal Credit Union and include your Checking Line of Credit account number. Include the voucher found at the bottom of your statement and mail the enclosed envelope to: Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. Payments received by 5:00 pm Eastern Time at the mail address above will be credited the same day. Mailed payments for your Checking Line of Credit account may not be commingled with funds designated for credit to other Navy Federal Credit Union accounts.

Page 1 of 2

# NAVY FEDERAL
## Credit Union
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement of Account**

Statement Period
09/10/25 - 10/09/25

Access No.

#BWNLLSV
#000000R0T8UYP7A1#0000MC00F
CLAYTON HOWARD
24 ORCHARD ST
CARTERET NJ 07008-1324

Routing Number: 2560-7497-4

Questions about this Statement?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit navyfederal.org/overseas/
Collect internationally 1-703-255-8837

Say "Yes" to Paperless! View your
digital statements via Mobile or
Navy Federal Online Banking.

**Say "Yes" to Paperless Statements**
If you haven't already, go paperless! You can access up to 36 months of statements anytime, anywhere.
To get started, select "Statements" in digital banking.*
It's an easy way to reduce the risk of identity theft and cut down on paper clutter.
Insured by NCUA. *Message and data rates may apply. Visit navyfederal.org for more information.

## Summary of your deposit accounts

| | Previous Balance | Deposits/ Credits | Withdrawals/ Debits | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| Membership Savings 3204223881 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Savings
### Membership Savings - 3204223881

Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|---|---|---|---|
| 09-10 | Beginning Balance | | 0.00 |
| | No Transactions This Period | | |
| 10-09 | Ending Balance | | 0.00 |

REMITTANCE RECEIVED AFTER STATEMENT PERIOD WILL APPEAR ON YOUR NEXT STATEMENT.

CLAYTON HOWARD

20485907

**DEPOSIT VOUCHER**
(FOR MAIL USE ONLY. DO NOT SEND CASH THROUGH THE MAIL
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL)

MARK "X" TO CHANGE
ADDRESS/ORDER
ITEMS ON REVERSE

| ACCOUNT NUMBER | ACCOUNT TYPE | AMOUNT ENCLOSED |
|---|---|---|
| | Savings | |
| | | |
| | | |
| | | |
| | TOTAL | |

NFCU
PO BOX 3100
MERRIFIELD VA 22119-3100

4053204223881000000000000000000000000000000000000000000000



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement of Account**
For CLAYTON HOWARD

*Your share balance is below the minimum required by federal credit union bylaws. Request you increase your balance to $5.00.*

**Disclosure Information**

- The interest charge on the Checking Line of Credit advances begins to accrue on the date an advance is posted to your account and continues to accrue daily on the unpaid principal balance.
- We calculate the interest charge on your account by applying the daily periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances or fees, and subtract any payments, credits, or unpaid interest charges.
- You may also determine the amount of interest charges by multiplying the "Balance Subject to Interest Rate" by the number of days in the billing cycle and the daily periodic rate. The "Balance Subject to Interest Rate" disclosed in the Interest Charge Calculation table is the "average daily balance." To calculate the "average daily balance" add up all the "daily balances" for the billing cycle and divide the total by the number of days in the billing cycle.
- If there are two or more daily periodic rates imposed during the billing cycle, you may determine the amount of interest charges by multiplying each of the "Balances Subject to Interest Rate" by the number of days the applicable rate was in effect and multiplying each of the results by the applicable daily periodic rate and adding the results together.

**What to Do if You Think You Find a Mistake on Your Statement**
**Errors Related to a Checking Line of Credit Advance**
If you think there is an error on your statement, write to us at:
Navy Federal Credit Union, PO Box 3000, Merrifield, VA 22119-3000, or by fax, 1-703-206-4244.
You may also contact us on the Web: navyfederal.org.
In your letter, give us the following information:

- **Account information:** Your name and account number.
- **Dollar amount:** The dollar amount of the suspected error.
- **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake. You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing (or electronically). You may call us, but if you do, we are not required to investigate any potential error, and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

If we take more than 10 days in resolving an electronic transfer inquiry, we will provisionally credit your account for the amount in question so that you will have access to the funds during the time of our investigation.

