UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CLAYTON HOWARD,  Civil Action No.: 1:26-cv-00707(DEH)(SN)

    *Plaintiff*,

v.

NETFLIX, INC.,  PLAINTIFF'S RICO CASE STATEMENT

CURTIS JACKSON,  *Submitted Pursuant to the Individual Practices of*

ALEXANDRIA STAPLETON,  *This Court*

G-UNIT FILMS AND TELEVISION INC.,

HOUSE OF NONFICTION INC., and

WEST TOWER ROAD LLC,

    *Defendants*.

Plaintiff Clayton Howard, proceeding pro se, respectfully submits this RICO Case Statement pursuant to this Court's Individual Practices and *Local Civil Rule 9(b)*, in support of his claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, as pleaded in his Amended Complaint.

### 1. STATUTORY BASIS FOR RICO LIABILITY

1. Plaintiff asserts violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). Under § 1962(c), each Defendant, being a person employed by or associated with an enterprise engaged in interstate commerce, conducted or participated in the conduct of that enterprise's affairs through a pattern of racketeering activity. Under § 1962(d), each Defendant conspired to violate § 1962(c).

### 2. DEFENDANTS AND THEIR ALLEGED MISCONDUCT

2. Each Defendant participated in the Documentary Production Enterprise and engaged in the following misconduct:

    (a) Netflix, Inc.: Authorized, financed, and distributed "Diddy: The Making of a Bad Boy," knowingly releasing a documentary that suppressed Plaintiff's account of being trafficked

by Cassie Ventura. On December 5, 2025, Netflix transmitted false public statements via interstate wire denying that participants were compensated, when Plaintiff had in fact received a $2,000 ACH payment from enterprise entity West Tower Road. Netflix served as final editorial authority and primary financial beneficiary of the racketeering scheme.

(b) Curtis Jackson (a/k/a "50 Cent"): Served as executive producer and drove editorial decisions to focus the documentary exclusively on Sean Combs, in furtherance of his personal and business vendetta against Combs, suppressing Plaintiff's account of Ventura's role as his primary trafficker.

(c) Alexandria Stapleton: Served as Director/Executive Producer, conducted both interviews with Plaintiff, made editorial decisions to omit Plaintiff's testimony regarding Ventura, and participated in the fraudulent inducement of Plaintiff's March 6, 2025 re-interview.

(d) G-Unit Films and Television Inc.: New York production company through which Curtis Jackson exercised editorial control, participating in the enterprise's suppression of Plaintiff's testimony.

(e) House of Nonfiction Inc.: Production company employing Stapleton and Sanchez; transmitted the February 28, 2025 fraudulent inducement email and the December 28, 2024–January 16, 2025 payment delay communications via interstate wire.

(f) West Tower Road LLC: Executed the Materials License Agreement with Plaintiff on July 19, 2024; served as the payment-disbursing entity through which participant compensation was routed, and participated in the payment delay scheme described herein.

3. OTHER WRONGDOERS NOT NAMED AS DEFENDANTS

3. Vanessa Sanchez (employee/agent of House of Nonfiction Inc.) personally transmitted the February 28, 2025 fraudulent inducement email and the series of wire fraud communications between December 28, 2024, and January 16, 2025, in furtherance of the enterprise's scheme. Sanchez acted as the enterprise's designated agent for participant relations and was the primary instrument of the predicate wire fraud acts.

4. ALLEGED VICTIMS AND INJURIES

4. Clayton Howard is the primary victim. As a documented federal sex trafficking victim (Victim #2, Count 3, *United States v. Sean Combs*, No. 24-cr-542(AS) (S.D.N.Y.)), and a cooperating witness in that prosecution, Plaintiff was injured as follows:

(a) Deprivation of intellectual property: Plaintiff's exclusive first-person testimony regarding Cassie Ventura's role as his primary trafficker was extracted through fraud and suppressed, depriving him of the commercial and evidentiary value of his narrative rights;

(b) Impairment of civil claim value: The documentary's false narrative, publicly distributed to millions, contaminated the jury pool and diminished the evidentiary foundation supporting Plaintiff's pending federal civil case, Howard v. Sean Combs et al., No. CV25-06031(AH) (C.D. Cal.);

(c) Loss of compensation: Plaintiff was subjected to a deliberate 45-day payment delay scheme following the documentary's December 2, 2024 release; and

(d) Reputational and psychological harm: The misrepresentation of Plaintiff's account publicly undermined his credibility as a federal witness and re-traumatized him as a trafficking survivor.

## 5. PATTERN OF RACKETEERING ACTIVITY

(a) Predicate Acts and Statutes Violated

5a. Plaintiff alleges four predicate acts of racketeering under 18 U.S.C. § 1961(1)(B):

(1) Predicate Act #1 — Wire Fraud (18 U.S.C. § 1343): Fraudulent Inducement. February 28, 2025 email inducing Plaintiff's March 6, 2025 re-interview.

