UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAYTON HOWARD<br><br>    Plaintiff,<br><br>    – against –<br><br>NETFLIX, INC., CURTIS JACKSON (professionally known as "50 Cent"), ALEXANDRIA STAPLETON, G-UNIT FILMS AND TELEVISION INC., HOUSE OF NONFICTION INC., and WEST TOWER ROAD LLC,<br><br>    Defendants. | Case No. 1:26-cv-00707<br><br>ECF CASE<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

**PRYOR CASHMAN LLP**
   Ilene Farkas
   Kaveri Arora
7 Times Square
New York, NY 10036
Tel: (212) 421-4100

*Attorneys for Defendants Netflix, Inc., Curtis Jackson, Alexandria Stapleton, G-Unit Film & Television, Inc., House of NonFiction Productions, Inc., and West Tower Road LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF RELEVANT FACTS ....................................................................... 3

    A.  Defendants ...................................................................................................... 3

    B.  Plaintiff Clayton Howard ................................................................................ 4

    C.  The Series ....................................................................................................... 4

    D.  Plaintiff Voluntarily Sits for Multiple Interviews ........................................... 5

        1.  Plaintiff's First Interview ...................................................................... 5

        2.  Plaintiff's Second Interview ................................................................. 6

        3.  Plaintiff's Release and Waiver of Claims ............................................. 6

    E.  Plaintiff Sues Regarding the Series ................................................................ 8

LEGAL STANDARDS ............................................................................................... 9

ARGUMENT ............................................................................................................ 11

I.  PLAINTIFF'S CLAIMS ARE BARRED BY THE APPEARANCE RELEASE ................. 11

II.  PLAINTIFF OTHERWISE FAILS TO PLEAD ANY PLAUSIBLE CLAIM ................... 13

    A.  Plaintiff Fails to Allege a Conspiracy to Obstruct Justice and Interfere with
        Federal Court Proceedings Under 42 U.S.C. § 1985(2) .................................. 14

        1.  Plaintiff Fails to Plead Conspiracy with the Requisite Particularity ...... 14

        2.  Plaintiff Fails to Allege Deterrence by "Force, Intimidation, or Threat" ..... 15

        3.  Plaintiff Fails to Allege A Compensable Injury .................................... 15

    B.  Plaintiff Fails to Allege Neglect to Prevent Conspiracy (42 U.S.C. § 1986) .... 16

    C.  Plaintiff Fails to Plausibly Allege Beneficial Participation in a Sex Trafficking
        Venture Under 18 U.S.C. § 1595 .................................................................. 16

D.  Plaintiff Fails to Allege a Civil RICO Violation Under 18 U.S.C. §§ 1962(c), 1964(c), (d) .................................................................................................................17

    1.  Plaintiff Fails to Allege a Predicate Act or Pattern of Racketeering Activity ..............17

    2.  Plaintiff Fails to Allege Cognizable Injury.................................................................18

E.  Plaintiff Fails to Plausibly Allege Fraudulent Inducement ................................................19

F.  Plaintiff Fails to Plausibly Allege Defamation *Per Se* .......................................................20

    1.  The Allegedly Defamatory Statements Are Not "Of and Concerning" Plaintiff..........21

    2.  Plaintiff Fails to Allege A False Statement of Fact ......................................................21

    3.  Plaintiff Fails to Allege Defamation *Per Se* ................................................................22

    4.  Plaintiff Fails to Allege Actual Malice ........................................................................24

G.  Plaintiff Fails to Allege Intentional Infliction of Emotional Distress...............................24

    1.  Plaintiff's IIED Claim is Duplicative of Defamation ...................................................24

    2.  Plaintiff Fails to State a Claim for IIED ......................................................................25

        a.  Plaintiff Does Not Allege Conduct "Beyond All Possible Bounds of Decency" Necessary to Support an IIED Claim ................................................25

        b.  Plaintiff Fails to Allege the Required Intent .........................................................26

        c.  Plaintiff Fails to Allege Severe Emotional Distress..............................................26

H.  Plaintiff Fails to Allege Breach of the Implied Covenant...................................................27

I.  Plaintiff Fails to Allege Fraudulent Misrepresentation ......................................................28

    1.  Plaintiff Fails to Allege a Pattern of Consumer-Oriented Conduct .............................28

    2.  Plaintiff Fails to Allege a Materially Misleading Act...................................................29

    3.  Plaintiff Was Not Injured "By Reason Of" Netflix's Statement ..................................30

J.  Plaintiff Fails to Plausibly Allege Unjust Enrichment.......................................................30

    1.  Plaintiff's Unjust Enrichment Claim is Duplicative .....................................................30

    2.  Equity and Good Conscience Do Not Require Restitution............................................31

K.    Plaintiff's Claim for Declaratory Judgment Fails As a Matter of Law ............................31

III. PLAINTIFF'S GROUP PLEADING FAILS TO SATISFY FED. R. CIV. P. 8(a) ................32

CONCLUSION ................................................................................................................................33

## TABLE OF AUTHORITIES

**CASES**                                                                                                     **PAGE(S)**

*Appalachian Enters., Inc. v. ePayment Sols., Inc.*,
   No. 01-CV-11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ...............................32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................9, 10, 32

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ..............................................................................................32

*Barshay v. Naithani*,
   No. 23-382, 2023 WL 8708424 (2d Cir. Dec. 18, 2023).........................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................9, 10

*Bendit v. Canva, Inc.*,
   No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023)...............................24, 25

*Bermudez v. Colgate-Palmolive Co.*,
   667 F. Supp. 3d 24 (S.D.N.Y. 2023).......................................................................................30

*Bihag v. A&E Television Networks, LLC*,
   669 F. App'x 17 (2d Cir. 2016) ..............................................................................................12

*Bildstein v. MasterCard Int'l Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004)................................................................................29, 30

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012).....................................................................................22

*Black v. Ganieva*,
   619 F. Supp. 3d 309 (S.D.N.Y. 2022), *aff'd*, No. 22-CV-1524, 2023 WL
   2317173 (2d Cir. Mar. 2, 2023) ...............................................................................17, 18, 19

*Bobulinski v. Tarlov*,
   758 F. Supp. 3d 166 (S.D.N.Y. 2024)................................................................................22, 23

*Brady v. Lynes*,
   No. 05-CV-6540 (DAB), 2008 WL 2276518 (S.D.N.Y. June 2, 2008) .................................28

*Brimelow v. N.Y. Times Co.*,
   No. 20-CV-222 (KPF), 2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020), *aff'd*,
   No. 21-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021)......................................................20, 24

*Brown v. City of Oneonta*,
   221 F.3d 329 (2d Cir. 2000)....................................................................................................16

*Brown v. Showtime Networks, Inc.*,
394 F. Supp. 3d 418 (S.D.N.Y. 2019) ................................................................................4

*Bus. Exposure R Eduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt.,*
*L.P.*, 549 F. Supp. 3d 318, 334 (S.D.N.Y. 2021) ...................................................................28

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,
952 N.E.2d 995 (N.Y. 2011) .............................................................................................11

*Chanko v. Am. Broad. Companies Inc.*,
27 N.Y.3d 46 (2016) ..........................................................................................................25

*Chao v. Mount Sinai Hosp.*,
476 F. App'x 892 (2d Cir. 2012) .......................................................................................24

*Clegg v. Sotheby's*,
No. 23-CV-01995 (ER), 2023 WL 8281487 (S.D.N.Y. Nov. 30, 2023) ..............................28

*Contemp. Mission, Inc. v. N.Y. Times Co.*,
842 F.2d 612 (2d Cir. 1988) ..............................................................................................24

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) .......................................................................................4, 6, 11

*Cortes v. 21st Century Fox Am., Inc.*,
751 F. App'x 69 (2d Cir. 2018) .........................................................................................19

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) ..............................................................................................19

*Cruz v. Marchetto*,
No. 11-CV-8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012) ..........................................26

*Davis v. Avvo, Inc.*,
345 F. Supp. 3d 534 (S.D.N.Y. 2018) ................................................................................30

*De Sesto v. Slaine*,
171 F. Supp. 3d 194 (S.D.N.Y. Mar. 18, 2016) ...................................................................25

*Dempsey v. Sanders*,
132 F. Supp. 2d 222 (S.D.N.Y. 2001) ................................................................................18

*Dfinity Found. v. N.Y. Times Co.*,
702 F. Supp. 3d 167 (S.D.N.Y. 2023), *aff'd*, No. 23-CV-7838, 2024 WL
3565762 (2d Cir. July 29, 2024) ........................................................................................22

*Doe v. Yeshiva Univ.*,
703 F. Supp. 3d 473 (S.D.N.Y. 2023) ................................................................................25

*Dongguk Univ. v. Yale Univ.*,
  734 F.3d 113 (2d Cir. 2013)....................................................................................20

*Edwards v. McMillen Cap., LLC*,
  No. 21-1024, 2022 WL 16984534 (2d Cir. Nov. 17, 2022) ....................................27

*El Omari v. Buchanan*,
  No. 20-CV-2601 (VM), 2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021), *aff'd*,
  No. 22-55, 2022 WL 4454536 (2d Cir. Sept. 26, 2022) ..........................................17

*Geldzahler v. N.Y. Med. Coll.*,
  663 F. Supp. 2d 379 (S.D.N.Y. 2009).....................................................................10

*Gettinger Assocs., L.P. v. Abraham Kamber Co. LLC*,
  83 A.D.3d 412 (1st Dep't 2011) .............................................................................27

*Goldfine v. Sichenzia*,
  118 F. Supp. 2d 392 (S.D.N.Y. 2000)......................................................................17

*Haddle v. Garrison*,
  525 U.S. 121 (1998)..................................................................................................15

*Hagans v. Maher*,
  2022 WL 4538561 (E.D.N.Y. Sept. 28, 2022) ........................................................14

*Howard v. Combs, et al.*,
  Case No. 25-CV-06031-AH-JPR (C.D. Cal. filed June 30, 2025) .......................1, 4

*Idema v. Wager*,
  120 F.Supp.2d 361 (S.D.N.Y. 2000), *aff'd,* 29 F. App'x 676 (2d Cir.2002)...........25

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995)..........................................................................................10

*Int'l Oil Field Supply Servs. Corp. v. Fadeyi*,
  35 A.D.3d 372 (2d Dep't 2006) ................................................................................19

*Johnson v. City of New York*,
  No. 23-CV-3018 (DEH), 2024 WL 3520445 (S.D.N.Y. July 23, 2024)................13

*In re Joint E. & S. Dist. Asbestos Litig.*,
  14 F.3d 726 (2d Cir. 1993).......................................................................................31

*Jones v. Combs*,
  No. 24-CV-1457 (JPO), 2025 WL 896829 (S.D.N.Y. Mar. 24, 2025).............16, 26

