UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CLAYTON HOWARD | Case No. 1:26-cv-00707 |
| Plaintiff, | ECF CASE |
| – against – | |
| NETFLIX, INC., CURTIS JACKSON (professionally known as "50 Cent"), ALEXANDRIA STAPLETON, G-UNIT FILMS AND TELEVISION INC., HOUSE OF NONFICTION INC., and WEST TOWER ROAD LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

**PRYOR CASHMAN LLP**
   Ilene Farkas
   Kaveri Arora
7 Times Square
New York, NY 10036
Tel: (212) 421-4100

*Attorneys for Defendants Netflix, Inc., Curtis Jackson, Alexandria Stapleton, G-Unit Film & Television, Inc., House of NonFiction Productions, Inc., and West Tower Road LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................... ii

PRELIMINARY STATEMENT...............................................................................................1

ARGUMENT ..............................................................................................................................1

I.  PLAINTIFF'S CLAIMS ARE BARRED BY THE APPEARANCE RELEASE......................1

II.  PLAINTIFF FAILS TO ALLEGE ANY COGNIZABLE CLAIM...........................................6

    A.  Plaintiff Fails to Allege Conspiracy to Interfere With Court Proceedings
       Under 42 U.S.C. § 1985(2) .....................................................................................6

    B.  Plaintiff's New TVPA Claim Against Jackson Still Fails ......................................7

    C.  Plaintiff Fails to Allege a Civil RICO Violation ...................................................8

    D.  Plaintiff Fails to Plausibly Allege Fraudulent Inducement ....................................9

    E.  Plaintiff Fails to Plausibly Allege Defamation Per Se..........................................10

    F.  Plaintiff Fails to Allege Intentional Infliction of Emotional Distress ................12

    G.  Plaintiff Fails to Allege Breach of an Implied Covenant .....................................13

    H.  Plaintiff Fails to Allege Fraudulent Misrepresentation .......................................13

    I.  Plaintiff Fails to Plausibly Allege Unjust Enrichment..........................................14

III. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE FAC....................15

CONCLUSION..........................................................................................................................15

i

## TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGE(S)**

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974)............................................................................................................4

*Bayside Wellness Physical Therapy P.C. v. Double Why Design, Inc.*,
   No. 23-CV-03842 (JMA) (ST), 2025 WL 458224 (E.D.N.Y. Feb. 11, 2025) .........................8

*Bendit v. Canva, Inc.*,
   No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023)....................................12

*Bermudez v. Colgate-Palmolive Co.*,
   667 F. Supp. 3d 24 (S.D.N.Y. 2023)..................................................................................14

*Bihag v. A&E Television Networks, LLC*,
   669 F. App'x 17 (2d Cir. 2016) .....................................................................................2, 10

*Bildstein v. MasterCard Int'l Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004)................................................................................14

*Black v. Ganieva*,
   619 F. Supp. 3d 309 (S.D.N.Y. 2022), *aff'd*, No. 22-CV-1524, 2023 WL
   2317173 (2d Cir. Mar. 2, 2023) .........................................................................................8

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
   98 F.3d 13 (2d Cir. 1996)...................................................................................................9

*Brimelow v. New York Times Co.*,
   No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021).................................................12

*Bussey v. Phillips*,
   419 F. Supp. 2d 569 (S.D.N.Y. 2006)................................................................................14

*Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) ......................................................................................12

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
   252 F. Supp. 3d 274 (S.D.N.Y. 2017)..................................................................................3

*Corsello v. Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012) .......................................................................................................15

*Cortes v. 21st Century Fox Am., Inc.*,
   751 F. App'x 69 (2d Cir. 2018) ..........................................................................................3

*Crawford v. Franklin Credit Mgmt. Corp.*,
   758 F.3d 473 (2d Cir. 2014)................................................................................................8

*Cruz v. Marchetto*,
 No. 11-CV-8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012)................................................12

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
 47 F.3d 39 (2d Cir. 1995)......................................................................................................15

*Dalton v. Educ. Testing Serv.*,
 87 N.Y.2d 384 (1995) ..............................................................................................................5

*Edwards v. McMillen Cap., LLC*,
 No. 21-1024-CV, 2022 WL 16984534 (2d Cir. Nov. 17, 2022).............................................13

*El Omari v. Buchanan*,
 No. 20-CV-2601 (VM), 2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021), *aff'd*,
 No. 22-CV-55, 2022 WL 4454536 (2d Cir. Sept. 26, 2022) .....................................................8

*FCS Advisors, Inc. v. Fair Fin. Co.*,
 378 F. App'x 65 (2d Cir. 2010) ................................................................................................5

*Gettinger Assocs., L.P. v. Abraham Kamber Co. LLC*,
 83 A.D.3d 412 (1st Dep't 2011) ..............................................................................................13

*Haddle v. Garrison*,
 525 U.S. 121 (1998)..................................................................................................................7

*Hagans v. Maher*,
 No. 18-CV-1917 (JS) (AYS), 2022 WL 4538561 (E.D.N.Y. Sept. 28, 2022) .........................6

*Int'l Oil Field Supply Servs. Corp. v. Fadeyi*,
 35 A.D.3d 372 (2d Dep't 2006) ................................................................................................9

*Jacob v. Lorenz*,
 626 F. Supp. 3d 672 (S.D.N.Y. 2022).....................................................................................12

*Johnson v. City of New York*,
 No. 23-CV-3018 (DEH), 2024 WL 3520445 (S.D.N.Y. July 23, 2024) ...................................4

*Jones v. Combs*,
 No. 24-CV-1457 (JPO), 2025 WL 896829 (S.D.N.Y. Mar. 24, 2025).....................................13