**Errors Within Your Checking Account, Money Market Savings Account, or Savings Account**
In case of errors or questions about your electronic transfers telephone us at 1-888-842-6328, write us at the address provided above, or through Navy Federal Online Banking as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**Payments**
Your check must be payable to Navy Federal Credit Union and include your Checking Line of Credit account number. Include the voucher found at the bottom of your statement and mail the enclosed envelope to: Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. Payments received by 5:00 pm Eastern Time at the mail address above will be credited the same day. Mailed payments for your Checking Line of Credit account may not be commingled with funds designated for credit to other Navy Federal Credit Union accounts.

**CHANGE OF ADDRESS**
PLEASE PRINT. USE BLUE OR BLACK BALL POINT PEN.

| RANK/RATE | NAME (FIRST | MI | LAST) | ACCOUNT NUMBERS AFFECTED |
|---|---|---|---|---|
| ADDRESS (NO. STREET) | | | | |
| CITY | | STATE | ZIP CODE | |
| SIGNATURE OF NAVY FEDERAL MEMBER | | | | |
| EFFECTIVE DATE (MO., DAY, YR.) | | HOME TELEPHONE NUMBER ( ) | | DAYTIME TELEPHONE NUMBER ( ) |



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement of Account**

Page 1 of 2

Statement Period
06/10/25 - 07/09/25

Access No. ⁿⁿ ˙

Routing Number: 2560-7497-4

#BWNLLSV
#000000R0T8UYP7A1#000JML00F
CLAYTON HOWARD
24 ORCHARD ST
CARTERET NJ 07008-1324

Questions about this Statement?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit navyfederal.org/overseas/
Collect internationally 1-703-255-8837

Say "Yes" to Paperless! View your
digital statements via Mobile or
Navy Federal Online Banking.

**IMPORTANT CHANGE IN TERMS OF SERVICE EFFECTIVE AS OF 23 JUNE 2025**
We are amending our funds availability policy concerning the deposit of checks into
consumer and business accounts. The details of the change can be found here:
navyfederal.org/campaigns/emessage/change-in-terms-notice.html.

Please read this information carefully. If you have any questions, please contact Navy
Federal at 888-842-6328 or send us an eMessage via online banking.

## Summary of your deposit accounts

| | Previous Balance | Deposits/ Credits | Withdrawals/ Debits | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| Membership Savings | $5.00 | $0.00 | $5.00 | $0.00 | $0.00 |
| **Totals** | **$5.00** | **$0.00** | **$5.00** | **$0.00** | **$0.00** |

## Savings

### Membership Savings

Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|---|---|---|---|
| 06-10 | Beginning Balance | | 5.00 |
| 06-25 | Sav Adjustment - DR | 5.00- | 0.00 |
| 07-09 | Ending Balance | | 0.00 |

REMITTANCE RECEIVED AFTER STATEMENT PERIOD WILL APPEAR ON YOUR NEXT STATEMENT

CLAYTON HOWARD

20485907

MARK "X" TO CHANGE
ADDRESS/ORDER
ITEMS ON REVERSE

NFCU
PO BOX 3100
MERRIFIELD VA 22119-3100

**DEPOSIT VOUCHER**
(FOR MAIL USE ONLY. DO NOT SEND CASH THROUGH THE MAIL
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL)

| ACCOUNT NUMBER | ACCOUNT TYPE | AMOUNT ENCLOSED |
|---|---|---|
| ‹ | Savings | |
| | | |
| | | |
| | | |
| | TOTAL | |

40532042238810000000000000000000000000000000000000000000

**NAVY ⊕ FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
06/10/25 - 07/09/25

Access No. 2

**Statement of Account**
For CLAYTON HOWARD

*Your share balance is below the minimum required by federal credit union bylaws. Request you increase your balance to $5.00.*