(2) Predicate Act #2 — Wire Fraud (18 U.S.C. § 1343): Payment Delay Scheme. Series of false wire communications, December 28, 2024 – January 16, 2025.

(3) Predicate Act #3 — Obstruction of Justice (18 U.S.C. §§ 1512(b), 1503): Suppression and distortion of Plaintiff's testimony to impede pending federal proceedings, March 2025 – present.

(4) Predicate Act #4 — Wire Fraud (18 U.S.C. § 1343): December 5, 2025 false public statement by Netflix denying participant compensation.

(b) Dates, Participants, and Description of Each Predicate Act

Predicate Act #1 — February 28, 2025 (Fraudulent Inducement):

Vanessa Sanchez, acting on behalf of House of Nonfiction and all enterprise principals, transmitted an email from New York to Plaintiff in New Jersey containing materially false representations: that the enterprise was "definitely NOT looking to tell a story that is inaccurate" and that Stapleton "would love to add [Plaintiff] to our schedule." These representations were false when made — Defendants had already decided to suppress Plaintiff's testimony about

Ventura. In reasonable reliance, Plaintiff traveled to Brooklyn and provided 4–6 hours of recorded testimony on March 6, 2025, surrendering exclusive intellectual property that Defendants then suppressed.

Predicate Act #2 — December 28, 2024 – January 16, 2025 (Payment Delay Scheme):

Sanchez transmitted no fewer than five materially false wire communications across state lines attributing Plaintiff's nonpayment to fabricated technical and administrative obstacles. Defendants possessed the ability to pay at all times. The scheme was designed to maintain financial leverage over Plaintiff during the post-release period and deter him from asserting legal rights. Payment of $2,000 was ultimately received on January 16, 2025.

Predicate Act #3 — March 2025 – Present (Obstruction of Justice):

Defendants, with knowledge that Plaintiff was Victim #2 in an active federal criminal prosecution and a party in pending civil proceedings against Ventura, deliberately edited and omitted Plaintiff's testimony identifying Ventura as his primary trafficker, distributing a false counter-narrative to millions of viewers. This conduct was intended to impair Plaintiff's credibility as a witness, benefit Ventura as an adverse party in his civil case, and obstruct the due administration of justice in violation of 18 U.S.C. §§ 1512(b) and 1503.

Predicate Act #4 — December 5, 2025 (False Public Statement):

Netflix transmitted via its publicly accessible internet platform a statement falsely denying that documentary participants had been compensated, when Plaintiff had received a $2,000 ACH payment from West Tower Road. The statement was timed to preempt participant claims and create a false evidentiary record to mislead courts.

(c) Wire Fraud — Particularity Under Rule 9(b)

For each wire fraud predicate: the time, place, content, and parties are identified with particularity as follows: (1) February 28, 2025, email from House of Nonfiction/Sanchez in New York to Plaintiff in New Jersey, containing the specific false representations quoted above; (2) December 28, 2024 – January 16, 2025, series of emails from the same parties on the same interstate route, containing specific false representations regarding payment processing; (3) December 5, 2025, Netflix's internet publication accessible nationwide, containing false representation that no participants were compensated.

(d) Criminal Convictions

No predicate act is based upon a prior criminal conviction.

(e) Civil Litigation Judgments

No civil judgment has been entered with respect to the predicate acts.

(f) How Predicate Acts Form a Pattern

The four predicate acts form a pattern under H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), because they are: (1) related — sharing the same purpose (exploitation of Plaintiff's victimization), the same victim, the same participants, and the same method (interstate wire fraud); and (2) continuous — spanning thirteen months with open-ended continuity, as the Documentary continues to circulate and contaminate the jury pool in Plaintiff's pending civil case.

(g) Common Plan

Yes. The predicate acts are part of a single common plan: to induce Plaintiff's cooperation through fraud (Act #1), suppress his testimony in the final product (Act #3), delay his compensation to maintain leverage (Act #2), and conceal the entire scheme through a false public statement (Act #4) — all in furtherance of the enterprise's commercial interests and Curtis Jackson's vendetta against Combs.

## 6. THE ALLEGED ENTERPRISE

(a) Enterprise Members

The Documentary Production Enterprise consists of: Netflix, Inc.; Curtis Jackson; Alexandria Stapleton; G-Unit Films and Television Inc.; House of Nonfiction Inc.; and West Tower Road LLC; together with agent Vanessa Sanchez.