*Kamdem-Ouaffo v. Balchem*,
  2018 WL 4386092 (S.D.N.Y. Sept. 14, 2018).........................................................25

*Lajqi v. State Farm Fire & Cas. Co.*,
No. 25-CV-2863 (JPC), 2026 WL 453585 (S.D.N.Y. Feb. 18, 2026) ...................................30

*Langton v. Town of Chester Libr. Bd.*,
No. 14-CV-9474 (NSR), 2020 WL 2850898 (S.D.N.Y. June 1, 2020), *aff'd
sub nom. Langton*, 2020 WL 2850898 ...............................................................................14

*Lee v. UDR, Inc.*,
No. 22-CV-00505 (PGG) (SDA), 2022 WL 22211347 (S.D.N.Y. Sept. 30,
2022) ...................................................................................................................................27

*Leonard F. v. Isr. Disc. Bank*,
199 F.3d 99 (2d Cir. 1999).................................................................................................10

*Liberman v. Gelstein*,
80 N.Y.2d 429 (1992), *appeal withdrawn,* No. 25-17, 2025 WL 1009663 (2d
Cir. Mar. 31, 2025) ............................................................................................................22

*Lin v. Canada Goose US, Inc.*,
640 F. Supp. 3d 349 (S.D.N.Y. 2022).................................................................................31

*LMM Cap. Partners, LLC v. Mill Point Cap., LLC*,
224 A.D.3d 504 (1st Dep't 2024) .......................................................................................13

*Lynch v. Amoruso*,
232 F. Supp. 3d 460 (S.D.N.Y. 2017).................................................................................10

*Marciniak-Domingues v. Massachusettes Inst. of Tech.*,
No. 22-CV-10959 (ALC) (SN), 2024 WL 4350826 (S.D.N.Y. Sept. 30, 2024) ...............14, 18

*Martin v. New Am. Cinema Grp., Inc.*,
No. 22-CV-05982 (JLR), 2023 WL 2024672 (S.D.N.Y. Feb. 15, 2023) ...............................28

*Matusovsky v. Merrill Lynch*,
186 F. Supp. 2d 397 (S.D.N.Y. 2002).................................................................................13

*Moore v. Baron Cohen*,
No. 21-CV-1702, 2022 WL 2525722 (2d Cir. July 7, 2022).......................................11, 20, 25

*Morgan v. Lululemon Athletica Inc.*,
No. 23-CV-434 (VSB), 2025 WL 3211747 (S.D.N.Y. Nov. 18, 2025) .................................31

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Xerox Corp.*,
6 Misc. 3d 763 (Sup. Ct., N.Y. Cty. 2004), *aff'd*, 25 A.D.3d 309 (1st Dep't
2006) ...................................................................................................................................20

*Network Enters., Inc. v. Reality Racing, Inc.*,
No. 09-CV-4664 (RJS), 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010).................................30

*Oles v. Sauer*,
No. 19-CV-8865 (NSR), 2022 WL 1204862 (S.D.N.Y. Apr. 22, 2022) .................................10

*Olivet Univ. v. Newsweek Digit. LLC*,
No. 24-CV-1473, 2024 WL 5001841 (2d Cir. Dec. 26, 2024) ................................................22

*Psenicska v. Twentieth Century Fox Film Corp*,
Nos. 07 CIV. 10972 (LAP), 08-CIV-1571 (LAP) .................................................................12

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) ...........................................................18

*Polar Int'l Brokerage Corp. v. Richman*,
32 A.D.3d 717 (2006) .............................................................................................................11

*Pungitore v. Barbera*,
506 F. App'x 40 (2d Cir. 2012) ..............................................................................................10

*Reilly v. Natwest Mkts. Grp., Inc.*,
178 F. Supp. 2d 420 (S.D.N.Y. 2001)......................................................................................15

*In re River Ctr. Holdings, LLC*,
394 B.R. 704 (Bankr. S.D.N.Y. 2008)......................................................................................13

*Rotberg v. Dodwell & Co.*,
152 F.2d 100 (2d Cir. 1945)................................................................................................12, 13

*Roucchio v. Coughlin*,
923 F. Supp. 360 (E.D.N.Y. 1996) ...................................................................................6, 7, 11

*S.G. v. Bank of China U.S.A.*,
No. 24-1426, 2024 WL 4891390 (2d Cir. Nov. 26, 2024) ..................................................9, 33

*Sacco v. Armento*,
No. 91-CV-1194 (SWK), 1991 WL 207535 (S.D.N.Y. Oct. 2, 1991) ...................................15

*Scott-Monck v. Matrix Absence Mgmt., Inc.*,
No. 19-CV-11798 (NSR), 2022 WL 2908007 (S.D.N.Y. July 22, 2022)......................6, 7, 11

*Shapiro v. NFGTV, Inc.*,
No. 16-CV-9152 (PGG), 2018 WL 2127806, at *8 (S.D.N.Y. Feb. 9, 2018) ........................12

*Silsdorf v. Levine*,
59 N.Y.2d 8 (1983) ..................................................................................................................22

*SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C.*,
No. 19-CV-9582 (NRB), 2020 WL 1322838 (S.D.N.Y. Mar. 20, 2020) ...............................30

*Smith v. Apple, Inc.*,
583 F. Supp. 3d 554 (S.D.N.Y. 2022)......................................................................................31

*Stadt v. Fox News Network LLC*,
719 F. Supp. 2d 312 (S.D.N.Y. 2010)................................................................................29

*Sveaas v. Christie's Inc.*,
452 F. App'x 63 (2d Cir. 2011) ..........................................................................................27

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)..........................................................................................21, 22

*Tantaros v. Fox News Network, LLC*,
No. 17-CV-2958 (GBD), 2018 WL 2731268 (S.D.N.Y. May 18, 2018) ..............................27

*Tasini v. AOL, Inc.*,
851 F. Supp. 2d 734 (S.D.N.Y. 2012), *aff'd,* 505 F. App'x 45
(2d Cir. 2012) ......................................................................................................29, 30, 31

*Teman v. Zeldes Needle Cooper LLP*,
No. 24-CV-09830 (LJL), 2025 WL 3778680 (S.D.N.Y. Dec. 31, 2025) ..............................26

*Thai v. Cayre Grp., Ltd.*,
726 F. Supp. 2d 323 (S.D.N.Y. 2010)................................................................................21

*Thomas v. Genova*,
No. 23-7452, 2025 WL 583182 (2d Cir. Feb. 24, 2025) ........................................................16

*Triano v. Gannett Satellite Info. Network, Inc.*,
Nos. 09-CV-2497 (KMK), 09-CV-2533 (KMK), 2010 WL 3932334
(S.D.N.Y. Sept. 29, 2010)................................................................................................25

*Trice v. Onondaga Cty. Just. Ctr.*,
124 F. App'x 693 (2d Cir. 2005) ......................................................................................10

*U.S. v. Combs*,
No. 24-CR-00542 (AS) (S.D.N.Y. July 2, 2025).....................................................................4

*United States Life Ins. Co. in City of New York v. Horowitz*,
192 A.D.3d 613 (1st Dep't 2021) ......................................................................................19

*Van Buskirk v. N.Y. Times Co.*,
No. 99-CV-4265 (MBM), 2000 WL 1206732 (S.D.N.Y. Aug. 24, 2000), *aff'd,*
325 F.3d 87 (2d Cir. 2003)................................................................................................26

*Van Kleeck v. Hammond*,
25 A.D.3d 941 (3d Dep't 2006) ........................................................................................20

*W. Energy Opportunities II, LLC v. Finalis Sec., LLC*,
No. 24-CV-2565 (ER), 2025 WL 935201 (S.D.N.Y. Mar. 26, 2025*), recons.
denied*, No. 24-CV-2565 (ER), 2025 WL 2370930 (S.D.N.Y. Aug. 14, 2025) .....................19

*Wahab v. Evolutions Hair Salon, LLC*,
  No. 24-CV-05641 (ALC), 2025 WL 2400036 (S.D.N.Y. Aug. 19, 2025) ..............................32

*Walker v. Schult*,
  717 F3d 119, 124 (2d Cir. 2013)..........................................................................................10

*Watson v. N.Y. Doe 2*,
  No. 19-CV-533 (DEH), 2025 WL 2662306 (S.D.N.Y. Sept. 17, 2025)................................24

*Weinstein v. Friedman*,
  No. 94-CIV-6803 (LAP), 1996 WL 137313 (S.D.N.Y. Mar. 26, 1996), *aff'd,*
  112 F.3d 507 (2d Cir. 1996)..................................................................................................21

*Winchester 84, LLC v. Morrow Equip. Co., LLC*,
  No. 23-CV-5871 (NSR), 2024 WL 3046350 (S.D.N.Y. June 18, 2024)................................28

*Wright v. Belafonte*,
  687 Fed. App'x 1 (2d Cir. 2017).............................................................................................25

*Zaleski v. Burns*,
  606 F.3d 51 (2d Cir. 2010).....................................................................................................15

*Zielinski v. Martuscello*,
  No. 24-CV-150 (NSR), 2025 WL 1160357 (S.D.N.Y. Apr. 21, 2025)..................................32

## STATUTES AND RULES

18 U.S.C. § 1591..............................................................................................................................16

18 U.S.C. § 1595..............................................................................................................................16

18 U.S.C. §§ 1962(c), 1964(c), 1964(d) ........................................................................................17

42 U.S.C. § 1985(2) ..............................................................................................................14, 15, 16

42 U.S.C. § 1986..............................................................................................................................16

Crime Victims' Rights Act (18 U.S.C. § 3771)..............................................................................33

Fed. R. Civ. P. 8 ...................................................................................................................... *passim*

Lanham Act (18 U.S.C. § 1125(a))..................................................................................................33

RICO ...................................................................................................................................... *passim*

Fed. R. Civ. P. 9(b) ......................................................................................................................9, 19

Rule 12(b)(6)........................................................................................................................... *passim*

x

## OTHER AUTHORITIES

*About Alex*, available at https://www.alexstapleton.com/about-1 .................................................3

*About House of NonFiction*, available at https://www.alexstapleton.com/about-
house-of-nonfiction.................................................................................................................3

*About Netflix*, available at https://about.netflix.com/en...................................................................3

*Homepage*, available at https://www.50cent.com/ ...........................................................................3

*Homepage*, available at https://www.alexstapleton.com/ .................................................................3

https://www.youtube.com/watch?v=S42Q76w9LIY........................................................................8

https://www.youtube.com/watch?v=S42Q76w9LIY&pp=ygUOY2xheXRvbiBob3 .............................8

*Profile,* available at https://www.instagram.com/gunitfilmandtv/....................................................3

*Tudum by Netflix*, available at https://www.netflix.com/tudum ......................................................3

N.Y.C.R.L. §§ 70-a, 76-a .................................................................................................................13

NYGBL § 349....................................................................................................................................28

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6), Defendants Netflix, Inc. ("Netflix"), Curtis Jackson (professionally known as "50 Cent") ("Jackson"), Alexandria Stapleton ("Stapleton"), G-Unit Film & Television, Inc. ("G-Unit"), House of NonFiction Productions, Inc. ("HoN") and West Tower Road LLC ("West Tower Road"), (collectively, the "Defendants")[1] hereby move to dismiss with prejudice the First Amended Complaint ("FAC", ECF No. 19) filed by Plaintiff Clayton Howard ("Plaintiff" or "Howard") on February 22, 2026.[2]

## PRELIMINARY STATEMENT

*Pro se* plaintiff Clayton Howard's claims arise from his voluntary participation in a four-episode documentary miniseries (the "Series"). Two undisputed facts are dispositive: Plaintiff agreed to be interviewed, and he signed an appearance release that includes a covenant not to sue and a broad waiver of claims arising from his participation. Whatever disappointment Plaintiff feels about the Series' editorial choices, he contractually relinquished any right to sue over them. As such, this case should proceed no further.