*Kiryas Joel All. v. Vill. of Kiryas Joel*,
 495 F. App'x 183 (2d Cir. 2012) ..............................................................................................7

*Kush v. Rutledge*,
 460 U.S. 719 (1983)..................................................................................................................4

*Langton v. Town of Chester Library Bd.*,
 No. 14-CV-9474 (NSR), 2017 WL 6988708 (S.D.N.Y. Sept. 26, 2017) *aff'd*
 *sub nom. Langton*, 2020 WL 2850898 (S.D.N.Y. June 1, 2020).............................................6

*Lee v. UDR, Inc.*,
   No. 22-CV-00505 (PGG) (SDA), 2022 WL 22211347
   (S.D.N.Y. Sept. 30, 2022) ...................................................................................................13

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ...............................................................................................9

*Marciniak-Domingues v. Mass. Inst. of Tech.*,
   No. 22-CV-10959 (ALC) (SN), 2024 WL 4350826 (S.D.N.Y. Sept. 30, 2024) ...................7, 8

*Martin v. New Am. Cinema Grp., Inc.*,
   No. 22-CV-05982 (JLR), 2023 WL 2024672 (S.D.N.Y. Feb. 15, 2023) ...............................14

*Matusovsky v. Merrill Lynch*,
   186 F. Supp. 2d 397 (S.D.N.Y. 2002)..................................................................................4

*McMahan & Co. v. Bass*,
   250 A.D.2d 460 (1st Dep't 1998) .......................................................................................4

*Menaldi v. Pay-Per-View Network, Inc.*,
   No. 97-CV-6451 (HB), 1998 WL 230994 (S.D.N.Y. May 5, 1998), *aff'd sub
   nom. Menaldi v. Grp. W Broad., Inc.*, 182 F.3d 900 (2d Cir. 1999)..........................................3

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007)................................................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)............................................................................................................4

*Moore v. Baron Cohen*,
   No. 21-CV-1702, 2022 WL 2525722 (2d Cir. July 7, 2022)................................................12

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)...................................................................................7

*Olivet Univ. v. Newsweek Digit. LLC*,
   No. 24-CV-1473, 2024 WL 5001841 (2d Cir. Dec. 26, 2024) ...............................................11

*Podany v. Robertson Stephens, Inc.*,
   350 F. Supp. 2d 375 (S.D.N.Y. 2004)..................................................................................14

*Polar Int'l Brokerage Corp. v. Richman*,
   32 A.D.3d 717 (2006) ........................................................................................................2, 4

*Psenicska v. Twentieth Century Fox Film Corp.*,
   No. 07-CV-10972 (LAP), 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd*,
   409 F. App'x 368 (2d Cir. 2009) ......................................................................................2, 4, 10

*RDF Agent, LLC v. Elec. Red Ventures, LLC*,
   227 A.D.3d 424 (1st Dep't 2024) ........................................................................................5

iv

*Reiff v. CyberRisk All., LLC*,
No. 25-CV-6351 (VM), 2025 WL 3027979 (S.D.N.Y. Oct. 29, 2025)....................................5

*Rota v. CP Unlimited of N.Y. State*,
No. 23-CV-09675 (NSR), 2024 WL 4416843 (S.D.N.Y. Oct. 4, 2024) ...............................5

S*hapiro v. NFGTV, Inc.*,
No. 16-CV-9152 (PGG), 2018 WL 2127806 (S.D.N.Y. Feb. 9, 2018) .........................2, 4, 10

*Smith v. Apple, Inc.*,
583 F. Supp. 3d 554 (S.D.N.Y. 2022).......................................................................14

*Stadt v. Fox News Network LLC*,
719 F. Supp. 2d 312 (S.D.N.Y. 2010).......................................................................14

*Sveaas v. Christie's Inc.*,
452 F. App'x 63 (2d Cir. 2011) ...............................................................................13

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)....................................................................................11

*Thomas v. Genova*,
No. 23-7452, 2025 WL 583182 (2d Cir. Feb. 24, 2025) ..............................................6

*Thomas v. Roach*,
165 F.3d 137 (2d Cir. 1999)......................................................................................4

*Thompson v. Andy Warhol Found. for Visual Arts, Inc.*,
103 A.D.3d 528 (2013) .............................................................................................4

*Van Valkenburgh, Nooger & Nelville, Inc. v. Hayden Publ'g Co.*,
30 N.Y.2d 34 (1972) ..................................................................................................5

*W. Energy Opportunities II, LLC v. Finalis Sec., LLC*,
No. 24-CV-2565 (ER), 2025 WL 935201 (S.D.N.Y. Mar. 26, 2025*), recons.
denied*, No. 24-CV-2565 (ER), 2025 WL 2370930 (S.D.N.Y. Aug. 14, 2025) .......................9

*Wade Park Land Holdings, LLC v. Kalikow*,
589 F. Supp. 3d 335 (S.D.N.Y. 2022)........................................................................8

*Watson v. NY Doe 2*,
No. 19-CV-533 (DEH), 2025 WL 2662306 (S.D.N.Y. Sept. 17, 2025), *appeal
withdrawn sub nom. Watson v. Illinois Doe 1*, No. 25-2569, 2026 WL
1051983 (2d Cir. Feb. 26, 2026).............................................................................11

*Wellington v. City of New York*,
No. 24-CV-08743 (JLR), 2026 WL 1179529 (S.D.N.Y. Apr. 30, 2026) ..............................15

*Wilson v. Tarricone*,
No. 12-CV-5337 (LTS), 2013 WL 12084504 (S.D.N.Y. Sept. 26, 2013)..............................11

v

*Zaleski v. Burns*,
   606 F.3d 51 (2d Cir. 2010)..................................................................................................7

## STATUTES AND RULES

42 U.S.C. § 1985(2) ....................................................................................................6, 7