**Disclosure Information**

- The interest charge on the Checking Line of Credit advances begins to accrue on the date an advance is posted to your account and continues to accrue daily on the unpaid principal balance.
- We calculate the interest charge on your account by applying the daily periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances or fees, and subtract any payments, credits, or unpaid interest charges.
- You may also determine the amount of interest charges by multiplying the "Balance Subject to Interest Rate" by the number of days in the billing cycle and the daily periodic rate. The "Balance Subject to Interest Rate" disclosed in the Interest Charge Calculation table is the "average daily balance." To calculate the "average daily balance" add up all the "daily balances" for the billing cycle and divide the total by the number of days in the billing cycle.
- If there are two or more daily periodic rates imposed during the billing cycle, you may determine the amount of interest charges by multiplying each of the "Balances Subject to Interest Rate" by the number of days the applicable rate was in effect and multiplying each of the results by the applicable daily periodic rate and adding the results together.

**What to Do if You Find a Mistake on Your Statement**

**Errors Related to a Checking Line of Credit Advance**

If you think there is an error on your statement, write to us at:

Navy Federal Credit Union, PO Box 3000, Merrifield, VA 22119-3000; or by fax, 1-703-206-4244.

You may also contact us on the Web: navyfederal.org.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing (or electronically). You may call us, but if you do, we are not required to investigate any potential error, and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

If we take more than 10 days in resolving an electronic transfer inquiry, we will provisionally credit your account for the amount in question so that you will have access to the funds during the time of our investigation.

**Errors Within Your Checking Account, Money Market Savings Account, or Savings Account**

In case of errors or questions about your electronic transfers telephone us at 1-888-842-6328, write us at the address provided above, or through Navy Federal Online Banking as soon as you can, if you think your statement or receipt is wrong, or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**Payments**

Your check must be payable to Navy Federal Credit Union and include your Checking Line of Credit account number. Include the voucher found at the bottom of your statement and mail the enclosed envelope to: Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. Payments received by 5:00 pm Eastern Time at the mail address above will be credited the same day. Mailed payments for your Checking Line of Credit account may not be commingled with funds designated for credit to other Navy Federal Credit Union accounts.

**CHANGE OF ADDRESS**
PLEASE PRINT. USE BLUE OR BLACK BALL POINT PEN.

| RANK/RATE | NAME (FIRST | MI | LAST) | ACCOUNT NUMBERS AFFECTED |
|---|---|---|---|---|
| ADDRESS (NO. STREET) | | | | |
| | | | | |
| CITY | | STATE | ZIP CODE | |
| SIGNATURE OF NAVY FEDERAL MEMBER | | | | |
| EFFECTIVE DATE (MO., DAY, YR.) | HOME TELEPHONE NUMBER ( ) | | | DAYTIME TELEPHONE NUMBER ( ) |

**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Page 1 of 2

## Statement of Account

Statement Period
07/10/25 - 08/09/25

Access No. _

#BWNLLSV
#000000R0T8UYP7A1#000AMU00F
CLAYTON HOWARD
24 ORCHARD ST
CARTERET NJ 07008-1324

Routing Number: 2560-7497-4

Questions about this Statement?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit navyfederal.org/overseas/
Collect internationally 1-703-255-8837

Say "Yes" to Paperless! View your
digital statements via Mobile or
Navy Federal Online Banking.

### IMPORTANT CHANGE IN TERMS OF SERVICE EFFECTIVE AS OF 23 JUNE 2025
We are amending our funds availability policy concerning the deposit of checks into
consumer and business accounts. The details of the change can be found here:
navyfederal.org/campaigns/emessage/change-in-terms-notice.html.

Please read this information carefully. If you have any questions, please contact Navy
Federal at 888-842-6328 or send us an eMessage via online banking.