(b) Structure, Purpose, Function, and Course of Conduct

The enterprise is an association-in-fact under 18 U.S.C. § 1961(4), formed to produce and profit from "Diddy: The Making of a Bad Boy." Its hierarchical structure placed Netflix as final editorial authority and primary distributor; Curtis Jackson as executive producer with editorial control through G-Unit Films; Stapleton as director through House of Nonfiction; and West Tower Road as the licensing and payment entity. The enterprise operated through production meetings, contractual agreements, editorial decisions, and interstate wire communications to induce, suppress, and misrepresent participant testimony for commercial gain.

(c) Defendants as Officers/Employees of the Enterprise

Curtis Jackson is an officer of G-Unit Films and Television Inc. Alexandria Stapleton is an employee/officer of House of Nonfiction Inc. Netflix executives held ultimate editorial authority over the enterprise.

(d) Defendants' Association with the Enterprise

All Defendants were associated with the enterprise through the production and distribution of The Documentary and related contractual arrangements.

(e) Persons Separate from the Enterprise

Plaintiff alleges that each Defendant is a separate person from the enterprise itself. The enterprise is the association-in-fact formed by the Defendants collectively.

(f) Not Applicable

No Defendant is alleged to be the enterprise itself.

## 7. RELATIONSHIP BETWEEN PATTERN AND ENTERPRISE

7. The pattern of racketeering activity and the enterprise are separate. The enterprise is the Documentary Production Enterprise (the association-in-fact). The pattern of racketeering — wire fraud and obstruction — is the mechanism through which the enterprise's affairs were conducted. The two are analytically distinct: the enterprise could exist without the racketeering, but the racketeering was the means by which the enterprise exploited Plaintiff.

## 8. RELATIONSHIP BETWEEN ENTERPRISE ACTIVITIES AND RACKETEERING

8. The enterprise's ordinary activities consist of documentary production, editorial decisions, and content distribution. The racketeering activity differs in that it involved intentional fraud — making knowing misrepresentations to induce Plaintiff's cooperation, deliberately suppressing his testimony, and transmitting false public statements — conduct that goes beyond ordinary editorial discretion and constitutes criminal wire fraud and obstruction. The racketeering served to maximize commercial profit while shielding the enterprise from civil liability.

## 9. BENEFITS TO THE ENTERPRISE FROM THE RACKETEERING

9. The enterprise received: (a) Netflix subscription revenue generated by The Documentary reaching millions of viewers; (b) commercial exploitation of Plaintiff's exclusive testimony and intellectual property without fair compensation; (c) advancement of Curtis Jackson's business and personal interests; (d) suppression of legal claims by Plaintiff and other participants through the December 5, 2025 false statement; and (e) a false public record favorable to Cassie Ventura, a figure whose victimhood narrative served the enterprise's commercial interests.

### 10. EFFECT ON INTERSTATE OR FOREIGN COMMERCE

10. The enterprise's activities substantially affected interstate commerce through: (a) Netflix's nationwide and international streaming distribution; (b) interstate wire communications (New York–New Jersey) constituting the predicate acts; (c) interstate transportation of Plaintiff from New Jersey to New York; (d) interstate ACH financial transactions; and (e) revenue derived from nationwide subscription payments. The nexus to interstate commerce is direct and substantial under 18 U.S.C. § 1962(c).

### 11. SECTION 1962(a) — NOT ALLEGED

11. Plaintiff does not assert a violation of 18 U.S.C. § 1962(a). Not applicable.

### 12. SECTION 1962(b) — NOT ALLEGED

12. Plaintiff does not assert a violation of 18 U.S.C. § 1962(b). Not applicable.

### 13. SECTION 1962(c) — CONDUCT OF ENTERPRISE AFFAIRS

13.

(a) Each Defendant was employed by or associated with the Documentary Production Enterprise. Netflix, as the entity with final editorial and financial authority, conducted the affairs of the enterprise. Curtis Jackson, through G-Unit Films, directed editorial decisions. Stapleton, through House of Nonfiction, controlled production and interviews. West Tower Road executed licensing agreements and disbursed participant payments.

(b) The Defendants are persons separate from the enterprise. Each Defendant is liable as a person who conducted the enterprise's affairs through a pattern of racketeering. No Defendant is both the sole liable person and the enterprise under § 1962(c). See *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).

### 14. SECTION 1962(d) — CONSPIRACY

14. Plaintiff alleges that all Defendants conspired to violate § 1962(c). The conspiracy is evidenced by: (a) the coordinated pattern of fraudulent inducement, testimony suppression, payment delay, and false public statements; (b) each Defendant's knowing participation in a common plan to exploit Plaintiff's victimization for commercial gain while obstructing his federal civil case; and (c) the temporal and logical sequence of the predicate acts, each advancing the shared objective. The agreement may be inferred from the Defendants' coordinated conduct across the entire scheme. See *Salinas v. United States*, 522 U.S. 52 (1997).