The Series, "Sean Combs: The Reckoning" (misidentified in the FAC as "Diddy: The Making of a Bad Boy") (FAC ¶ 3), chronicles the rise and fall of music mogul Sean "Diddy" Combs ("Combs") from his early life and formation of Bad Boy Records through his defense against high-profile civil claims for domestic and sexual abuse, such as those brought by his former partner and R&B artist Cassandra "Cassie" Ventura ("Ventura"), and his criminal conviction on federal charges of transportation to engage in prostitution.

---

[1] The FAC erroneously identifies G-Unit Film & Television, Inc. as "G-Unit Films and Television Inc." and House of NonFiction Productions, Inc. as "House of Nonfiction Inc."

[2] Magistrate Judge Netburn granted Defendants leave to file a memorandum of law not exceeding 35 pages and extended similar relief to Plaintiff for his opposition brief. (ECF No. 38.)

Plaintiff is one of Combs' many personal acquaintances who agreed to be interviewed for the Series. According to Plaintiff, Ventura and Combs contacted, transported, and paid him to engage in sexual acts with Ventura at Combs' direction. The Series does not focus on Plaintiff; it centers on Combs' upbringing, career, business and personal relationships, and public persona.

Plaintiff sat for two interviews with the producer of the Series. Plaintiff does not dispute that he signed a comprehensive release (the "Appearance Release"), which (1) contains a covenant not to sue for any claims pertaining to the Series; (2) acknowledges the producer's exclusive copyright ownership in the recordings of Plaintiff's interviews; (3) confirms the producer's unfettered editorial discretion to use (or not use) those recordings; and (4) broadly releases and waives claims arising out of Plaintiff's participation in the Series.

Nevertheless, Plaintiff filed his original complaint on December 20, 2025, and filed the 60-page FAC demanding $40 million on February 22, 2026. His self-described "civil rights action" asserts eleven (11) claims, including for civil RICO, "Conspiracy to Obstruct Justice," "Neglect to Prevent Conspiracy," "Benefitting from Participation in a Sex Trafficking Venture," and intentional infliction of emotional distress. All eleven claims are barred by the Appearance Release.

Even if the Court looks beyond the Appearance Release—and it need not—Plaintiff still fails to state any plausible claim for relief. All eleven claims arise out of Plaintiff's disappointment that the Series did not adopt his preferred narrative, including his unadjudicated legal conclusion that Combs' former partner, Ventura, was Plaintiff's "primary sex trafficker." This is not a cognizable legal injury. Because no amendment can cure these fundamental defects, Plaintiff's amended complaint should be dismissed with prejudice.

2

## STATEMENT OF RELEVANT FACTS

### A.    Defendants

Curtis Jackson, known professionally as "50 Cent," is a globally renowned hip hop artist, record executive, and television and film producer. *See*, *Homepage*, available at https://www.50cent.com/. In 2003, Jackson launched G-Unit, through which he develops and produces film and television series. *See, Profile,* available at https://www.instagram.com/gunitfilmandtv/. Jackson's and G-Unit's productions include the *Power* franchise and the documentary series *TikTok Star Murders*. *Id.*

Alexandria Stapleton is an Emmy award-winning filmmaker. Over the past two decades, Stapleton has directed and produced documentaries about sports, music and politics. *See, About Alex*, available at https://www.alexstapleton.com/about-1. In 2021, Stapleton launched HoN as a platform to produce film and television. *See, About House of NonFiction*, available at https://www.alexstapleton.com/about-house-of-nonfiction. Stapleton and HoN's documentary films include: *Corman's World: Exploits of a Hollywood Rebel*; *Hello Privilege. It's Me, Chelsea;* and *Reggie. See, Homepage*, available at https://www.alexstapleton.com. West Tower Road was an additional production entity for the Series. (FAC ¶ 13.)

Netflix is one of the world's leading entertainment services, with over half a billion viewers in more than 190 countries and 50 languages. *See, About Netflix*, available at https://about.netflix.com/en. Netflix has produced and/or distributes some of the most successful films, television series, and digital media specials of all time, including, *Wednesday*, *Stranger Things*, *Red Notice*, *My Octopus Teacher, American Factory, Our Planet, Bridgerton, Ozark*, and *The Last Dance*. *See, Tudum by Netflix*, available at https://www.netflix.com/tudum.

3

### B.    Plaintiff Clayton Howard

Plaintiff alleges that beginning around 2009, Combs and Ventura transported and paid Plaintiff to engage in sexual acts with Ventura. (FAC ¶¶ 17-19, 72.) Plaintiff alleges he accepted this arrangement repeatedly for almost a decade. (*Id.* ¶¶ 17-19.)  He alleges this "sex trafficking" was "perpetrated by both [Combs] and [Ventura]" (FAC ¶¶ 17, 72) but asserts Ventura was his "primary trafficker." (*Id.* ¶ 4.) Plaintiff also alleges that he cooperated with federal prosecutors in the high-profile criminal investigation and prosecution of Combs (*U.S. v. Combs*, No. 24-CR-00542 (AS) (S.D.N.Y. July 2, 2025) ("Combs Criminal Case")). (*Id.* ¶ 7.)

Along with this lawsuit, Plaintiff has also filed an action against Ventura and Combs in California, alleging they both "exploited Plaintiff through manipulation, coercion, controlled substances and threats of violence to engage in non-consensual activities." (*Howard v. Combs, et al.*, Case No. 25-CV-06031-AH-JPR (C.D. Cal. filed June 30, 2025) (the "Combs/Ventura Civil Case") ECF. No. 80 at ¶ 8.) That civil matter remains at the pleading stage—Plaintiff has amended his complaint three times, and based on the docket, defendants' time to respond to the current operative complaint has not yet elapsed.

### C.    The Series

The Series examines Combs' life, from his early years and founding of Bad Boy Records through his defense against high-profile civil claims for domestic and sexual abuse, including those brought by Ventura, and eventual criminal conviction on federal charges of transportation to engage in prostitution. A copy of the Series is annexed to the Declaration of Ilene Farkas ("Farkas Decl.") as Exhibit 1.[3] The Series includes footage, photographs, and interviews of people who

---

[3] The Series is at the heart of Plaintiff's claims, and its contents are referenced extensively throughout the FAC. It is therefore proper for this Court to consider it on this Rule 12(b)(6) motion to dismiss. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *e.g., Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 436 (S.D.N.Y. 2019) (on Rule 12(b)(6) motion,

4

knew Combs personally, including artists, former business partners, and others who witnessed his rise and fall firsthand. (*Id.*)

The Series aired on Netflix's streaming service on December 2, 2025. (FAC ¶ 8.) Each of the four episodes are approximately one hour in length (for a total of approximately 247 minutes). (Farkas Decl. Ex. 1.) Jackson (through G-Unit) executive produced the Series (FAC ¶¶ 9, 11); Stapleton (with HoN and West Tower Road) directed and executive produced the Series (*id.* ¶¶ 10, 12-13); and Netflix distributed the Series. (*id.* ¶ 8).

Plaintiff appears in only one of the four episodes of the Series (the third episode, titled "Official Girl" ("Episode 3")), in interspersed clips totaling approximately seven minutes. (Farkas Decl. Ex. 1, Episode 3, at 33:34-38:36; 40:34-42:39). In those clips, Plaintiff describes his paid sexual encounters with Ventura and offers his firsthand accounts of Combs' violent physical abuse of Ventura. (*Id.*)

### D.   **Plaintiff Voluntarily Sits for Multiple Interviews**

#### 1.   **Plaintiff's First Interview**

In May 2022, Plaintiff was first approached about participating in a documentary "about Sean Combs," not by Defendants, *but by his own counsel,* Tyrone Blackburn, who at the time represented Plaintiff in lawsuits against Combs and Ventura. (FAC ¶ 27.) Plaintiff alleges he then had "initial communications" with Defendant Stapleton and other unidentified individuals and asserts they made "material representations" to induce Plaintiff's participation. (*Id.* ¶¶ 28-32.) Plaintiff alleges that "it was agreed" (without specifics) "that Plaintiff would participate in the Film and that his story would be told truly…" (*Id.* ¶ 30).  Plaintiff alleges he sat for the first interview with Stapleton in Manhattan in or around September 2024. (*Id.* ¶ 34.)

---

film at issue considered as 'integral' to the complaint. "The Court will consider the film itself—not the parties' characterizations of what it shows.")

### 2.    Plaintiff's Second Interview

Several months later, on February 27, 2025, Plaintiff alleges that he emailed supervising producer Vanessa Sanchez ("Sanchez"), on his own initiative, to request another interview.[4] (*Id.* ¶ 49; ECF Doc. No. 1-3 at 58.) Plaintiff alleges that he felt "he had not provided a complete story about Cassandra Ventura's role" as his "primary trafficker." (FAC ¶ 40.)  In his email to Sanchez, he proposed a meeting to "further expand" on his account by providing details he "didn't tell" previously but "really want[ed] to." (*Id.* ¶¶ 49-50; ECF Doc. No. 1-3 at 58.) He asked that his "request be considered." (ECF Doc. No. 1-3 at 58.)

Plaintiff alleges that Sanchez responded that the filmmakers would be filming in New York City the following week and had availability for Plaintiff to sit for a second interview and that, "we are definitely not looking to tell a story that is inaccurate and understand your reasoning in wanting to reach out."  (FAC ¶ 52; ECF Doc. No. 1-3 at 58.)

After his request, Plaintiff sat for another interview with Stapleton on March 6, 2025, during which he alleges he provided additional information about Ventura. (*Id.* ¶ 61-62.)