42 U.S.C. § 1986.............................................................................................................6

Fed. R. Civ. P. 8(a) ........................................................................................................1

Fed. R. Civ. P. 9(b)  ....................................................................................................1, 3

Fed. R. Civ. P. 12(b)(6)...................................................................................................1

GBL § 349.................................................................................................................13, 14

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6), Defendants Netflix, Inc. ("Netflix"), Curtis Jackson (professionally known as "50 Cent") ("Jackson"), Alexandria Stapleton ("Stapleton"), G-Unit Film & Television, Inc. ("G-Unit"), House of NonFiction Productions, Inc. ("HoN") and West Tower Road LLC ("West Tower Road"), (collectively, the "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss with prejudice the First Amended Complaint ("FAC", ECF No. 19) filed by Plaintiff Clayton Howard ("Plaintiff" or "Howard") on February 22, 2026.

## PRELIMINARY STATEMENT

After voluntarily sitting for two lengthy interviews with the producers of a series "about Sean Combs" and signing an unambiguous release and covenant not to sue anyone in connection with his voluntary participation or anything else relating to the Project,[1] Plaintiff has brought eleven (11) claims against the Defendants. All of Plaintiff's claims arise entirely out of his dissatisfaction that the Series did not label Cassie Ventura as his "primary sex trafficker" and the alleged resulting injury to his book sales, media appearances and civil suit against Combs. The Appearance Release bars Plaintiff's claims, and no matter how Plaintiff's Opposition ("Opp.") attempts to invent new conspiracy theories, point fingers or concoct new critiques as to how he would have edited the Series,[2] Plaintiff simply has no claim against any of the Defendants.

## ARGUMENT

### I.     PLAINTIFF'S CLAIMS ARE BARRED BY THE APPEARANCE RELEASE

The Appearance Release bars all of Plaintiff's claims. It: (1) includes a covenant not to sue which clearly and unambiguously prohibits Plaintiff from bringing "any and all claims . . . and

---

[1] All capitalized terms herein shall have the same meaning as given in Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's FAC (ECF No. 42) ("Motion" or "Mot.").

[2] The Series includes many of Plaintiff's statements describing Ventura's role in their sexual encounters. (Mot. at 8.)

1

causes of action of any kind or nature whatsoever" against Defendants relating to the Project (a/k/a the Series) and Plaintiff's participation therein; (2) includes a release barring any claim Plaintiff has or may have against Defendants in connection with the Series; and (3) grants Defendants unfettered editorial discretion in their decision to use (or not use) the Recordings of Plaintiff's interviews.[3] (Farkas Decl. Ex. 2 at §§ 1, 3; FAC ¶¶ 8-13.) Courts in this Circuit routinely enforce these very types of agreements to shield filmmakers, producers and distributors of First Amendment-protected content from claims arising out of a participant's dissatisfaction with editorial decisions – here, Plaintiff's disappointment that Defendants did not specifically identify him as being "primarily sex trafficked" by Ventura. (Farkas Decl., Ex. 1, Episode 3 at 33:44, 34:35, 40:55-42:38); S*hapiro v. NFGTV, Inc.*, No. 16-CV-9152 (PGG), 2018 WL 2127806, at *6-8 (S.D.N.Y. Feb. 9, 2018) (dismissing complaint based on a purportedly unfavorable portrayal of plaintiff on a reality television program where plaintiff signed an agreement "which contained a broad release and covenant not to sue"); *Psenicska v. Twentieth Century Fox Film Corp.*, No. 07-CV-10972 (LAP), 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008), *aff'd,* 409 F. App'x 368 (2d Cir. 2009) (affirming dismissal of claims arising out of plaintiff's participation in a documentary-style project based on unambiguous waivers and a covenant not to sue); *Polar Int'l Brokerage Corp. v. Richman*, 32 A.D.3d 717, 720 (2006); *Bihag v. A&E Television Networks, LLC*, 669 F. App'x 17, 18 (2d Cir. 2016).[4]

Plaintiff's attempts to overcome this dispositive document all fail.

Plaintiff does not dispute that he signed the Appearance Release. Rather, he claims that he was fraudulently induced into entering into the Appearance Release. This argument is based on

---

[3] Plaintiff concedes he expressly granted unlimited editorial discretion in the Appearance Release. (Opp. at 19.)

[4] Plaintiff's attempt to distinguish these cases by arguing they did not involve claims of fraud or fraudulent inducement is wrong, as the plaintiff in each of these cases attempted (unsuccessfully) to get out of the releases by arguing fraud.

the supposed "representation" from Stapleton and Sanchez "from inception" that Plaintiff's story would be told "truthfully and completely," that "they were false when made," and that Plaintiff "relied on them in signing the Release." (Opp. at 8.)[5] Such allegations are belied by the very document he signed and fail to include specificity as to when, where or how the alleged statements were made, and thus are far too vague and conclusory to satisfy the Rule 9(b) pleading standard. *Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018); *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 284 (S.D.N.Y. 2017); *Menaldi v. Pay-Per-View Network, Inc.*, No. 97-CV-6451 (HB), 1998 WL 230994, at *1 (S.D.N.Y. May 5, 1998) (same), *aff'd sub nom. Menaldi v. Grp. W Broad., Inc.*, 182 F.3d 900 (2d Cir. 1999); Fed. R. Civ. P. 9(b). Nor does Plaintiff identify anything false about his depiction in the Series.[6]