## Summary of your deposit accounts

|  | Previous Balance | Deposits/ Credits | Withdrawals/ Debits | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| **Membership Savings** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Totals** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Savings
### Membership Savings
Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|---|---|---|---|
| 07-10 | Beginning Balance | | 0.00 |
| | No Transactions This Period | | |
| 08-09 | **Ending Balance** | | **0.00** |

REMITTANCE RECEIVED AFTER STATEMENT PERIOD WILL APPEAR ON YOUR NEXT STATEMENT

CLAYTON HOWARD

20485907

MARK "X" TO CHANGE
ADDRESS/ORDER
ITEMS ON REVERSE

NFCU
PO BOX 3100
MERRIFIELD VA 22119-3100

### DEPOSIT VOUCHER
(FOR MAIL USE ONLY. DO NOT SEND CASH THROUGH THE MAIL
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL)

| ACCOUNT NUMBER | ACCOUNT TYPE | AMOUNT ENCLOSED |
|---|---|---|
| | Savings | |
| | | |
| | | |
| | | |
| | TOTAL | |

4053204223881000000000000000000000000000000000000000000000



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
07/10/25 - 08/09/25

Access No

**Statement of Account**
For CLAYTON HOWARD

*Your share balance is below the minimum required by federal credit union bylaws. Request you increase your balance to $5.00.*

**Disclosure Information**

- The interest charge on the Checking Line of Credit advances begins to accrue on the date an advance is posted to your account and continues to accrue daily on the unpaid principal balance.
- We calculate the interest charge on your account by applying the daily periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances or fees, and subtract any payments, credits, or unpaid interest charges.
- You may also determine the amount of interest charges by multiplying the "Balance Subject to Interest Rate" by the number of days in the billing cycle and the daily periodic rate. The "Balance Subject to Interest Rate" disclosed in the Interest Charge Calculation table is the "average daily balance." To calculate the "average daily balance" add up all the "daily balances" for the billing cycle and divide the total by the number of days in the billing cycle.
- If there are two or more daily periodic rates imposed during the billing cycle, you may determine the amount of interest charges by multiplying each of the "Balances Subject to Interest Rate" by the number of days the applicable rate was in effect and multiplying each of the results by the applicable daily periodic rate and adding the results together.

**What to Do if You Think You Find a Mistake on Your Statement**

**Errors Related to a Checking Line of Credit Advance**

If you think there is an error on your statement, write to us at:

Navy Federal Credit Union, PO Box 3000, Merrifield, VA 22119-3000; or by fax, 1-703-206-4244.

You may also contact us on the Web: navyfederal.org

In your letter, give us the following information:

- **Account information:** Your name and account number.
- **Dollar amount:** The dollar amount of the suspected error.
- **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing (or electronically). You may call us, but if you do, we are not required to investigate any potential error, and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

If we take more than 10 days in resolving an electronic transfer inquiry, we will provisionally credit your account for the amount in question so that you will have access to the funds during the time of our investigation.

**Errors Within Your Checking Account, Money Market Savings Account, or Savings Account**

In case of errors or questions about your electronic transfers telephone us at 1-888-842-6328, write us at the address provided above, or through Navy Federal Online Banking as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**Payments**

Your check must be payable to Navy Federal Credit Union and include your Checking Line of Credit account number. Include the voucher found at the bottom of your statement and mail the enclosed envelope to: Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. Payments received by 5:00 pm Eastern Time at the mail address above will be credited the same day. Mailed payments for your Checking Line of Credit account may not be commingled with funds designated for credit to other Navy Federal Credit Union accounts.

**CHANGE OF ADDRESS**
PLEASE PRINT. USE BLUE OR BLACK BALL POINT PEN.

| RANK/RATE | NAME (FIRST | MI | LAST) | ACCOUNT NUMBERS AFFECTED |
|---|---|---|---|---|
| ADDRESS (NO. STREET) | | | | |
| | | | | |
| CITY | | STATE | ZIP CODE | |
| SIGNATURE OF NAVY FEDERAL MEMBER | | | | |
| EFFECTIVE DATE (MO., DAY, YR.) | HOME TELEPHONE NUMBER ( ) | | | DAYTIME TELEPHONE NUMBER ( ) |

**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement of Account**

Page 1 of 2

Statement Period
08/10/25 - 09/09/25

Access No.