### 15. INJURY TO BUSINESS OR PROPERTY

15. Plaintiff suffered cognizable injury to business or property, including:

    (a) Deprivation of the commercial value of his intellectual property (exclusive testimony, narrative rights, and story) fraudulently obtained and suppressed;

    (b) Impairment of the fair market value of his pending federal civil claims (Howard v. Combs, No. CV25-06031(AH)) by the public dissemination of a false narrative favorable to defendant Cassie Ventura;

    (c) Loss of timely compensation ($2,000) through a deliberate 45-day payment delay scheme; and

    (d) Lost commercial opportunities, including speaking and publication contracts, caused by Defendants' public misrepresentation of Plaintiff's account and credibility.

16. DIRECT CAUSAL RELATIONSHIP BETWEEN INJURY AND RICO VIOLATION

16. Each injury flows directly and proximately from the pattern of racketeering. See *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992). The fraudulent inducement (Act #1) directly caused the surrender of Plaintiff's intellectual property. The payment delay scheme (Act #2) directly caused the deprivation of timely compensation. The obstruction (Act #3) directly caused the impairment of Plaintiff's civil claim value. The false public statement (Act #4) directly caused reputational harm and suppression of Plaintiff's legal rights. There are no intervening causes; each predicate act targeted Plaintiff specifically.

17. DAMAGES BY DEFENDANT

17. Each Defendant is jointly and severally liable for all RICO damages arising from the common enterprise and conspiracy. Actual damages are estimated at $3.7 to $10.5 million, with treble damages under 18 U.S.C. § 1964(c) of $11.1 to $31.5 million, plus costs and attorneys' fees. Individual liability is attributable as follows:

    (a) Netflix, Inc.: Primary financial beneficiary; liable for all damages arising from distribution of false narrative and December 5, 2025 wire fraud;

    (b) Curtis Jackson / G-Unit Films: Liable for editorial suppression of Plaintiff's testimony in furtherance of personal vendetta;

    (c) Alexandria Stapleton / House of Nonfiction: Liable for fraudulent inducement communications and editorial decisions;

    (d) West Tower Road LLC: Liable for payment delay scheme and misappropriation of licensing relationship.

## 18. FEDERAL CAUSES OF ACTION

18. Plaintiff asserts the following federal causes of action:

(a) 18 U.S.C. § 1964(c) — Civil RICO (§§ 1962(c) and (d))

(b) 42 U.S.C. § 1985(2) — Conspiracy to Obstruct Justice / Interfere with Federal Proceedings

(c) 42 U.S.C. § 1986 — Failure to Prevent

(d) 18 U.S.C. § 1595 — Civil Remedy for Sex Trafficking Victims (TVPA)

(e) 18 U.S.C. § 3771 — Crime Victims' Rights Act

## 19. PENDENT STATE LAW CLAIMS

19. Plaintiff asserts the following supplemental state law claims under 28 U.S.C. § 1367:

(a) Fraudulent Inducement (New York)

(b) Defamation Per Se (New York)

(c) Intentional Infliction of Emotional Distress (New York)

(d) Breach of Implied Covenant of Good Faith and Fair Dealing (New York, pursuant to Materials License Agreement)

## 20. ADDITIONAL INFORMATION

20. The Court may find the following additional facts material to adjudication of the RICO claim:

(a) Plaintiff's protected status: Plaintiff is a federally designated sex trafficking victim (Victim #2, Count 3, *United States v. Sean Combs*, No. 24-cr-542(AS)) and a cooperating federal witness whose credibility is directly at stake in the pending criminal and civil proceedings. The targeting of a federal victim-witness by the enterprise distinguishes this case from ordinary media tort litigation.

(b) Precedent within SDNY: *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48 (S.D.N.Y. 2021), established that Netflix may be held liable in this District for misrepresentation of real individuals in documentary productions, with the court finding "clear and convincing evidence" of reckless indifference to the truth on summary judgment.

(c) Release defense: Plaintiff anticipates Defendants will assert the September 17, 2024 Appearance Release. The Release does not bar RICO or civil rights claims (which cannot be prospectively waived as a matter of federal public policy), does not cover the February 28,

2025 fraudulent inducement of a separate transaction, and is void as unconscionable and as procured by fraud.

(d)  Open-ended continuity: The Documentary continues to circulate on Netflix's platform, the December 5, 2025 false statement remains published, and the enterprise's modus operandi — exploiting trafficking victims' stories through fraudulent inducement — presents a genuine threat of repetition with other documentary participants.

Dated: February 16, 2026

> Respectfully submitted,
>
> *Clayton Howard*
> Clayton Howard, Pro Se
> 24 Orchard Street
> Carteret, New Jersey 07008
> (929)781-7791
> itsclaytonhoward@gmail.com

VERIFICATION

I, Clayton Howard, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing RICO Case Statement is true and correct to the best of my knowledge, information, and belief.

Date: February 16, 2026

Signed: ___*Clayton Howard*___