### 3.    Plaintiff's Release and Waiver of Claims

Plaintiff does not dispute that he signed an Appearance Release[5] dated September 17,

---

[4] Plaintiff attached these communications with Sanchez to his initial state court complaint as Exhibit B (available in Defendants' removal papers as ECF Doc. No. 1-3 at 58); thus, they may be properly considered on this motion to dismiss. *Roucchio v. Coughlin*, 923 F. Supp. 360, 366 (E.D.N.Y. 1996); *Scott-Monck v. Matrix Absence Mgmt., Inc.*, No. 19-CV-11798 (NSR), 2022 WL 2908007, at *4 (S.D.N.Y. July 22, 2022).

[5] A copy of the Appearance Release is attached as Exhibit 2 to the Farkas Declaration.  Though Plaintiff did not attach the Appearance Release to his FAC, he admits he signed it (FAC ¶¶ 48, 51) and dedicates at least twenty-four (24) paragraphs of the FAC to arguing the Release does not bar his claims (*id.* ¶¶ 100-123). Moreover, Plaintiff relies on the "surrender" of his "exclusive testimony" under the Appearance Release to allege damages and acts of conspiracy in support of his claims for witness tampering (*see id.* ¶¶ 146(b), 147(b), 149(b)), civil RICO (*see id.* ¶¶ 127(b), (e)(i), (g)), and fraudulent inducement (*see id.* ¶ 168). Accordingly, the Appearance Release is integral to Plaintiff's pleading and may be considered on this motion to dismiss. *Cortec Indus., Inc.*, 949 F.2d at 47.

6

2024.[6] (FAC ¶¶ 48, 51.) The Appearance Release irrevocably granted Defendant West Tower Road broad rights, including the right to "edit, delete, dub or change the Recordings or juxtapose the Recordings [of the interview footage] with other materials in any manner"[7] and acknowledged that as the exclusive owner of the Recordings, West Tower Road was free to use the Recordings in all current and future media. (Farkas Decl. Ex. 2, § 1.) Plaintiff also expressly waived any rights of approval of his appearance or the use of the Recordings, including by further agreeing that "[West Tower Road] **shall have no obligation to actually use the Recordings or my contributions** hereunder to directly or indirectly produce, release, distribute or exploit the Project[.]" (*Id.* § 2 (emphasis added).)

The Appearance Release also contains a broad covenant not to sue. Specifically, Plaintiff "expressly and irrevocably release[s], and shall neither sue nor bring any proceeding against" West Tower Road and its affiliates "from and against any and all claims, demands, costs, and causes of action of any kind or nature whatsoever that I have or may have that relate to the Project or [his] participation in connection therewith." (*Id.* § 3.) This covenant explicitly encompasses claims for invasion of privacy, defamation, false light, and violation of right of publicity — several of which Plaintiff now attempts to assert. (*Id.*)

The Appearance Release also contains an integration clause ("This Agreement . . . shall supersede any and all prior negotiations and communications, whether written or oral, with respect thereof") and a broad exclusivity provision, expressly prohibiting Plaintiff from "provid[ing] any

---

[6] Plaintiff also signed a Materials License Agreement dated September 17, 2024 (although Plaintiff alleges it was signed on July 19, 2025) (the "Materials Release"), which related to photographs and other materials provided by Plaintiff to West Tower Road for use in the Series. The Materials Release was attached to Plaintiff's initial state court complaint as Exhibit A, (available in Defendants' removal papers as ECF Doc. No. 1-3 at 55), and thus may be considered. *Roucchio*, 923 F. Supp. at 366; *Scott-Monck,* 2022 WL 2908007, at *4.

[7] "Recordings" as used herein shall have the same definition as in the Appearance Release (Farkas Decl. Ex. 2, § 1).

7

interview or material for, participat[ing] in, or aid[ing] in the creation of any other programming or media," relating to the Project for a period of one year after the release of the Series. (*Id.* § 1.)[8] Plaintiff has nevertheless participated in a number of videos and podcasts – and has even published a book – concerning the subject matter of the Series. (FAC ¶ 132(a).)[9]

### E.      **Plaintiff Sues Regarding the Series**

Plaintiff originally filed his Complaint in New York State Supreme Court, alleging seven (7) causes of action, including defamation, infliction of emotional distress, and fraudulent inducement. Defendants removed this action to this Court on January 28, 2026. Plaintiff then filed the FAC on February 22, 2026, adding four (4) new claims sounding in RICO, Civil Rights and other federal statutes. Plaintiff's claims all arise out of his disappointment with how his interview footage (the Recordings) was used in the Series. He contends the Series failed to adequately reflect his characterization of Ventura as a "sex trafficker." (FAC ¶¶ 4, 56, 84, 138.)

Even if one were to consider his allegations (which are barred by the Appearance Release), the Series does include his statements describing Ventura's role in their encounters, including that she first solicited his services (Farkas Decl. Ex. 1, Episode 3 at 33:44) and that she at times directed their sexual encounters and supplied him with drugs (*id.* at 34:35, 38:23), in addition to Plaintiff's descriptions of Combs' financial, verbal, and physical abuse of Ventura (*id.* at 40:55-42:38). In

---

[8] Plaintiff appears to confuse the Appearance Release with the Materials Release. The Materials Release related to "memorabilia and/or other materials" such as "photographs, videos, writings and other materials . . . provided by [Plaintiff] for use in and in connection with the Project." (*Id.* at § 2; FAC ¶ 79.) West Tower Road agreed to and did pay Plaintiff $2,000 for the use of these materials. Plaintiff's participation in the Series is governed by the Appearance Release.

[9] *See also, e.g.,* https://www.youtube.com/watch?v=S42Q76w9LIY&pp=ygUOY2xheheXRvbiBob3 dhcmTSBwkJ1Ao BhyohjO8%3D; https://www.youtube.com/watch?v=S42Q76w9LIY.)

8

fact, the Combs/Ventura Civil Case caption appears in the Series at 38:30, showing Ventura named

as a defendant, with an image of Plaintiff's allegations. (*Id.*)[10]



## **LEGAL STANDARDS**

Dismissal of a complaint is appropriate under Fed. R. Civ. P. 12(b)(6) where the complaint

"fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a

plaintiff must "state a claim to relief that is plausible on its face" with allegations that satisfy the

pleading standards set out by Fed. R. Civ. P. 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) requires a "short and

plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677–78 (quoting

Fed. R. Civ. P. 8(a)(2)). A complaint fails to satisfy Rule 8 where it fails to differentiate allegations

between different defendants. *S.G. v. Bank of China U.S.A.*, No. 24-1426, 2024 WL 4891390, at

*1 (2d Cir. Nov. 26, 2024). Allegations of fraud must furthermore satisfy Rule 9(b), which requires

that plaintiff "state with particularity the circumstances constituting fraud or mistake."

---

[10] While irrelevant given the Appearance Release and applicable law, to Defendants' knowledge, Ventura has never been tried or convicted for sex trafficking, and Defendants certainly had no obligation to accuse, try and convict her of such a crime in the Series. Moreover, while Defendants take no issue with it one way or another, Plaintiff has never been determined by any Court of law to be a sex trafficking victim. In fact, while Plaintiff has asserted that the Judge presiding over the Combs Criminal Case made an "express judicial finding" of Plaintiff's "victim status," (ECF No. 15 at 8), Plaintiff misconstrues Judge Subramanian's order, which specifically *declined* to make such a finding as the criminal matter had already concluded. (ECF No. 14-3.)

9

While a plaintiff's factual allegations must be taken as true for purposes of a Rule 12(b)(6) motion, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *Iqbal*, 556 U.S. at 678 (citing *Twombly*). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

Even though a *pro se* complaint "must be construed liberally to raise the strongest arguments it suggests[,]" the *pro se* complaint nonetheless "must state a plausible claim for relief" and may be dismissed where it does not. *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 465 (S.D.N.Y. 2017) (quoting Walker v. Schult, 717 F3d 119, 124 (2d Cir. 2013)(dismissing *pro se* complaint even pursuant to liberal construction); *Trice v. Onondaga Cty. Just. Ctr.*, 124 F. App'x 693, 694 (2d Cir. 2005); *Oles v. Sauer*, No. 19-CV-8865 (NSR), 2022 WL 1204862, at *3 (S.D.N.Y. Apr. 22, 2022) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)) ("[T]he court's duty to construe the complaint liberally is not the equivalent of a duty to re-write it[.]").

On a Rule 12(b)(6) motion, the district may "consider[ ] . . . facts stated on the face of the complaint, in documents appended to the complaint or incorporated [] by reference, and to matters of which judicial notice may be taken[.]" *Pungitore v. Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012) (quoting *Leonard F. v. Isr. Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999)). "[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (citation and internal quotation marks omitted).

The Court may also consider documents not attached or incorporated by reference into the complaint if plaintiff has "undisputed notice . . . of their contents" and if the documents "were

10

integral to plaintiffs' claim[s]." *Cortec Indus., Inc.*, 949 F.2d at 48; *e.g., Roucchio*, 923 F. Supp. 360 at 366 ("[J]udicial notice of the annexed court documents is appropriate, because they are a matter of public record, and the accuracy of the copies submitted has not been disputed by the plaintiff."). The court's consideration is even more permissive when considering a *pro se* plaintiff's complaint. *Scott-Monck*, 2022 WL 2908007, at *4 Courts routinely dismiss claims on a Rule 12(b)(6) motion when they are barred by the express terms of a release or covenant not to sue. *See infra.*

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE BARRED BY THE APPEARANCE RELEASE

Irrespective of how Plaintiff labels his various claims, they all arise out of his "participation in the making of" the Series, *i.e.,* the Project.  The Appearance Release bars each and every one of Plaintiff's claims. It is axiomatic that a "valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Barshay v. Naithani*, No. 23-382, 2023 WL 8708424, at *2 (2d Cir. Dec. 18, 2023) (quoting *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011)).

The Appearance Release also contains a clear covenant not to sue any of the Defendants herein.   Under New York law, such releases are strictly enforced, regardless of a party's "subjective intent and understanding of the terms." *Moore v. Baron Cohen*, No. 21-CV-1702, 2022 WL 2525722, at *3 (2d Cir. July 7, 2022) (citation and internal quotation marks omitted); *Polar Int'l Brokerage Corp. v. Richman*, 32 A.D.3d 717, 720 (2006) (reversing and dismissing claims as barred by covenant not to sue).  Here, the Appearance Release[11] broadly and irrevocably bars "any

---

[11] The Appearance Release bars claims against West Tower Road and "the applicable distributor of the Project, and each of their respective affiliates, successors, licensees, and assigns, and each of their respective directors, employees, agents and representatives[,]"shielding each of the Defendants. (Farkas Decl. Ex. 2 at §3.)