*Second*, while Plaintiff concedes the Appearance Release covers his first interview, he argues it did not "prospectively" cover the second March 6, 2025 interview that he requested. (Mot. at 11-13; Opp. at 8.) Yet Plaintiff sat for both interviews knowing that he had signed away any editorial control and any right to complain or sue over the way in which the Recordings were used (or not used). Plaintiff simply ignores the language of the Appearance Release, including the unequivocal covenant not to sue contained therein, pursuant to which Plaintiff "expressly and irrevocably release[s], and shall neither sue or bring any proceeding against" Defendants "from and against any and all claims . . . that [he has] or may have that relate to the Project or [his] participation." (Farkas Decl., Ex. 2, § 1.) Plaintiff expressly agreed not to do exactly what he is doing here – file a lawsuit relating to his participation in the Project. As shown *supra*, courts

---

[5] Plaintiff's allegation that Stapleton and Sanchez knew such representation was false due to Jackson's purported "predetermined editorial frame favorable to Ventura" is not only speculative but also is foreclosed by the unfettered discretion Plaintiff "irrevocably granted" Defendants to make such choices in connection with "a documentary Netflix was creating *about Sean Combs*." (FAC ¶ 27 (emphasis added).)

[6] Any claim that Defendants were required to "completely" use the 4-6 hours' worth of Recordings in a Series with a total running time of four hours is absurd.

3

routinely enforce such forward-looking covenants not to sue, which bars all of Plaintiff's claims relating to the Series.[7] *Shapiro*, 2018 WL 2127806, at *6; *Psenicska*, 2008 WL 4185752, at *4-5, *aff'd* 409 F. App'x at 369; *Polar Int'l Brokerage Corp.*, 32 A.D.3d at 720; *McMahan & Co. v. Bass*, 250 A.D.2d 460, 461 (1st Dep't 1998) (covenant not to sue applies to future claims and constitutes an agreement not to assert any claim which exists or may accrue); *Thompson v. Andy Warhol Found. for Visual Arts, Inc.*, 103 A.D.3d 528, 529 (2013).

*Third*, Plaintiff argues that the Appearance Release does not cover his federal civil rights claim (based on his misguided notion that he actually has stated a "civil rights claim" against Defendants) because it "cannot be prospectively waived." This is incorrect as a matter of law. (Mot. at 13.) *See Johnson v. City of New York*, No. 23-CV-3018 (DEH), 2024 WL 3520445, at *5-6 (S.D.N.Y. July 23, 2024); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002). Plaintiff's conclusory say-so in opposition without any supporting authority is insufficient.[8]

*Fourth*, Plaintiff argues he should be relieved from the Appearance Release because it contains an "unenforceable" (and largely irrelevant) exclusivity provision. The Appearance Release's exclusivity clause prohibits Plaintiff from "provid[ing] any interview or material for, participat[ing] in, or aid[ing] in the creation of any other programming or media" relating to the Project for a period of one year after the release of the Series. (Farkas Decl., Ex. 2 § 1.) Plaintiff concedes he breached this provision through participation in videos and podcasts and publication

---

[7] Plaintiff now claims the parties executed a "November 26, 2025 Completed Release," but the only document contained within Plaintiff's Exhibit A is a November 26, 2025 email from Sanchez to Plaintiff attaching a "fully completed and countersigned *Materials Release*" dated September 17, 2024. (Opp. at 8-9 (emphasis added).)

[8] Plaintiff's cases are inapposite. *Kush v. Rutledge*, 460 U.S. 719 (1983) and *Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999) do not involve any contractual release of claims. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) recognize only a narrow, statute-specific bar on the prospective waiver of Title VII and federal antitrust rights, respectively — rights Congress made non-waivable for reasons particular to those statutory schemes. Neither establishes a general rule against waiver of federal civil rights claims.

of a book. (Opp. at 9-10, 18-19; FAC ¶ 132(a).) While nowhere alleged in the FAC, Plaintiff argues that, because other participants in the Project were allowed to breach the exclusivity clauses of their releases, somehow the entire Appearance Release is unenforceable against him.[9] Plaintiff's argument is illogical, unpled, and should be rejected.[10]

*Fifth*, Plaintiff's "void against public policy" arguments are repetitive and unavailing. Exclusivity provisions like that in the Appearance Release are common and routinely enforced to ensure that parties who invest significant efforts in transactions or projects retain the benefit of their bargain. *RDF Agent, LLC v. Elec. Red Ventures, LLC*, 227 A.D.3d 424, 427 (1st Dep't 2024); *FCS Advisors, Inc. v. Fair Fin. Co.*, 378 F. App'x 65, 67 (2d Cir. 2010) (summary order).[11]

Plaintiff also seeks to be relieved from the Appearance Release because Jackson purportedly had a vendetta against Combs and allegedly exercised editorial control in a way that Plaintiff does not like (*i.e.*, did not portray Ventura as Plaintiff's "primary sex trafficker"). This too is barred by the Appearance Release. The cases cited by Plaintiff are inapplicable.[12] Plaintiff

---

[9] While courts permit *pro se* litigants to introduce new facts in opposition to a motion to dismiss, such facts must be "consistent" with the operative pleading. *Rota v. CP Unlimited of N.Y. State,* No. 23-CV-09675 (NSR), 2024 WL 4416843, at *2 (S.D.N.Y. Oct. 4, 2024) (refusing to consider new allegations because they are "inconsistent with the Complaint and could not have been alleged based on the facts raised in the Complaint"). This new "theory" is not "consistent" with the FAC. (Opp. at 9-10.)

[10] Plaintiff claims he was "stripped" of the "right to speak about his own trafficking experience, while every other participant spoke freely" but admits he appeared on podcasts and in videos, and even published a book about his experience.

[11] Even assuming *arguendo* that the exclusivity provision was found unenforceable, the remainder of the Appearance Release would remain enforceable. *Reiff v. CyberRisk All., LLC*, No. 25-CV-6351 (VM), 2025 WL 3027979, at *3 (S.D.N.Y. Oct. 29, 2025). Plaintiff's citation of cases involving selective discriminatory enforcement of facially neutral employment policies is misplaced and irrelevant. (Opp. at 10.)