Routing Number: 2560-7497-4

#BWNLLSV
#000000R0T8UYP7A1#000SME00F
CLAYTON HOWARD
24 ORCHARD ST
CARTERET NJ 07008-1324

Questions about this Statement?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit navyfederal.org/overseas/
Collect internationally 1-703-255-8837

Say "Yes" to Paperless! View your
digital statements via Mobile or
Navy Federal Online Banking.

**IMPORTANT CHANGE IN TERMS OF SERVICE EFFECTIVE AS OF 23 JUNE 2025**
We are amending our funds availability policy concerning the deposit of checks into
consumer and business accounts. The details of the change can be found here:
navyfederal.org/campaigns/emessage/change-in-terms-notice.html.

Please read this information carefully. If you have any questions, please contact Navy
Federal at 888-842-6328 or send us an eMessage via online banking.

## Summary of your deposit accounts

|  | Previous Balance | Deposits/ Credits | Withdrawals/ Debits | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| Membership Savings | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Totals** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |

## Savings

**Membership Savings** :81

Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|---|---|---|---|
| 08-10 | Beginning Balance | | 0.00 |
| | No Transactions This Period | | |
| 09-09 | **Ending Balance** | | **0.00** |

REMITTANCE RECEIVED AFTER STATEMENT PERIOD WILL APPEAR ON YOUR NEXT STATEMENT

CLAYTON HOWARD

20485907

MARK "X" TO CHANGE
ADDRESS/ORDER
ITEMS ON REVERSE

NFCU
PO BOX 3100
MERRIFIELD VA 22119-3100

**DEPOSIT VOUCHER**
(FOR MAIL USE ONLY. DO NOT SEND CASH THROUGH THE MAIL
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL)

| ACCOUNT NUMBER | ACCOUNT TYPE | AMOUNT ENCLOSED |
|---|---|---|
| | Savings | |
| | | |
| | | |
| | | |
| | TOTAL | |

4053204223881000000000000000000000000000000000000000000

Page 2 of 2



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement Period**
08/10/25 - 09/09/25

Access No. L.. ...

**Statement of Account**
For CLAYTON HOWARD

*Your share balance is below the minimum required by federal credit union bylaws. Request you increase your balance to $5.00.*

**Disclosure Information**
- The interest charge on the Checking Line of Credit advances begins to accrue on the date an advance is posted to your account and continues to accrue daily on the unpaid principal balance.
- We calculate the interest charge on your account by applying the daily periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances or fees, and subtract any payments, credits, or unpaid interest charges.
- You may also determine the amount of interest charges by multiplying the "Balance Subject to Interest Rate" by the number of days in the billing cycle and the daily periodic rate. The "Balance Subject to Interest Rate" disclosed in the Interest Charge Calculation table is the "average daily balance." To calculate the "average daily balance" add up all the "daily balances" for the billing cycle and divide the total by the number of days in the billing cycle.
- If there are two or more daily periodic rates imposed during the billing cycle, you may determine the amount of interest charges by multiplying each of the "Balances Subject to Interest Rate" by the number of days the applicable rate was in effect and multiplying each of the results by the applicable daily periodic rate and adding the results together.

**What to Do if You Think You Find a Mistake on Your Statement**

**Errors Related to a Checking Line of Credit Advance**
If you think there is an error on your statement, write to us at:
Navy Federal Credit Union, PO Box 3000, Merrifield, VA 22119-3000; or by fax, 1-703-206-4244.
You may also contact us on the Web: navyfederal.org.
In your letter, give us the following information:
- **Account Information:** Your name and account number.
- **Dollar amount:** The dollar amount of the suspected error.
- **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing (or electronically). You may call us, but if you do, we are not required to investigate any potential error, and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.
If we take more than 10 days in resolving an electronic transfer inquiry, we will provisionally credit your account for the amount in question so that you will have access to the funds during the time of our investigation.