11

and all claims, demands, costs, and causes of action of any kind or nature whatsoever … relat[ing] to the Project or [his] participation" in it—which is precisely what this lawsuit is. (Farkas Decl. Ex. 2 at § 3; FAC ¶¶ 8-13). Plaintiff's FAC should be dismissed in its entirety on this basis alone.

Courts in this Circuit routinely enforce these types of releases to protect filmmakers, producers and distributors of First-Amendment protected content from claims arising out of a participant's dissatisfaction with how they were portrayed. In *Bihag v. A&E Television Networks, LLC*, 669 F. App'x 17, 18 (2d Cir. 2016), for example, the Second Circuit found language releasing "any and all claims" arising out of a plaintiff's participation in a television show to be "clear, broad, and dispositive," barring Plaintiff's claims for, *inter alia*, fraud, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. Likewise, in *Psenicska v. Twentieth Century Fox Film Corp.*, the Second Circuit affirmed the dismissal of plaintiffs' claims arising out of participation in a documentary-style project based on unambiguous waivers, even where the plaintiffs alleged they were "set up" and deceived about the nature of the project. Nos. 07 CIV. 10972 (LAP), 08-CIV-1571 (LAP), 08-CIV-1828 (LAP), 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd,* 409 F. App'x 368 (2d Cir. 2009). And, in *Shapiro v. NFGTV, Inc.*, the court dismissed claims (including fraudulent inducement) based on a purportedly unfavorable portrayal of plaintiff on a reality television program as barred by a general release.  No. 16-CV-9152 (PGG), 2018 WL 2127806, at *8 (S.D.N.Y. Feb. 9, 2018).

Plaintiff argues the Appearance Release is only backward looking. (FAC ¶¶ 109-113). However, the very nature of the Appearance Release was to cover the yet-to-be-completed Recordings and all future creation, editing, and distribution of the Series. And, of course, a covenant not to sue is forward-looking.  Further, a general release "may bar contingent and future claims when the intent of the parties to that effect is clear." *Rotberg v. Dodwell & Co.*, 152 F.2d 100, 101 (2d Cir. 1945) (citations omitted). Here, the intent could not be clearer: Plaintiff knew

12

perfectly well he was releasing and waiving any future claim based on a series that was in the process of being made. The broad, prospective-looking language in the Appearance Release therefore bars all of Plaintiff's claims relating to the Series. *E.g., LMM Cap. Partners, LLC v. Mill Point Cap., LLC*, 224 A.D.3d 504, 506 (1st Dep't 2024) (finding release covering claims plaintiff "hereafter may have" applied prospectively and barred all claims); *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 716 (Bankr. S.D.N.Y. 2008) (waiver of claims releasor "shall or may hereafter have against the Releasees" applied prospectively) (citation omitted); *Rotberg*, 152 F.2d at 101 (general release applied prospectively to contingent refund claims).[12]

Finally, Plaintiff's allegation that "federal civil rights claims cannot be prospectively waived." (FAC ¶¶ 101-108) is incorrect as a matter of law. "[C]ivil rights claims may be dismissed when a plaintiff has released a defendant from liability for those claims." *Johnson v. City of New York*, No. 23-CV-3018 (DEH), 2024 WL 3520445, at *5-6 (S.D.N.Y. July 23, 2024) (dismissing Section 1983 claim pursuant to a general waiver); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (dismissing Title VII discrimination claim pursuant to a general waiver). Plaintiff signed an unambiguous release covering all claims arising from his participation in the Series, barring this lawsuit in its entirety. His claims should be dismissed with prejudice.[13]

## II.   PLAINTIFF OTHERWISE FAILS TO PLEAD ANY PLAUSIBLE CLAIM

Even if the Appearance Release did not bar all of Plaintiff's claims, and it does, he also has failed to allege any cognizable claim against any of the Defendants.

---

[12] The Appearance Release further bars "injunctive or other equitable relief" (Farkas Decl. Ex. 2 at § 3) and thus Plaintiff's demands for injunctive relief should also be dismissed. (FAC at Prayer for Relief ¶ 8(a)-(d).)

[13] Irrespective of dismissal, Defendants reserve the right to seek costs and attorneys' fees under New York's anti-SLAPP law (N.Y.C.R.L. §§ 70-a, 76-a).

A.    **Plaintiff Fails to Allege a Conspiracy to Obstruct Justice and Interfere with Federal Court Proceedings Under 42 U.S.C. § 1985(2)**

Plaintiff alleges that Defendants "conspired to deter [him] from testifying freely, fully, and truthfully in his pending federal proceedings" under 42 U.S.C. § 1985(2). (FAC ¶¶ 141-144.) A 42 U.S.C. § 1985(2) claim requires "(1) a conspiracy between two or more persons, (2) to deter a witness 'by force, intimidation, or threat' from attending any court of the United States or testifying freely . . . therein, which (3) causes injury to the claimant." *Langton v. Town of Chester Libr. Bd.*, No. 14-CV-9474 (NSR), 2020 WL 2850898 (S.D.N.Y. June 1, 2020) (citation and internal quotation marks omitted). This claim fails for several independent reasons.

1.    **Plaintiff Fails to Plead Conspiracy with the Requisite Particularity**

A constitutional conspiracy claim must be pled with particularity, including "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Marciniak-Domingues v. Massachusettes Inst. of Tech.*, No. 22-CV-10959 (ALC) (SN), 2024 WL 4350826, at *17 (S.D.N.Y. Sept. 30, 2024) (citation and internal quotation marks omitted). Plaintiff satisfies none of these requirements.

Plaintiff does not identify any specific meeting, communication, or agreement among any combination of Defendants. Instead, he only offers: "Defendants, acting in concert pursuant to a common plan and agreement, conspired to deter Plaintiff from testifying . . . This conspiracy was not the product of independent acts by unrelated parties but reflected a coordinated agreement among Defendants — including Netflix, House of Nonfiction, West Tower Road, Vanessa Sanchez, and associated enterprise principals[.]" (FAC ¶ 144.)

These bald, conclusory allegations "are legal conclusions, and therefore must be disregarded." *Langton*, 2017 WL 6988708, at *7 (S.D.N.Y. Sept. 26, 2017) *aff'd sub nom. Langton*, 2020 WL 2850898 (dismissing conspiracy claim where plaintiff failed to allege any details regarding alleged conspiracy); *Hagans v. Maher*, 2022 WL 4538561, at *10 (E.D.N.Y.

14

Sept. 28, 2022) (dismissing 42 U.S.C. § 1985 claim with prejudice where operative complaint contained "only 'conclusory, vague, or general allegations that the defendants have engaged in a conspiracy'").

### 2.    Plaintiff Fails to Allege Deterrence by "Force, Intimidation, or Threat"

Even if Plaintiff had pled a conspiracy—and he has not—he fails to allege deterrence by force, intimidation or threat, as required by Section 1985(2). This is an express statutory requirement. *Sacco v. Armento*, No. 91-CV-1194 (SWK), 1991 WL 207535, at *6 n.4 (S.D.N.Y. Oct. 2, 1991). Plaintiff bases this claim on his conclusory allegation that Defendants "conspired to deter Plaintiff from testifying freely, fully, and truthfully in his pending federal proceedings" (FAC ¶ 144). There is no allegation (nor could there be) that any Defendant threatened him, intimidated him, or used force of any kind. Indeed, Plaintiff does not even identify which federal proceeding he was allegedly deterred from attending. (To the extent Plaintiff means the Combs Criminal Case, that proceeding was concluded before the Series was even released.) A filmmaker's editorial choices are not force, intimidation, or threat, and this claim should be dismissed.

### 3.    Plaintiff Fails to Allege A Compensable Injury

Plaintiff also fails to allege he has suffered any injury "of a type traditionally recognized as compensable" as required under 42 U.S.C. § 1985(2). *See Reilly v. Natwest Mkts. Grp., Inc.*, 178 F. Supp. 2d 420, 428 n.8 (S.D.N.Y. 2001), citing *Haddle v. Garrison,* 525 U.S. 121 (1998). Plaintiff's alleges: (1) impairment of value of his civil claim in the Combs/Ventura case (which is speculative), (2) deprivation of intellectual property and narrative rights (which he waived under the Appearance Release, and which he has nonetheless exercised in breach (*see* n.9, *supra*)); and (c) loss of compensation due to delayed payment under the Materials Release (with no allegation of actual harm based on delay). (FAC ¶ 147.) These do not constitute actual, compensable injury under 42 U.S.C. § 1985(2), requiring dismissal. *See Zaleski v. Burns*, 606 F.3d 51, 53 (2d Cir.

15

2010) (affirming dismissal of § 1985(2) where plaintiff's "very general allegations fail to allege any particularized injury that is 'fairly traceable' to conduct by any of the named defendants, . . . and he fails to request any relief likely to redress the injury asserted") (citation omitted).

**B.       Plaintiff Fails to Allege Neglect to Prevent Conspiracy (42 U.S.C. § 1986)**

Because Plaintiff fails to state a claim under 42 U.S.C. § 1985(2), he also necessarily fails to state a claim under 42 U.S.C. § 1986 (neglect to prevent the commission of a wrong under 42 U.S.C. § 1985(2)). *Thomas v. Genova*, No. 23-7452, 2025 WL 583182, at *4 (2d Cir. Feb. 24, 2025) (a Section 1986 claim "must be predicated on a valid [S]ection[] 1985 claim.") (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).)

**C.       Plaintiff Fails to Plausibly Allege Beneficial
Participation in a Sex Trafficking Venture Under 18 U.S.C. § 1595**

Plaintiff alleges that Netflix "knowingly benefitted financially and by reputation through its participation in the creation, production, and worldwide distribution of [the Series] that centered on, and exploited, the acts of sex trafficking committed by Sean Combs and others, for which Plaintiff is a federally recognized victim." (FAC ¶ 157). Plaintiff asserts "all Defendants" are jointly and severally liable for a violation of the TVPA.[14] (FAC ¶ 165.) This claim is baseless.

The TVPA provides a cause of action against anyone who "benefits, financially or by receiving anything of value, from **participation** in a venture which has engaged" in sex trafficking by force, fraud, or coercion. 18 U.S.C. § 1591 (emphasis added). Plaintiff argues that because the Series is about a "sex-trafficking venture," Netflix has "participated" in sex trafficking.

Even where such a claim was asserted against a Combs-owned entity, it was rejected. In *Jones v. Combs,* No. 24-CV-1457 (JPO), 2025 WL 896829 (S.D.N.Y. Mar. 24, 2025), another victim of Combs' sex-trafficking venture brought TVPA claims against Combs, individually, and

---

[14] This also constitutes impermissible group pleading under Fed. R. Civ. P. 8(a).