[12] *Van Valkenburgh, Nooger & Nelville, Inc. v. Hayden Publ'g Co.*, 30 N.Y.2d 34, 45 (1972) addressed a publisher's alleged breach of a "best efforts" promotion clause by secretly developing a competing series and not advertising the plaintiff's work. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384 (1995) addressed whether a testing service had an implied obligation to consider information submitted by a test taker. Plaintiff does not (and cannot) explain how these cases are informative.

"irrevocably granted" to Defendants unfettered editorial discretion with respect to use of Plaintiff's interviews (Farkas Decl., Ex. 2, § 1), and his disappointment in (any of the) Defendants' use of the Recordings and that Ventura was not labelled his "primary sex trafficker" does not render the Appearance Release unenforceable.

## II.    PLAINTIFF FAILS TO ALLEGE ANY COGNIZABLE CLAIM

Even if the Court ignored the Appearance Release, Plaintiff fails to state any claim.

### A.    Plaintiff Fails to Allege Conspiracy to Interfere With Court Proceedings Under 42 U.S.C. § 1985(2)

Defendants demonstrated in their Motion that Plaintiff's conclusory allegations that Defendants acted "in concert pursuant to a common plan and agreement" and "conspired to deter Plaintiff from testifying" by "force, intimidation or threat" (FAC ¶¶ 84, 144) are facially deficient. *Langton v. Town of Chester Library Bd.*, No. 14-CV-9474 (NSR), 2017 WL 6988708, at *7 (S.D.N.Y. Sept. 26, 2017) *aff'd sub nom. Langton*, 2020 WL 2850898 (S.D.N.Y. June 1, 2020); *Hagans v. Maher*, No. 18-CV-1917 (JS) (AYS), 2022 WL 4538561, at *10 (E.D.N.Y. Sept. 28, 2022). Such allegations are also impossible, as the criminal proceeding against Combs had concluded before the Series was released.[13]

In Opposition, Plaintiff pivots to a new "conspiracy theory": (1) Jackson conspired with Ventura and her husband (neither of whom are parties to this action) to "suppress" Plaintiff's interview for the Series; and (2) Defendants "threatened" that Plaintiff's story would be suppressed unless he cooperated on Defendants' "terms" (apparently referring to the exclusivity provision). Not only are such allegations unsubstantiated and internally inconsistent,[14] but all of this is

---

[13] This also requires dismissal of Plaintiff's claim under 42 U.S.C. § 1986. *Thomas v. Genova*, No. 23-7452, 2025 WL 583182, at *4 (2d Cir. Feb. 24, 2025).

[14] Defendants did not "suppress" what Plaintiff said in the Recordings; he concedes he was permitted to speak for 4-6 hours. The only supposed omission is the alleged failure to call Ventura Plaintiff's "primary sex trafficker" in the Series. That is not "suppression"; it is the very unfettered editorial control that he contractually gave to the producers of the Series. (Mot. at 5, 8-9.)

6

irrelevant, as Plaintiff does not claim that Defendants attempted to deter testimony *in a court proceeding*, the very crux of any Section 1985(2) claim. This claim fails.[15]

### B.    Plaintiff's New TVPA Claim Against Jackson Still Fails

Plaintiff has abandoned his deficient claim against Netflix and now argues that *Jackson* is liable under the TVPA (for the alleged failure of the Series to label Ventura as Plaintiff's primary sex trafficker) "through his documented personal relationship with participants in the Combs sex trafficking venture," his specific undisclosed "financial and parental interest in suppressing testimony connecting Ventura" and certain others to that venture, and "his direct editorial control over the Documentary that exploited Plaintiff's trafficking victimhood for commercial gain." (Opp. at 13.)

But Plaintiff still fails to allege any Defendant "participat[ed] in the sex trafficking act itself." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *Marciniak-Domingues v. Mass. Inst. of Tech.*, No. 22-CV-10959 (ALC) (SN), 2024 WL 4350826, at *17 (S.D.N.Y. Sept. 30, 2024) (dismissing TVPA claim for failure to sufficiently allege that defendants participated in any overt acts in furtherance of any alleged trafficking scheme). As here, Plaintiff does not allege that Jackson "was present for any of the alleged assaults, was told about them before or after they occurred . . . nor does it allege anything similar[.]" *Noble*, 335 F. Supp. 3d at 524. These allegations are insufficient. Plaintiff's (new) TVPA claim against Jackson should be dismissed.

---

[15] Plaintiff's new allegations that Stapleton and Sanchez were "acting on Jackson's editorial directives" in support of any alleged conspiracy are too conclusory and vague to support a conspiracy claim. *See Kiryas Joel All. v. Vill. of Kiryas Joel,* 495 F. App'x 183, 190 (2d Cir. 2012) (vague and conclusory allegations that defendants entered into an unlawful agreement do not suffice). Plaintiff does not allege any involvement by Netflix in the newly minted purported conspiracy. Moreover, Plaintiff's mere recitation, without authority, of generalized allegations of injury likewise warrants dismissal of this claim. *See Zaleski v. Burns*, 606 F.3d 51, 53 (2d Cir. 2010). Plaintiff's citation to *Haddle v. Garrison* involved an alleged loss of at-will employment and is inapposite. 525 U.S. 121, 125 (1998).