**Errors Within Your Checking Account, Money Market Savings Account, or Savings Account**
In case of errors or questions about your electronic transfers telephone us at 1-888-842-6328, write us at the address provided above, or through Navy Federal Online Banking as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.
- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**Payments**
Your check must be payable to Navy Federal Credit Union and include your Checking Line of Credit account number. Include the voucher found at the bottom of your statement and mail the enclosed envelope to: Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. Payments received by 5:00 pm Eastern Time at the mail address above will be credited the same day. Mailed payments for your Checking Line of Credit account may not be commingled with funds designated for credit to other Navy Federal Credit Union accounts.

**CHANGE OF ADDRESS**
PLEASE PRINT. USE BLUE OR BLACK BALL POINT PEN.

| RANK/RATE | NAME (FIRST | MI | LAST) | ACCOUNT NUMBERS AFFECTED |
|---|---|---|---|---|
| ADDRESS (NO. STREET) | | | | |
| | | | | |
| CITY | | STATE | ZIP CODE | |
| SIGNATURE OF NAVY FEDERAL MEMBER | | | | |
| EFFECTIVE DATE (MO., DAY, YR.) | HOME TELEPHONE NUMBER ( ) | | | DAYTIME TELEPHONE NUMBER ( ) |



Page 1 of 2

**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement of Account**

Statement Period
10/10/25 - 11/09/25

Access No                 7

#BWNLLSV
#000000R0TBUYP7A1#000NM000F
CLAYTON HOWARD
24 ORCHARD ST
CARTERET NJ 07008-1324

Routing Number: 2560-7497-4

Questions about this Statement?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit navyfederal.org/overseas/
Collect internationally 1-703-255-8837

Say "Yes" to Paperless! View your
digital statements via Mobile or
Navy Federal Online Banking.

**Say "Yes" to Paperless Statements**
If you haven't already, go paperless! You can access up to 36 months of statements anytime, anywhere.
To get started, select "Statements" in digital banking.*
It's an easy way to reduce the risk of identity theft and cut down on paper clutter.
Insured by NCUA. *Message and data rates may apply. Visit navyfederal.org for more information.

## Summary of your deposit accounts

|  | Previous Balance | Deposits/ Credits | Withdrawals/ Debits | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| Membership Savings | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Totals** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Savings

### Membership Savings                1

Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|---|---|---|---|
| 10-10 | Beginning Balance | | 0.00 |
| | No Transactions This Period | | |
| 11-09 | Ending Balance | | 0.00 |

REMITTANCE RECEIVED AFTER STATEMENT PERIOD WILL APPEAR ON YOUR NEXT STATEMENT

CLAYTON HOWARD

20485907

**DEPOSIT VOUCHER**
(FOR MAIL USE ONLY. DO NOT SEND CASH THROUGH THE MAIL
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL)

MARK "X" TO CHANGE
ADDRESS/ORDER
ITEMS ON REVERSE

| ACCOUNT NUMBER | ACCOUNT TYPE | AMOUNT ENCLOSED |
|---|---|---|
| | Savings | |
| | | |
| | | |
| | | |
| | TOTAL | |

NFCU
PO BOX 3100
MERRIFIELD VA 22119-3100

405320422388100000000000000000000000000000000000000000

Page 2 of 2

**NAVY ⊕ FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement Period**
10/10/25 - 11/09/25

Access No.