16

against one of his businesses, "Combs Global." In granting defendant Combs Global's motion to dismiss, Judge Oetken held "[t]he complaint fails to identify any distinct actions taken by Combs Global to either *facilitate or cover up Combs's conduct*, and it does not identify any funds contributed by Combs Global that Combs *used to commit the alleged misconduct*." *Id.*, at *10 (emphasis added). Plaintiff does not allege *any* participation by Netflix (or any other Defendant) in Combs' sex trafficking venture. This frivolous TVPA claim should be dismissed.

### D. Plaintiff Fails to Allege a Civil RICO Violation Under 18 U.S.C. §§ 1962(c), 1964(c), (d)

To state a claim for a Civil RICO violation, a plaintiff "must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Black v. Ganieva*, 619 F. Supp. 3d 309, 329 (S.D.N.Y. 2022) (citation and internal quotation marks omitted), *aff'd*, No. 22-CV-1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). Courts apply "particular scrutiny" to civil RICO claims, "the litigation equivalent of a thermonuclear device", to prevent expansion of the cause of action beyond "Congress's goal of protecting legitimate businesses from infiltration by organized crime." *Goldfine v. Sichenz*ia, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).  Plaintiff's civil RICO claim fails for at least two independent reasons.

### 1. Plaintiff Fails to Allege a Predicate Act Or Pattern of Racketeering Activity

To establish a pattern of racketeering, "a plaintiff must plead 'at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity.'" *El Omari v. Buchanan*, No. 20-CV-2601 (VM), 2021 WL 5889341, at *3 (S.D.N.Y. Dec. 10, 2021) (citation omitted), *aff'd*, No. 22-55, 2022 WL 4454536 (2d Cir. Sept. 26, 2022). Notably, "RICO caselaw disfavors finding continuity where the alleged scheme targeted

few victims" and "is inherently terminable[.]" *Black v. Ganieva*, 619 F. Supp. 3d 309, 346 (S.D.N.Y. 2022), *aff'd*, No. 22-CV-1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).

Here, Plaintiff alleges two supposed predicate acts: that Defendants allegedly "transmit[ed] materially false representations via email," constituting wire fraud, and disseminated "edited and misleading statements" amounting to obstruction of justice. (FAC ¶ 153). His allegations are entirely conclusory and insufficient to meet the "particularly scrutiny" required to maintain a civil RICO claim. Nor does Plaintiff allege any conduct directed at more than one victim (himself) or any threat of continuing criminal activity. These allegations fall far short of pleading a predicate act or pattern of racketeering. *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) (continuity not established where "Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim.")

### 2.       Plaintiff Fails to Allege Cognizable Injury

A RICO plaintiff must allege actual, quantifiable injury in the form of concrete financial loss. *Marciniak-Domingues*, 2024 WL 4350826, at *18. "Generalized allegations" of injury that "do not quantify the extent of [plaintiff's] financial loss" are insufficient. *Id.*

Plaintiff alleges "Defendants'" conduct caused him injury by: "Reducing the market value of [his] book, licensing, and media rights; . . . Interfering with ongoing federal court claims by suppressing testimony; and . . . Damaging [his] existing business relationships and prospective economic opportunities." (FAC ¶ 158.) These conclusory allegations are not only unsubstantiated, but belied by the Appearance Release, in which Plaintiff irrevocably waived the right to sue about his depiction in the Series and expressly agreed to give Defendants exclusivity on this topic. *Marciniak-Domingues*, 2024 WL 4350826, at *18; *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 21-847, 2022 WL 480475, at *2 (2d Cir. Feb. 17, 2022) (generalized reputational harm and "the risk of lost profits in the future [are] insufficient to establish standing under the RICO statute");

18

*Black*, 619 F. Supp. 3d at 347–48 (alleged injuries to business from smear campaign, as pled, were not "clear and definite" as required to maintain RICO claim).[15]

### E.    Plaintiff Fails to Plausibly Allege Fraudulent Inducement

To plead fraud in the inducement, a plaintiff must allege, with particularity, among other things, a misrepresentation or omission of fact, known to be false, made to induce reliance, and resulting in injury. *United States Life Ins. Co. in City of New York v. Horowitz*, 192 A.D.3d 613, 614 (1st Dep't 2021); *Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018); Fed. R. Civ. P. 9(b). In addition to being expressly barred by the Appearance Release, Plaintiff fails to plead such a claim.

Plaintiff's unsupported and vague allegations of "inducement" (FAC ¶¶ 164-167) are belied by the only communications between Plaintiff and West Road at that time. (ECF Doc. No. 1-3 at 58.) *Plaintiff* reached out *to the producers* to sit for another interview, and it was *Plaintiff* who pitched why he wanted to tell them more. (*Id.*) Plaintiff solely relies upon Sanchez's response, "[w]e are definitely not looking to tell a story that is inaccurate and understand your reasoning in wanting to reach out." (*Id.*) At best, Sanchez's response was a "[v]ague expression[] of hope and future expectation," which "provide[s] an insufficient basis upon which to predicate a claim of fraud." *Int'l Oil Field Supply Servs. Corp. v. Fadeyi*, 35 A.D.3d 372, 375 (2d Dep't 2006); *e.g.,*

---

[15] Nor has Plaintiff alleged an "association-in-fact enterprise." (FAC ¶ 152). "To constitute an enterprise, the 'association of individuals' must share a common goal of perpetuating fraudulent conduct in which they 'work together to achieve such purposes.'" *W. Energy Opportunities II, LLC v. Finalis Sec., LLC*, No. 24-CV-2565 (ER), 2025 WL 935201, at *5 (S.D.N.Y. Mar. 26, 2025*), recons. denied*, No. 24-CV-2565 (ER), 2025 WL 2370930 (S.D.N.Y. Aug. 14, 2025) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).) Plaintiff has not and cannot plead a "hierarchy, organization, and activities" of an "association" from which the Court can infer the members function as a unit. *Id.* Plaintiff also fails to plead facts sufficient to show that "producing, marketing and distributing commercially lucrative Film content" (the alleged purpose of the association, FAC ¶ 152) may be viewed as a "perpetuating fraudulent conduct" subjecting Defendants to RICO liability.

*Van Kleeck v. Hammond*, 25 A.D.3d 941, 943 (3d Dep't 2006) (dismissing fraud claim where plaintiff "unjustifiably relied on this vague assurance which was a promise regarding future acts").

Moreover, Plaintiff cannot establish justifiable reliance given the Appearance Release. Plaintiff expressly agreed that the producers owned the Recordings, had sole and complete editorial discretion whether and how to use, edit or alter the Recordings in any way they wished, and that he released any claims based on the use thereof. (Farkas Decl. Ex. 2, § 1.) Plaintiff further concedes that he understood his statements would be used in "a documentary Netflix was creating *about Sean Combs*." (FAC ¶ 27) (emphasis added) (*i.e.,* not a documentary specifically centered on Plaintiff and Ventura.) *E.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Xerox Corp.*, 6 Misc. 3d 763, 775 (Sup. Ct., N.Y. Cty. 2004), *aff'd*, 25 A.D.3d 309 (1st Dep't 2006).

### F.    Plaintiff Fails to Plausibly Allege Defamation *Per Se*

To state a defamation claim, a plaintiff must plausibly allege a defamatory statement, of and concerning the plaintiff, publication, fault, falsity, and special damages or *per se* actionability. *Brimelow v. N.Y. Times Co.*, No. 21-66, 2021 WL 4901969, at \*1 (2d Cir. Oct. 21, 2021). "Because a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,'" courts try to resolve defamation actions at the pleading stage. *Brimelow v. N.Y. Times Co.*, No. 20-CV-222 (KPF), 2020 WL 7405261, at \*4 (S.D.N.Y. Dec. 16, 2020), *aff'd*, No. 21-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021); *Moore*, 2022 WL 2525722, at \*3 ("[H]eightened First Amendment protections apply to any tort alleging reputational harm as long as the underlying speech relates to a matter of public concern.") (quoting *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 129 (2d Cir. 2013)).

Here, Plaintiff's defamation claim is not only barred by the Appearance Release, but it also fails as there is no identified false statement of or concerning him and he has not pled special damages, *per se* actionability or actual malice.

20

### 1. The Allegedly Defamatory Statements Are Not "Of and Concerning" Plaintiff

An actionable defamatory statement must be "of and concerning" the plaintiff. *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010). Plaintiff cannot satisfy this threshold requirement, as he does not allege any defamatory statement of or concerning him. Instead, he complains only about statements made *by him* concerning third parties, i.e., that the Series allegedly portrayed Combs, instead of Ventura, as Plaintiff's primary trafficker. (FAC ¶¶ 177-178, 180-183.) But that is an allegation about the Series' portrayal of third parties, not him. *Weinstein v. Friedman*, No. 94-CIV-6803 (LAP), 1996 WL 137313, at *16 (S.D.N.Y. Mar. 26, 1996) (dismissing defamation claim where plaintiff "may not rely on his mere association with [the subject of the publication] to render the statements defamatory of and concerning him"), *aff'd,* 112 F.3d 507 (2d Cir. 1996). Plaintiff's defamation claim should be dismissed on this basis alone. *Thai*, 726 F. Supp. 2d at 335 (dismissing defamation claim where "a reasonable listener would not take [defendant's] words as impugning [plaintiff] or her integrity personally"). [16]

### 2. Plaintiff Fails to Allege A False Statement of Fact

Falsity is another necessary element of defamation. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 244 (2d Cir. 2017). And New York courts dismiss defamation claims where, as here, a challenged statement is "substantially true" – that is, where it "would not have a different effect on the mind of the reader from that which the pleaded truth

---

[16] In any event, as discussed above, the Series included Plaintiff's own statements describing Ventura's role in initiating and directing their encounters, including contacting Plaintiff through an online advertisement, inviting him to New York, directing certain activities throughout their interactions and supplying and encouraging the use of illegal drugs. (Farkas Decl. Ex. 1, Episode 3 at 33:44, 34:35, 38:23.) As Plaintiff's accusations of Ventura of supplying him with illegal drugs are heard, *an image of the case caption from Plaintiff's civil case against Ventura and Combs appears on screen*, followed by an image of a paragraph from Plaintiff's civil complaint, "104. Ms. Ventura offered Mr. Howard ecstasy," and visible on the line below, "the dosage she would provide." (*Id.* at 38:36.) These statements directly refute Plaintiff's allegations that the Series "deliberately omitted and suppressed Plaintiff's testimony" of Ventura's involvement. (FAC ¶ 68.)

would have produced." *Id.* at 242 (quoting *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012)). In making this assessment, "[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." *Id.* at 243 (citing *Silsdorf v. Levine*, 59 N.Y.2d 8, 13 (1983)).