### C.   Plaintiff Fails to Allege a Civil RICO Violation

Plaintiff admits "Civil RICO is Plaintiff's most challenging federal claim." (Opp. at 15.) Even if this Court were to entertain Plaintiff's new narrative, still no RICO claim is asserted as a matter of law. First, Plaintiff still fails to allege at least two related predicate acts that amount to or pose a threat of continuing criminal activity. *El Omari v. Buchanan*, No. 20-CV-2601 (VM), 2021 WL 5889341, at *3 (S.D.N.Y. Dec. 10, 2021), *aff'd*, No. 22-CV-55, 2022 WL 4454536 (2d Cir. Sept. 26, 2022). The supposed alleged predicate acts – a February 28, 2025 email regarding his second interview; the emails sent between December 2024 and January 2025 regarding payment for certain photographs under the Materials Release; conclusory and unsubstantiated claims that Defendants suppressed Plaintiff's testimony in a federal proceeding; and Netflix's (accurate) statement that it did not compensate any individual for their appearance in the Series (Opp. at 15-16) – are simply not "continuing criminal activity." *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 378 (S.D.N.Y. 2022) (citation omitted); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) ("RICO claims premised on mail or wire fraud must be particularly scrutinized.").

Nor does Plaintiff allege any "pattern of racketeering," particularly where the alleged scheme only targeted Plaintiff (Plaintiff's suggestion that the "scheme" also targeted Combs is absurd). *Bayside Wellness Physical Therapy P.C. v. Double Why Design, Inc.*, No. 23-CV-03842 (JMA) (ST), 2025 WL 458224, at *6 (E.D.N.Y. Feb. 11, 2025) (even a scheme targeting two victims is insufficient to establish a RICO pattern); *Black v. Ganieva*, 619 F. Supp. 3d 309, 346 (S.D.N.Y. 2022), *aff'd*, No. 22-CV-1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).

Finally, Plaintiff's failure to allege actual, quantifiable injury in the form of concrete financial loss also warrants dismissal of his Civil RICO claim. *Marciniak-Domingues*, 2024 WL 4350826, at *18. Instead, Plaintiff recites conclusory allegations that he has been "deprived of

intellectual property rights," that he "suffered economic loss from the [alleged] payment delay scheme" (while admitting he was in fact paid in full the $2,000 due under the Materials Release), and that the Series has "reduced the settlement value of Plaintiff's California case against Ventura." (Opp. at 16.) These conclusory and unsubstantiated allegations are belied by his own admissions and fail to allege injury under RICO.[16]

### D.      Plaintiff Fails to Plausibly Allege Fraudulent Inducement

Plaintiff seems to suggest that he was also fraudulently induced into sitting for the second interview (the one that he requested) based on Sanchez's February 2025 email, which stated that "[w]e are definitely not looking to tell a story that is inaccurate," because the Series did not label Ventura as his "primary sex trafficker."[17] This email contains no promise that the producer would use the phrase "primary sex trafficker" to label Ventura in the Series, and no commitment as to how his interview footage would be used in the Series. Nor has Plaintiff identified anything "false" or "inaccurate" about the clips of him speaking in the Series.

Sanchez's statement is simply a general expression of journalistic good faith, precisely the kind of "[v]ague expression[] of hope and future expectation," which "provide[s] an insufficient basis upon which to predicate a claim of fraud." *Int'l Oil Field Supply Servs. Corp. v. Fadeyi*, 35 A.D.3d 372, 375 (2d Dep't 2006).[18]

---

[16] Nor has Plaintiff alleged an "association-in-fact RICO enterprise," which requires the "association of individuals" share a common goal of "perpetuating fraudulent conduct" which they work together to achieve. *W. Energy Opportunities II, LLC v. Finalis Sec., LLC*, No. 24-CV-2565 (ER), 2025 WL 935201, at *5 (S.D.N.Y. Mar. 26, 2025*), recons. denied*, No. 24-CV-2565 (ER), 2025 WL 2370930 (S.D.N.Y. Aug. 14, 2025). Neither "[p]roducing, marketing and distributing commercially lucrative Film content" (FAC ¶ 152) nor "producing and profiting from the Documentary" (Opp. at 15) constitute "perpetuating fraudulent conduct" under RICO.

[17] His claim that he was fraudulently induced into entering into the Appearance Release is addressed at Point I, *supra*.

[18] None of Plaintiff's cited cases supports his position. In two of them (*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) and *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)) the fraudulent concealment and fraud failed, and *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181-83 (2d Cir. 2007) concerned "sophisticated

9

Plaintiff also cannot allege justifiable reliance on this non-existent promise after executing the Appearance Release in which he acknowledged he had no expectations or rights to demand any editorial choices and which "irrevocably granted" Defendants unfettered discretion to make such choices in connection with "a documentary Netflix was creating *about Sean Combs*." (FAC ¶ 27) (emphasis added); Mot. at 20; ECF No. 41, Farkas Decl. Ex. 2, § 1.) Nor can he. Plaintiff's fraudulent inducement claim should be dismissed with prejudice. *Bihag*, 669 F. App'x at 18; *Psenicska*, 2008 WL 4185752, at *6; *Shapiro*, 2018 WL 2127806, at *8.

### E.      Plaintiff Fails to Plausibly Allege Defamation *Per Se*

As set forth in the Motion, Plaintiff's defamation claim fails for three independent reasons.

*First*, Plaintiff fails to allege a false statement of fact "of and concerning" him. His new theory in Opposition relies upon Netflix's statement that "no participants were compensated," yet, as Plaintiff concedes, Netflix actually stated that "[n]o one was paid to participate" in the Series, which is unequivocally true. (Opp. Ex. A ¶ 20, ECF No. 43-2.) Pursuant to a separate agreement, the Materials Release, Plaintiff received a modest license fee for "photographs, videos, writings and other materials" he provided to Defendants. He was not paid for his appearance in the Series. The distinction is confirmed by the documents themselves: the Materials Release provides for the license payment; the Appearance Release provides for none. (Mot. 29-30.)[19] Moreover, this irrelevant (and incorrectly quoted) statement is neither a false statement "of or concerning" Plaintiff nor defamatory.