**Statement of Account**
For CLAYTON HOWARD

*Your share balance is below the minimum required by federal credit union bylaws. Request you increase your balance to $5.00.*

**Disclosure Information**

- The interest charge on the Checking Line of Credit advances begins to accrue on the date an advance is posted to your account and continues to accrue daily on the unpaid principal balance.
- We calculate the interest charge on your account by applying the daily periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances or fees, and subtract any payments, credits, or unpaid interest charges.
- You may also determine the amount of interest charges by multiplying the "Balance Subject to Interest Rate" by the number of days in the billing cycle and the daily periodic rate. The "Balance Subject to Interest Rate" disclosed in the Interest Charge Calculation table is the "average daily balance." To calculate the "average daily balance" add up all the "daily balances" for the billing cycle and divide the total by the number of days in the billing cycle.
- If there are two or more daily periodic rates imposed during the billing cycle, you may determine the amount of interest charges by multiplying each of the "Balances Subject to Interest Rate" by the number of days the applicable rate was in effect and multiplying each of the results by the applicable daily periodic rate and adding the results together.

**What to Do if You Think You Find a Mistake on Your Statement**
**Errors Related to a Checking Line of Credit Advance**
If you think there is an error on your statement, write to us at:
Navy Federal Credit Union, PO Box 3000, Merrifield, VA 22119-3000, or by fax, 1-703-206-4244.
You may also contact us on the Web: navyfederal.org.
In your letter, give us the following information:
- **Account information:** Your name and account number.
- **Dollar amount:** The dollar amount of the suspected error.
- **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing (or electronically). You may call us, but if you do, we are not required to investigate any potential error, and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.
If we take more than 10 days in resolving an electronic transfer inquiry, we will provisionally credit your account for the amount in question so that you will have access to the funds during the time of our investigation.
**Errors Within Your Checking Account, Money Market Savings Account, or Savings Account**
In case of errors or questions about your electronic transfers telephone us at 1-888-842-6328, write us at the address provided above, or through Navy Federal Online Banking as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.
- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.
**Payments**
Your check must be payable to Navy Federal Credit Union and include your Checking Line of Credit account number. Include the voucher found at the bottom of your statement and mail the enclosed envelope to: Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. Payments received by 5:00 pm Eastern Time at the mail address above will be credited the same day. Mailed payments for your Checking Line of Credit account may not be commingled with funds designated for credit to other Navy Federal Credit Union accounts.

**CHANGE OF ADDRESS**
PLEASE PRINT. USE BLUE OR BLACK BALL POINT PEN.

| RANK/RATE | NAME (FIRST | MI | LAST) | ACCOUNT NUMBERS AFFECTED |
|---|---|---|---|---|
| ADDRESS (NO. STREET) | | | | |
| CITY | | STATE | ZIP CODE | |
| SIGNATURE OF NAVY FEDERAL MEMBER | | | | |
| EFFECTIVE DATE (MO., DAY, YR.) | HOME TELEPHONE NUMBER | | | DAYTIME TELEPHONE NUMBER |

101491/2025 AFFIDAVIT/APPLICATION TO COMMENCE ACTION VS DOC5 P    Case 1:26-cv-00707    Document 1-2    Filed 01/28/26    Page 48 of 49

Page 47 of 48

New York State driver license for HOWARD CLAYTON,M L — 24 ORCHARD ST, CARTERET, NJ 07008 — Issued 09/13/2025 — Expires 08/26/2033 — Sex M, Height 6'-02", Eyes BRO

INDEX NO. $\underline{10149}$ / $\underline{2025}$

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF NEW YORK**

Clayton Howard

**Plaintiff/Petitioner**

- against -

House of non fiction, Westotower Road, Inc
NetFlix Inc, Alexandra Stephchn, Curtis Jackson

**Defendant/Respondent**

To the best of my knowledge, information and belief,

formed after an inquiry reasonable under the circumstances,

the presentation of these papers or the contentions therein

are not frivolous as defined in subsection (c) of section

130-1.1 of the Rules of the Chief Administrator (22NYCRR)

Sign Name: Clay K

Print Name: Clayton Howard

Address: 24 Orchard st

Cranford NJ 07008

Telephone: 929 781 7791

Email: itsclayton howard@gmail.com