Plaintiff fails to identify a single false statement of fact about him in the Series.[17]  Instead, Plaintiff alleges that the Series creates a purportedly "false *impression*" that Plaintiff was solely trafficked by Combs, when Ventura was his "primary trafficker." (FAC ¶¶ 71, 82, 84, 178, 182, 183 (emphasis added).)  But there is no statement that Ventura did not traffic him, nor does Plaintiff deny that Combs did traffic him. Nor does any perceived "false impression" regarding Ventura in any way defame *Plaintiff*. Allegations of "false impressions," "selective editing" or "contextual framing" cannot substitute for the required showing of a false statement of fact. *Tannerite Sports, LLC*, 864 F.3d at 250 (affirming dismissal of defamation *per se* where "the facts alleged in the complaint would not, even if proven, establish that NBC published a false statement"); *Olivet Univ. v. Newsweek Digit. LLC*, No. 24-CV-1473, 2024 WL 5001841, at *3 (2d Cir. Dec. 26, 2024).

### 3.      Plaintiff Fails to Allege Defamation *Per Se*

New York courts recognize four categories of *per se* defamation: "statements '(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman.'" *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 180 (S.D.N.Y. 2024) (citing *Liberman v. Gelstein*, 80

---

[17] To the extent the Series reflects editorial judgments about the relative culpability of Combs and Ventura (which it does not), such statements are independently non-actionable opinions. *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023) (dismissing defamation claim because "the Challenged Statements convey non-actionable opinions, which are protected by the First Amendment and New York law."), *aff'd*, No. 23-CV-7838, 2024 WL 3565762 (2d Cir. July 29, 2024).

N.Y.2d 429, 434 (1992), *appeal withdrawn,* No. 25-17, 2025 WL 1009663 (2d Cir. Mar. 31, 2025)).

Plaintiff has not alleged any of these types of statements. Plaintiff's defamation claim rests on two theories: first, that the Series' editorial framing created a purported "false impression" that Combs, rather than Ventura, was his primary trafficker while suppressing Plaintiff's contrary account (FAC ¶¶ 177-178, 180-183); and second, that Netflix's December 5, 2025 statement that no participants were compensated falsely characterized his relationship with Defendants. (*Id.* ¶ 179.) Plaintiff does not allege any "statement" about him that implicates any *per se* category.

Plaintiff's contention that the Series failed to identify Ventura as his "primary trafficker" does not charge him with a serious crime, injure him in his trade or profession, attribute a loathsome disease to him, or implicate any *per se* category.  As for Netflix's statement that no participants were compensated for their interviews, that is true (as he was only paid for photographs and other materials under the Materials License) and is hardly defamatory. (*See generally* Farkas Decl. Ex. 2 (Appearance Release).)

Because Plaintiff cannot establish *per se* actionability under any category, he must plead and prove special damages, or "the loss of something having economic or pecuniary value" that "require[s] a specific accounting beyond a rough estimate." *Bobulinski*, 758 F. Supp. 3d at 180. Plaintiff's demand for compensatory damages "not less than $10,000,000" without supporting detail fails to satisfy this requirement. *Id.* (dismissing defamation *per se* where plaintiffs' "rough estimation, devoid of accounting or explanation, is insufficient to allege special damages").

23

### 4.    Plaintiff Fails to Allege Actual Malice

Consistent with the First Amendment, public figures and limited purpose public figures must plead that the allegedly defamatory statements were made with actual malice.[18] *Watson,* 2025 WL 2662306, at *11; *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 617 (2d Cir. 1988).

Plaintiff does not allege that Defendants "entertained serious doubts as to the truth" of the Series, that they recklessly disregarded contrary information, or even that the Series affirmatively stated that Ventura *did not* traffic Plaintiff. *Brimelow*, 2021 WL 4901969, at *2. His conclusory allegation that "Defendants" failed to include an explicit statement that Ventura "was his primary sex trafficker" fails to remotely come close to meeting the "heavy burden" of pleading actual malice.

For all of the foregoing reasons, the defamation claim should be dismissed in its entirety.

### G.    Plaintiff Fails to Allege Intentional Infliction of Emotional Distress

### 1.    Plaintiff's IIED Claim is Duplicative of Defamation

Plaintiff's IIED and defamation claims rest on identical conduct. Both complain that Defendants (i) edited and omitted Plaintiff's interviews; (ii) portrayed Ventura as a victim rather than a perpetrator; and (iii) created the false impression that Combs was Plaintiff's primary offender. (*Compare* FAC ¶ 178 *with id.* ¶ 187.) As such, Plaintiff's IIED claim should be dismissed as duplicative. *Bendit v. Canva, Inc.*, No. 23-CV-473 (RA), 2023 WL 5391413, at *10 (S.D.N.Y. Aug. 22, 2023); *see also Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012).

---

[18] Plaintiff injected himself into the public forum concerning the subject matter – even beyond his voluntary participation in Film – by, *inter alia*, participating in videos and podcasts and publishing a book on this subject. As such, Plaintiff is a limited purpose public figure relating to the Film and is required to plead actual malice. *Watson v. N.Y. Doe 2*, No. 19-CV-533 (DEH), 2025 WL 2662306, at *11 (S.D.N.Y. Sept. 17, 2025).

### 2.    Plaintiff Fails to State a Claim for IIED

Plaintiff also fails to otherwise plead an IIED claim, which requires "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bendit*, 2023 WL 5391413, at *9. "It is nearly impossible in New York for a plaintiff to state a viable claim for intentional infliction of emotional distress." *See Triano v. Gannett Satellite Info. Network, Inc.*, Nos. 09-CV-2497 (KMK), 09-CV-2533 (KMK), 2010 WL 3932334, at *6 (S.D.N.Y. Sept. 29, 2010) (quoting *Idema v. Wager,* 120 F.Supp.2d 361, 370 (S.D.N.Y. 2000), *aff'd,* 29 F. App'x 676 (2d Cir.2002)); *see also De Sesto v. Slaine*, 171 F. Supp. 3d 194, 201 (S.D.N.Y. Mar. 18, 2016) (providing that the bar for IIED "extremely high, and this highly disfavored cause of action is almost never successful.") (citation and internal quotation marks omitted); *Moore*, 2022 WL 2525722, at *3 (affirming dismissal of IIED claim where challenged segment related to a matter of public concern and was therefore protected by First Amendment).

### a.    Plaintiff Does Not Allege Conduct "Beyond All Possible Bounds of Decency" Necessary to Support an IIED Claim

The threshold for extreme and outrageous conduct is "extremely difficult to satisfy." *Bendit*, 2023 WL 5391413, at *9. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (citation and internal quotation marks omitted); *see also Wright v. Belafonte*, 687 Fed. App'x 1, 2 (2d Cir. 2017) (citing *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (2016)) (affirming dismissal of IIED claim where plaintiff did not plead "extreme and outrageous conduct"); *Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 498 (S.D.N.Y. 2023) (same). As a result, "courts are 'extremely reluctant' to find that [this element] has been satisfied." *Bendit*, 2023 WL 5391413, at *9 (quoting *Kamdem-Ouaffo v. Balchem*, 2018 WL 4386092, at *15 (S.D.N.Y. Sept. 14, 2018)).

25

Plaintiff's allegations fall far woefully short of this demanding standard. Nothing alleged remotely approaches conduct that is "so extreme in degree" to be "utterly intolerable in civilized society. *Id.*; *see also Cruz v. Marchetto*, No. 11-CV-8378, 2012 WL 4513484, at *5 (S.D.N.Y. Oct. 1, 2012) (dismissing IIED claim involving alleged defamatory statements to media); *Van Buskirk v. N.Y. Times Co.*, No. 99-CV-4265 (MBM), 2000 WL 1206732, at *4 (S.D.N.Y. Aug. 24, 2000) (same), *aff'd*, 325 F.3d 87 (2d Cir. 2003).

Plaintiff's preference that Defendants should have edited and framed his story in a manner more to his liking (particularly when he expressly waived any right to complain about it) cannot, as a matter of law, satisfy the "extreme and outrageous" standard required for an IIED claim.

### b.       Plaintiff Fails to Allege the Required Intent

Plaintiff's sole and conclusory allegation that "Defendants acted intentionally or with reckless disregard for the substantial probability that their conduct would cause Plaintiff severe emotional distress" is nothing more than a verbatim recitation of the legal standard and insufficient as a matter of law. (FAC ¶ 189.); *Teman v. Zeldes Needle Cooper LLP*, No. 24-CV-09830 (LJL), 2025 WL 3778680, at *13 (S.D.N.Y. Dec. 31, 2025) ("Plaintiff's allegations of 'intent' are conclusory and his IIED claim is dismissible for that reason alone.").

### c.       Plaintiff Fails to Allege Severe Emotional Distress

Plaintiff independently fails to plead facts showing that he suffered the kind of severe emotional distress required to sustain an IIED claim. The Complaint offers only threadbare recitations of generic distress categories, including "re-traumatization," "severe distress," "ongoing psychological harm," "anxiety, depression, and loss of trust" and the need for "ongoing psychological treatment." (FAC ¶ 190.) Courts in this district routinely dismiss IIED claims on this basis alone. *See e.g.*, *Jones v. Combs*, No. 24-CV-1457 (JPO), 2025 WL 896829, at *11 (S.D.N.Y. Mar. 24, 2025) (dismissing IIED claim where "Jones merely recites the elements of the

26

tort throughout the operative complaint, without providing further detail as to the nature and extent of the emotional suffering he has experienced due to Combs's actions."); *Tantaros v. Fox News Network, LLC*, No. 17-CV-2958 (GBD), 2018 WL 2731268, at *10 (S.D.N.Y. May 18, 2018). Plaintiff's IIED claim should be dismissed.

### H.      **Plaintiff Fails to Allege Breach of an Implied Covenant**

Plaintiff alleges breach of the "covenant of good faith and fair dealing" in connection with the Materials License Agreement. This covenant "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Gettinger Assocs., L.P. v. Abraham Kamber Co. LLC*, 83 A.D.3d 412, 414 (1st Dep't 2011) (citation modified); *see also Edwards v. McMillen Cap., LLC*, No. 21-1024, 2022 WL 16984534, at *4 (2d Cir. Nov. 17, 2022).

The FAC alleges that Defendants breached the Materials License Agreement by exercising their "editorial discretion" to suppress Plaintiff's narrative about Ventura. (FAC ¶ 196.) However, the Materials License Agreement does not govern the use of the Recordings; it applies only to the "Material(s)" supplied by Plaintiff, such as "memorabilia," "photographs, videos, writings and other materials" (Materials Release ¶ 1) – not to the Recordings.  Plaintiff concedes he received his compensation under the Materials License.