The only other suggested defamatory statement revolves around the "editorial framing" of his interviews in the Series (because they failed to identify Ventura as his "primary sex trafficker").

---

business entities" negotiating a $490 million acquisition, not a documentary interview subject claiming reliance on a one-sentence email.

[19] Sanchez's emails confirm that the only payment was for the materials. Sanchez states that "Tyrone sent me *your materials* this week but I need some paperwork from you before sending out your payment" (ECF No. 43-2, at 18, 23), consistent with the Materials Release.

Yet Plaintiff expressly granted Defendants this very discretion and covenanted not to sue anyone for anything arising out of his appearance in the Series. Alleged "selective editing" or "contextual framing" is not a "statement about Plaintiff's credibility and truthfulness" (Opp. at 18), nor can it substitute for the required showing of a false statement of fact "of and concerning" Plaintiff. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 250 (2d Cir. 2017); *Olivet Univ. v. Newsweek Digit. LLC*, No. 24-CV-1473, 2024 WL 5001841, at *3 (2d Cir. Dec. 26, 2024).

*Second*, none of the alleged statements constitutes defamation *per se*. New York law demands that "the defendant accused plaintiff of conduct that is incompatible with the proper conduct of [plaintiff's] business, trade, profession, or office itself." *Wilson v. Tarricone*, No. 12-CV-5337 (LTS), 2013 WL 12084504, at *4 (S.D.N.Y. Sept. 26, 2013) (dismissing claim where defamatory statement failed to "refer to a matter of significance for [alleged] professional position" and finding insufficient statements that "allegedly tends to harm plaintiff in [his] professional pursuits."). Neither Netflix's (true) compensation statement nor the failure to label someone else as a "primary sex trafficker" rise to this level. Plaintiff fails to state a claim for defamation *per se*.

*Finally*, Plaintiff's conclusory allegations in the FAC do not come close to pleading actual malice, which requires knowledge of falsity or reckless disregard of whether the statement was false or not. *Watson v. NY Doe 2*, No. 19-CV-533 (DEH), 2025 WL 2662306, at *11 (S.D.N.Y. Sept. 17, 2025), *appeal withdrawn sub nom. Watson v. Illinois Doe 1*, No. 25-2569, 2026 WL 1051983 (2d Cir. Feb. 26, 2026) (Mot. at 24.) Recognizing this deficiency, Plaintiff attempts to allege actual malice through: (1) a "predetermined narrative" based on Jackson's *Good Morning America* statement made the day before the Series' release (Opp. at 4, 19); and (2) Stapleton's alleged statement that Plaintiff's second interview damaged the existing public narrative about Ventura. (Opp. at 19.) Neither assertion rises to an allegation of actual malice as: (1) neither Jackson's nor Stapleton's purported statements were defamatory as to Plaintiff, nor does Plaintiff

11

sufficiently allege they knew the statements were false when made or recklessly disregarded contrary information; (2) Plaintiff admits knowing the Series would be "about Sean Combs" since at least May 14, 2022 (FAC ¶ 12); and (3) Stapleton's purported statement was not "published" – it was made directly to Plaintiff. *Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021); *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 692 (S.D.N.Y. 2022). Plaintiff's defamation claim should be dismissed.

### F.    **Plaintiff Fails to Allege Intentional Infliction of Emotional Distress**

Plaintiff's IIED claim can be easily dismissed as well. Plaintiff concedes that this claim is duplicative of his defamation claim. (Mot. at 24; *compare* FAC ¶ 178 *with id.* ¶ 187.) That alone is dispositive. *Bendit v. Canva, Inc.*, No. 23-CV-473 (RA), 2023 WL 5391413, at *10 (S.D.N.Y. Aug. 22, 2023); *see also Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012).

Plaintiff's IIED claim also fails on the merits. Plaintiff concedes that "IIED is extremely difficult in New York, and courts almost never sustain IIED claims based on media conduct." (Opp. at 19.) This case is no exception. Unable to overcome this obstacle, Plaintiff bases his IIED claim on "the process" (Opp. at 19) – that Defendants re-interviewed Plaintiff at *Plaintiff's* request, exercised their editorial discretion as broadly provided by the Appearance Release and published the Series addressing a matter of public concern. Such conduct indisputably fails to approach the level of "atrocious" or "utterly intolerable" conduct required for IIED. *See e.g.*, *Moore v. Baron Cohen*, No. 21-CV-1702, 2022 WL 2525722, at *3 (2d Cir. July 7, 2022); *Cruz v. Marchetto*, No. 11-CV-8378, 2012 WL 4513484, at *5 (S.D.N.Y. Oct. 1, 2012).

Plaintiff also fails to plead intent. The Opposition's reliance on Jackson's "personal vendetta" *against Combs* (Opp. at 1, 19) does not establish Defendants' intent to cause *Plaintiff* severe emotional distress, nor does it offer factual detail regarding the nature, duration or severity

of the alleged harm. *See e.g.*, *Jones v. Combs*, No. 24-CV-1457 (JPO), 2025 WL 896829, at *11 (S.D.N.Y. Mar. 24, 2025). Plaintiff's IIED claim should be dismissed with prejudice.