Plaintiff's claim amounts to nothing more than the allegation that Defendants exercised their contractual discretion in a manner inconsistent with his preferences. Not only is that nowhere to be "implied" in the (or either) agreement upon which he relies, it is expressly prohibited by the Appearance Release. *Sveaas v. Christie's Inc.*, 452 F. App'x 63, 65-66 (2d Cir. 2011) (affirming dismissal of breach of implied covenant claim where parties' agreement gave Christie's "considerable discretion" in promoting and conducting the wine collection sale); *see also Lee v. UDR, Inc.*, No. 22-CV-00505 (PGG) (SDA), 2022 WL 22211347, at *7 (S.D.N.Y. Sept. 30, 2022)

27

("Plaintiffs have failed to plausibly allege facts to show that Defendants acted arbitrarily, irrationally or in bad faith.")  Moreover, the implied covenant does not require a party to exercise discretion in a manner that aligns with the counterparty's preferred outcome, nor may it be used to impose limitations that contradict the contract's express grant of discretion.[19] *Winchester 84, LLC v. Morrow Equip. Co., LLC*, No. 23-CV-5871 (NSR), 2024 WL 3046350, at *2-3 (S.D.N.Y. June 18, 2024).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

## I.       Plaintiff Fails to Allege Fraudulent Misrepresentation

To state a *prima facie* case for consumer fraud under NYGBL § 349, a plaintiff must allege that "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result."  *Brady v. Lynes*, No. 05-CV-6540 (DAB), 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008) (citation omitted). The statute "applies solely to matters affecting the consumer public at large" and does not reach "[p]rivate contract disputes, unique to the parties." *Martin v. New Am. Cinema Grp., Inc.*, No. 22-CV-05982 (JLR), 2023 WL 2024672, at *7 (S.D.N.Y. Feb. 15, 2023)

### 1.       Plaintiff Fails to Allege a Pattern of Consumer-Oriented Conduct

"In order to state successfully a *prima facie* case for the first element, a plaintiff must allege a set of facts that indicate a *pattern* of deceptive practices that has ramifications beyond the individual consumer." *Id.* (emphasis added). For a non-consumer to have standing under § 349,

---

[19] The Court is not required to accept Plaintiff's conclusory allegations of "bad faith." *Bus. Exposure R Eduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.*, 549 F. Supp. 3d 318, 334 (S.D.N.Y. 2021); *Clegg v. Sotheby's*, No. 23-CV-01995 (ER), 2023 WL 8281487, at *7 (S.D.N.Y. Nov. 30, 2023).

28

"the gravamen of the complaint must be consumer injury or harm to the public interest.'" *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 742 (S.D.N.Y. 2012) (citation modified), *aff'd,* 505 F. App'x 45 (2d Cir. 2012). Here, Plaintiff's only allegation of consumer harm is the conclusory assertion that Netflix's statement caused "injury to Plaintiff and other consumers" – presumably due to the failure to label Ventura as Plaintiff's "primary sex trafficker." (FAC ¶ 202.) These bare and specious allegations do not support such a claim. *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010).

Plaintiff's own allegations further confirm that the harm is confined entirely to him. Every paragraph of the Complaint describing injury refers to *Plaintiff's* re-traumatization, *Plaintiff's* manipulated story and *Plaintiff's* credibility. (*See, e.g.*, FAC ¶¶ 65, 67, 73 (emphasis added).). Each of these allegations reflect Plaintiff's private grievances governed by his contract with Defendants and similarly mandate dismissal. *Tasini*, 851 F. Supp. 2d at 743.

### 2. Plaintiff Fails to Allege a Materially Misleading Act

Plaintiff must allege conduct that is "misleading in a material way." *Id.* at 744. A statement is materially misleading only if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (citation and quotation marks omitted). To survive a motion to dismiss, a plaintiff must allege that the misleading statement "'. . . is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (citation omitted).

Netflix's statement that "no participants were compensated" for their participation in the Series is accurate. While Plaintiff was paid $2,000 to license "memorabilia and/or other materials (including without limitation, photographs, videos, writings and other materials)" under the Materials License Agreement (FAC ¶ 80; Materials Release ¶¶ 1-2), he was not paid for the Recordings or participation in the Series. Plaintiff's sole conclusory allegation that Netflix's

29

statement was "materially misleading to reasonable consumers" (FAC ¶ 202) fails as a matter of law. *Bildstein*, 329 F. Supp. 2d at 414.

### 3.    Plaintiff Was Not Injured "By Reason Of" Netflix's Statement

Given that there is no materially misleading statement to consumers, Plaintiff cannot allege any injury as a result of any "statement." *Lajqi v. State Farm Fire & Cas. Co.*, No. 25-CV-2863 (JPC), 2026 WL 453585, at *5 (S.D.N.Y. Feb. 18, 2026). Plaintiff's perceived reputational injuries and economic grievances, which are unique to him as a willing participant in the Series, fail as a matter of law. *See e.g.*, *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 544 (S.D.N.Y. 2018); *SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C.*, No. 19-CV-9582 (NRB), 2020 WL 1322838, at *4 (S.D.N.Y. Mar. 20, 2020) (dismissal warranted where "the gravamen of the amended complaint is injury to plaintiff's business").

### J.    Plaintiff Fails to Plausibly Allege Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Tasini*, 505 F. App'x at 47 (2d Cir. 2012). The plaintiff "must show a causal 'nexus' between a defendant's enrichment and their own expense that goes beyond mere 'correlation.'" *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09-CV-4664 (RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010) (citation omitted).

### 1.    Plaintiff's Unjust Enrichment Claim is Duplicative

"[A] plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023) (citation and internal quotation marks omitted). An unjust enrichment claim is duplicative if it "relies on the same conduct that

30

forms the basis of [the plaintiff's] other claims." *Id.* (citation and internal quotation marks omitted); *see also Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 569 (S.D.N.Y. 2022).

Plaintiff's unjust enrichment claim rests on the same allegations as his contract, tort and fraud claims: Defendants did not tell the story exactly the way Plaintiff would have liked, re-traumatized him through hours of interviewing and portrayed Ventura as a victim and not a "sex trafficker." Because Plaintiff's unjust enrichment claim is entirely duplicative, it should be dismissed. *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 361 (S.D.N.Y. 2022).

### 2.    Equity and Good Conscience Do Not Require Restitution

Plaintiff claims Defendants were unjustly enriched through the Series' commercial success, subscriber revenue and enhanced reputation. (FAC ¶¶ 89, 208.) But Plaintiff was well-aware when he agreed to create the Recordings (and signed the Appearance Release) that the Series was being created for commercial exploitation. *Tasini*, 505 F. App'x at 47 (affirming dismissal of unjust enrichment claim where "plaintiffs were perfectly aware that The Huffington Post was a for-profit enterprise, which derived revenues from their submissions through advertising"). More fundamentally, there is nothing alleged that requires restitution to Plaintiff under principles of equity and good conscious.

### K.    Plaintiff's Claim for Declaratory Judgment Fails As a Matter of Law

It is well-settled in the Second Circuit that "a request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (citation omitted); *see also Morgan v. Lululemon Athletica Inc.*, No. 23-CV-434 (VSB), 2025 WL 3211747, at *6 (S.D.N.Y. Nov. 18, 2025) ("Declaratory relief is not an independent cause of action.") (citation omitted).

31

Because Plaintiff's Eleventh Cause of Action seeks declaratory relief as a standalone claim, it fails as a matter of law. *Wahab v. Evolutions Hair Salon, LLC*, No. 24-CV-05641 (ALC), 2025 WL 2400036, at \*4 (S.D.N.Y. Aug. 19, 2025).

## III.    PLAINTIFF'S GROUP PLEADING FAILS TO SATISFY FED. R. CIV. P. 8(a)

Plaintiff's FAC should independently be dismissed as it fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a). The FAC lumps all Defendants together and fails to specify the individual actions taken by each defendant, violating the requirement that Defendants be provided fair notice of the claims against them and the grounds upon which they are based. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)). "While Federal Rule of Civil Procedure 8 'does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Zielinski v. Martuscello*, No. 24-CV-150 (NSR), 2025 WL 1160357, at \*3 (S.D.N.Y. Apr. 21, 2025) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)); *Appalachian Enters., Inc. v. ePayment Sols., Inc.*, No. 01-CV-11502 (GBD), 2004 WL 2813121, at \*7 (S.D.N.Y. Dec. 8, 2004).

This pleading deficiency is common to Plaintiff's fraud allegations (e.g., FAC ¶ 29, "Stapleton and other agents of Defendants made material representations to Plaintiff"); his conspiracy allegations (e.g., FAC ¶ 83, listing six purported facts, all of which "Defendants knew or should have known" without differentiation between Defendants), and his other standalone causes of action (e.g., FAC ¶ 187, asserting that "Defendants' conduct was extreme and outrageous[,]" followed by seven purported instances of outrageous conduct without differentiation between Defendants; FAC ¶¶ 157-165, alleging the elements of a TVPA claim against only Netflix but nonetheless asserting that "Defendants [are] jointly and severally" liable).

32

Such group pleading fails to put Defendants on notice of the claims against them and constitutes grounds for dismissal. *S.G. v. Bank of China U.S.A.*, No. 24-1426, 2024 WL 4891390, at *1 (2d Cir. Nov. 26, 2024). On the basis of this group pleading in violation of Rule 8(1), Plaintiff's pleading should be dismissed in its entirety.[20] And, as demonstrated herein, no amount of repleading will cure Plaintiff's failure and inability to state any claim against any Defendant.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion in its entirety and dismiss all eleven causes of action with prejudice and without leave to amend, and grant such further relief as the Court deems just and proper.

Dated: New York, New York
April 27, 2026

PRYOR CASHMAN LLP

By: _____
Ilene Farkas
Kaveri Arora
7 Times Square
New York, NY 10036
Tel. (212) 421-4100

*Attorneys for Defendants Netflix Inc., Curtis Jackson, Alexandria Stapleton, G-Unit Film & Television, Inc., House of NonFiction Productions, Inc., and West Tower Road LLC*

---

[20] Plaintiff's FAC violates Rule 8(a) for the additional reason that he references federal statutes that do not appear to form the bases of his claims: the Crime Victims' Rights Act (18 U.S.C. § 3771) and the Lanham Act (18 U.S.C. § 1125(a)). (*See* FAC ¶¶ 1, 14, 24, 92.)

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing document complies with Magistrate Judge Netburn's Order granting Defendants' letter motion for leave to file a memorandum of law not exceeding 35 pages (ECF No. 38), notwithstanding the word and page limitations set forth in Local Rule 7.1(c) of the Joint Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
April 27, 2026

PRYOR CASHMAN LLP

By: _____
Ilene Farkas

34