### G.    Plaintiff Fails to Allege Breach of an Implied Covenant

Plaintiff's claim for breach of an implied covenant regarding the Materials Release[20] fails. Plaintiff vaguely contends that Defendants used his materials in a manner that "misrepresent[ed]" his story (without saying how or why). (Opp. at 20.) Similar to the Appearance Release, the Materials Release expressly and unequivocally grants Defendants "sole discretion" over all creative decisions concerning those materials, including the right to "alter, edit or obscure the Material(s)," with "no right of approval" reserved to Plaintiff." (Materials Release ¶ 1.) The implied covenant cannot be invoked to impose limitations that directly contradict an express grant of discretion. *Gettinger Assocs., L.P. v. Abraham Kamber Co. LLC*, 83 A.D.3d 412, 414 (1st Dep't 2011); *see also Edwards v. McMillen Cap., LLC*, No. 21-1024-CV, 2022 WL 16984534, at *4 (2d Cir. Nov. 17, 2022).[21] Like Plaintiff's many other claims, his implied covenant claim is barred by the very documents upon which he relies. *Sveaas v. Christie's Inc.*, 452 F. App'x 63, 65-66 (2d Cir. 2011); *Lee v. UDR, Inc.*, No. 22-CV-00505 (PGG) (SDA), 2022 WL 22211347, at *7 (S.D.N.Y. Sept. 30, 2022). This claim should be dismissed with prejudice.

### H.    Plaintiff Fails to Allege Fraudulent Misrepresentation

Nothing in Plaintiff's Opposition salvages his GBL § 349 claim. Plaintiff does not sufficiently allege that Defendants' alleged conduct was "consumer oriented," that Defendants

---

[20] Plaintiff concedes that he cannot assert any implied covenant claim in connection with the Appearance Release based on his express grant of editorial discretion to Defendants. (Opp. at 20.) The Materials Release has the same grant of discretion.

[21] Plaintiff's reliance on Defendant Sanchez's emails fails, particularly as there is no "breach" of any "covenant" alleged. As demonstrated above, *see supra* Point II.E, n.19, those emails simply confirm that payment was tied to Plaintiff's physical materials, not his interview testimony.

13

engaged in materially deceptive or misleading acts or that Plaintiff sustained damages stemming from Defendants' alleged violation of GBL § 349.

Plaintiff vaguely alleges that "51 million Netflix subscribers were deceived into watching" the Series and that Netflix's compensation statement "was also consumer-facing." (Opp. at 20.) Putting these conclusory assertions aside, Plaintiff's claim reduces to (at best) a "[p]rivate contract dispute[], unique to the parties" rather than a "matter[] affecting the consumer public at large." *Martin v. New Am. Cinema Grp., Inc.*, No. 22-CV-05982 (JLR), 2023 WL 2024672, at *7 (S.D.N.Y. Feb. 15, 2023); *see also Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010). Plaintiff's conclusory statement that Netflix's compensation statement is "important to consumers" and "likely to affect their choice of, or conduct regarding, a product" fails to allege a materially misleading act. *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (citation omitted).

Instead, Plaintiff asks for "discovery to develop the consumer harm theory." (Opp. at 20.) Plaintiff is not entitled to use discovery to manufacture a legal claim. *Bussey v. Phillips*, 419 F. Supp. 2d 569, 591-92 (S.D.N.Y. 2006) ("To the extent that [plaintiff] is arguing that additional discovery would allow him to amend his complaint to state a viable claim, the Court is similarly unpersuaded . . . discovery is not intended to be a fishing expedition."); *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004). Plaintiff's GBL § 349 claim fails at each element and should be dismissed with prejudice.

## I.    Plaintiff Fails to Plausibly Allege Unjust Enrichment

Plaintiff concedes that his unjust enrichment claim as pled is wholly duplicative, which mandates dismissal. (Opp. at 20); *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023); *see also Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 569 (S.D.N.Y. 2022). Plaintiff's new unjust enrichment theory – based on the puzzling allegation that the Appearance

14

Release should be voided – still fails because it is wholly duplicative of his fraud and tort claims. (Mot. at 31); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 791 (2012). Plaintiff's remaining conclusory assertion that "Jackson personally and commercially benefited" is without any factual support (Opp. at 20) and Plaintiff's single case does not address unjust enrichment at all. *See Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 43 (2d Cir. 1995). Plaintiff's unjust enrichment claim should be dismissed with prejudice.

### III.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE FAC

Plaintiff should not be permitted to amend the FAC, as any amendment would be futile. Plaintiff's Opposition includes a nine-page (9-page) declaration and over seventy (70) pages of exhibits, which contain certain new allegations and theories and also attempts to cure the FAC's conceded group pleading deficiency. (Opp. at 21.) Yet, Plaintiff still fails to state any cognizable claim. And critically, no new facts or theories can overcome (i) the Appearance Release; and (ii) the Series itself, which unequivocally prohibit each of Plaintiff's claims. Accordingly, any amendment would be futile and leave should be denied. *Wellington v. City of New York*, No. 24-CV-08743 (JLR), 2026 WL 1179529, at *9 (S.D.N.Y. Apr. 30, 2026) ("Indeed, even considering materials outside her pleading, such as her opposition brief and declarations submitted in support of her opposition, there are no facts presented that would support a non-futile amendment.").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion in its entirety and dismiss the FAC with prejudice and without leave to amend and grant such further relief as the Court deems just and proper.

Dated:  New York, New York
June 5, 2026

PRYOR CASHMAN LLP

By: _____
Ilene Farkas
Kaveri Arora
7 Times Square
New York, NY 10036
Tel. (212) 421-4100

*Attorneys for Defendants Netflix Inc., Curtis Jackson, Alexandria Stapleton, G-Unit Film & Television, Inc., House of NonFiction Productions, Inc., and West Tower Road LLC*

16

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing document complies with Magistrate Judge Netburn's Order (ECF No. 50) granting Defendants' letter motion for leave to file a memorandum of law not exceeding 15 pages (ECF No. 49), notwithstanding the word and page limitations set forth in Local Rule 7.1(c) of the Joint Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
      June 5, 2026

PRYOR CASHMAN LLP

By: _____
      Ilene Farkas

17